**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-60504 |
| | ) | |
| ERIC RALLS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

## JOINT OPPOSITION TO
## DEBTORS' MOTION FOR RECONSIDERATION REGARDING ORDER
## CONVERTING CASES TO CHAPTER 7

PlantSnap Inc. ("**PlantSnap**") and DEJ Partners, LLC ("**DEJP**," and together, the
"**Creditors**") oppose (the "**Opposition**") EarthSnap Inc. ("**EarthSnap**") and Eric Ralls' ("**Ralls**,"
and together, the "**Debtors**") *Motion for Reconsideration Regarding Order Converting Cases to
Chapter 7* [Docket No. 150] (the "**Motion**"),[1] and state as follows:

### INTRODUCTION

1.        The Debtors do not dispute that cause exists to convert their bankruptcy cases.
Instead, the Debtors argue that the Court committed manifest error by failing to find unusual
circumstances which preclude the Court from converting the cases. The Motion is wholly deficient,
and amounts to nothing more than a rehash of old arguments and theories that could have been
presented at the hearing. Even worse, the Debtors make these arguments without citing a single
portion of the record or through the use of newly discovered evidence.

---

[1] On May 5, 2025, the Debtors filed the Motion in EarthSnap's bankruptcy case. *See In re EarthSnap Inc.*, No. 24-
60363 (Bankr. E.D. Tex. June 17, 2024) (the "**EarthSnap Case**"), Docket No. 176. Despite the Court dissolving the
joint administration on April 21, 2025, the Debtors did not file the Motion in Ralls' bankruptcy case. *See id.*, Docket
No. 168; *see* Docket. On June 10, 2025, the Court denied the Motion. *See* EarthSnap Case, Docket No. 191. Prior to
the Court denying the Motion, Ralls filed the Motion in his bankruptcy case. *See* Docket No. 50. Although the Court
denied the Motion, and the Creditors believe the Court has finally resolved this Motion, the Creditors refile their
objection in Ralls' bankruptcy case in an abundance of caution.

2.        The Debtors cannot escape conversion by blaming their former attorney, claiming the business enterprise is on the "verge of . . . success," or painting PlantSnap as an alleged competitior. These untimely and unsupported arguments do not establish unusual circumstances to mitigate against conversion. The Debtors are responsible for grossly mismanaging their estates and leaving creditors in the dark, which resulted in the Court converting these cases. Because the Debtors cannot show the Court committed manifest error, the Court should deny the Motion.

## RELEVANT FACTS

3.        On June 17 and August 18, 2024, EarthSnap and Ralls, respectively, filed voluntary petitions for relief under subchapter V. *See* Docket No. 1; Ralls Case, Docket No. 1.

4.        On September 3, 2024, the Court granted the Debtors' employment of Kevin S. Wiley, Sr. ("**Wiley**") of The Wiley Law Group, PLLC as bankruptcy counsel.[2] *See* Docket.

5.        "The Court has held prior hearing in these cases, and expressed concerns about various apparent failure of Debtors," prompting the Court to issue the *Order to Show Cause Why Case Should No Be Dismissed or Converted for Cause Under § 1112* [Docket No. 94] (the "**Show Cause Order**"). *See* Order 2.

6.        On February 17, 2025, the Creditors filed the *Joint Motion to Convert Chapter 11 Cases* [Docket No. 97] (The "**Conversion Motion**"). HI Investments, LLC ("**HI Investments**")

---

[2] Who represents the Debtors is unclear. On September 3, 2024, the Court granted Wiley's employment application. *See* Docket No. 31. While Wiley was counsel of record, Gregory W. Mitchell ("**Mitchell**") of Freeman Law, PLLC began filing documents prior to the Conversion Hearing. *See, e.g.*, Docket No. 110. On March 26, 2025, Mitchell filed an employment application, but the Court has not granted that application. *See* Docket; Docket No. 134. On May 14, 2025, Wiley filed an amended motion to withdraw. *See* Docket No. 179. Wiley similarly moved to withdraw in the Ralls Case. *See* Ralls Case, Docket No. 48. Wiley ***has not*** moved to withdraw as counsel of record in the related adversary proceedings. *See* Docket, *PlantSnap Inc. v. Ralls*, No. 24-06044 (Bankr. E.D. Tex. Nov. 22, 2024). PlantSnap's counsel has twice asked Wiley and Mitchell about the extent of their representation of the Debtor in the adversary proceedings, but has not received an answer. PlantSnap continues to prosecute the adversary proceeding, including serving discovery on Wiley (counsel of record) and Mitchell on May 7, 2025.

joined the Conversion Motion. *See* Docket No. 101. The Debtors did not object to the Conversion Motion. *See* Docket.

7.      The Court held a two-day hearing on the Show Cause Order and Conversion Motion on March 19 and 25, 2025 (the "**Conversion Hearing**").

8.      During the Conversion Hearing, the Court admitted Movants' Exhibits 1–94 and Debtors' Exhibits 1–7. *See* Order 3. Ralls was the sole witness at the Conversion Hearing. *See id.* at 11.

9.      Following the Conversion Hearing, the Debtor attempted to remedy several failures identified at the Conversion Hearing, including filing the *Debtors' First Amended Consolidated Plan and Disclosure Statement* [Docket No. 166] (the "**Amended Plan**"), amended schedules, and numerous monthly operating reports ("**MORs**"). *See* Docket Nos. 135–38, 140, 142–57, 159–66.

10.     On April 21, 2025, the Court issued its *Order Granting Motion to Convert Subchapter V, Chapter 11 Cases into Chapter 7 Bankruptcy Cases* [Docket No. 167] (the "**Order**")

11.     On May 6, 2025, the Debtors filed the Motion. In support of the Motion, the Debtors attached Exhibits A through F (the "**Unadmitted Documents**"). *See* Mot. Exs. A–F.

## LAW AND ARGUMENT

### I.      Standard of Review.

12.     The Debtors filed the Motion within fourteen days of the Order, and they seek reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure (the "**Rules**"), as made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure. *See* Docket; Mot. ¶ 1; *Ramirez v. Rodriguez*, Ch. 7 Case No. 09-70051, Adv. No. 09-07004, 2010 Bankr. LEXIS 2144, at *4 (Bankr. S.D. Tex. June 24, 2010) ("If a motion for reconsideration is filed within 14 days of the judgment or order of which the party complains, it is considered to be a Rule 59(e) motion . . . .").

13.     Motions to reconsider serve a "narrow purpose" and "should not be used to raise arguments that could, and should, have been made before the entry of the judgment . . . [or] to re-urge matters that have already been advanced by a party" *Lupo v. Wyeth-Ayerst Lab.*, 4 F. Supp. 2d 642, 645 (E.D. Tex. 1997) (citations omitted); *see also Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) ("Motions to reconsider 'based on recycled arguments only [serve] to waste the resources of the court,' and are not the proper vehicle to '[rehash] old arguments or [advance] legal theories that could have been presented earlier.'" (quoting *Tex. Instruments, Inc. v. Hyundai Elecs. Indus.*, 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999))).

14.     Under Rule 59(e), a judgment may be amended where there is (1) a manifest error of law or fact; (2) newly discovered evidence; or (3) an intervening change in controlling law. *See Schiller v. Physician Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

15.     "A manifest error of law or fact must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Bender Square Partners v. Factory Mut. Ins.*, No. 4:10-cv-4295, 2012 U.S. Dist. LEXIS 74709, at *8 (S.D. Tex. May 27, 2012) (citations omitted).

16.     A party's "unexcused failure to present evidence available at the time of [the hearing] provides a valid basis for denying a subsequent motion for reconsideration." *Molina v. Equistar Chems. LP*, 261 F. App'x 729, 733 (5th Cir. 2008) (citation omitted). A court will not grant a Rule 59(e) motion on the basis of newly discovered evidence unless "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696–97 (5th Cir. 2003) (citation omitted).

## II. The Debtors Failed to Meet Their Burden Under Section 1112(b)(2).

### A. Applicable Law Under Section 1112(b)(2).

17.    Upon a finding for cause is a subchapter V case,[3] "conversion or dismissal is mandatory *unless* [a debtor] can meet its burden to establish the exceptions of § 1112(b)(2)." *In re Delta AG Grp., LLC*, 596 B.R. 186, 196 (Bankr. W.D. La. 2019) (emphasis in original); *see also* 11 U.S.C. § 1181(a) (stating section 1104, which concerns the appointment of a trustee or receiver, is inapplicable in subchapter V cases). Section 1112(b)(2) requires a debtor to satisfy two prongs. *See In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019).

18.    First, a debtor must "specifically identify unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." *Id.* (quoting 11 U.S.C. § 1112(b)(2)). The Bankruptcy Code does not define "unusual circumstances," but the term "contemplates conditions that are not common in most chapter 11 cases." *Delta AG Grp.*, 596 B.R. at 196 (citation omitted). "Determining whether unusual circumstances exist is a fact intensive inquiry," and "[c]ourts have much discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal." *In re M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 870 (Bankr. S.D. Tex. 2023) (citation omitted); *In re New Towne Dev., LLC*, 404 B.R. 140, 147 (Bankr. M.D. La. 2009) (citations omitted). The "unusual circumstance" analysis "does not focus on unusual circumstances of a debtor's life; it focuses on unusual circumstances that make it not in the best interest of the creditors or estate." *In re Assadi*, No. 1:20-CV-998-LY, 2021 U.S. Dist. LEXIS 44377, at *10 (W.D. Tex. Mar.9, 2021) (citation omitted).

19.    Second, a debtor must prove the following four elements:

---

[3] Unless otherwise stated, any reference to a chapter, subchapter, or section is to title 11 of the United States Code (the "**Bankruptcy Code**").

(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate under § 1112(b)(4)(A); (3) there is reasonable justification or excuse for a debtor's act or omission; and (4) the act or omission will be cured within a reasonable time.

*Id.* (quoting *Delta AG Grp.*, 596 B.R. at 197).

> **B.** **The Court Can Summarily Deny the Motion, Because the Debtors Failed to Support the Motion with Reference to the Record or Newly Discovered Evidence.**

20.     The Court need not address whether it committed manifest error in finding there were no unusual circumstances precluding conversion for the simple reason that the Debtors (i) failed to cite to a single portion of the record, and (ii) cannot establish that the Unadmitted Documents are newly discovered evidence. Without any reference to evidence, the Motion contains nothing more than "vague and conclusory summary statements," which is fatal to a Rule 59(e) motion. *Thomas v. Rentie*, No. 22-cv-294-GLJ, 2025 U.S. Dist. LEXIS 3439, at *4 (E.D. Okla. Jan. 8, 2025).

> **1.** **The Motion makes no reference to the record.**

21.     The Motion is fatally flawed, because it fails to cite to any portion of the record in seeking reconsideration. A party seeking relief under Rule 59(e) must cite to "***specific record evidence*** such as any portion of the trial transcript or any trial exhibits in support of her assertion[s]." *Id.* A court will not engage in a "scavenger hunt" and "search the record for the evidence to support a party's contention" where a party "offers only vague and conclusory summary statements as to the evidence presented and that   the evidence presented." *Id.* at *4–5 (citations omitted).

22.     The Debtors do not attach the hearing transcripts. *See generally* Mot. Instead, the Debtors speak generally about the "[u]ncontroverted evidence . . . established at the hearing." Mot. ¶ 11. The Debtors also do not cite to any exhibit admitted into evidence. *See generally id.*; Order

3. Instead, the Debtors attach the Unadmitted Documents. *See id.* If the Debtor wanted the Court

to reconsider its decision, they were required to identify the testimony or document admitted at the

Conversion Hearing; the Debtors cannot make generalized references to such evidence. *See id.*

¶ 39; *Thomas*, 2025 U.S. Dist. LEXIS 3439, at *4–5.

23.     Because the Debtors have failed to support the Motion with any admitted evidence,

the Debtors have not, and cannot, establish that the Court committed manifest error in converting

the cases. Instead, the Debtors are using the Motion to introduce new evidence and arguments,

which is nothing more than an improper attempt to get a "second bite at the apple." *See In re

Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019) ("At the hearing on the Motion to Convert,

Debtor failed to argue that there were 'unusual circumstances' in Debtor's case that would persuade

the Court to decide against conversion. It is well-known that Rule 59(e) motions 'cannot be used

to raise arguments which could, and should, have been made before the judgment was issued. As

such, Debtor cannot use the Motion for Reconsideration as a second bite at the apple to argue that

there are 'unusual circumstances' that result in her case being subject to the exception to

conversion in § 1112(b)(2)." (citations omitted)).

### 2.     The Debtors do not, and cannot, establish the Unadmitted Documents are newly discovered evidence.

24.     The Debtors cannot rely on the Unadmitted Documents to seek reconsideration. A

party's "unexcused failure to present evidence available at the time of [the hearing] provides a

valid basis for denying a subsequent motion for reconsideration." *Molina*, 261 F. App'x at 733

(citation omitted). A court will not grant a Rule 59(e) motion on the basis of newly discovered

evidence unless "(1) the facts discovered are of such a nature that they would probably change the

outcome; (2) the facts alleged are actually newly discovered and could not have been discovered

earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696–97 (5th Cir. 2003) (citation omitted).

> **a.    The Debtors fail to establish the Unadmitted Documents are newly discovered evidence.**

25.    As an initial matter, the Debtors fail to address any of the elements to establish the Unadmitted Documents are newly discovered evidence. *See generally* Mot. The Court can deny the Motion on this basis alone. *See, e.g.*, *Ball v. Westbank Fishing, LLC*, No. 17-03153 Section: "A" (4), 2018 U.S. Dist. LEXIS 88969, at *9, 14–15 (E.D. La. May 29, 2018) (denying motion to reconsider and rejecting use of unadmitted documents where movant failed to argue documents were newly discovered). Nevertheless, none of the Unadmitted Documents are newly discovered evidence.

> **b.    The Unadmitted Documents are not newly discovered evidence.**

26.    None of the facts contained in the Unadmitted Documents are newly discovered evidence. Each of the Unadmitted Documents is discussed in turn.

27.    Exhibit A is a valuation report of Earth and EarthSnap dated May 5, 2025. *See* Mot. Ex. A at 1. The facts contained therein are not newly discovered evidence. First, the value of Earth and EarthSnap did not weigh on the Court's decision to convert the case, and thus would not change the outcome. *See generally* Order; *Infusion Res.*, 351 F.3d at 696. Second, Earth's and EarthSnap's value is not new and could have been, and was in fact, raised at the hearing. *See* Order 19 (noting Ralls testified that "conversion would result in the destruction of significant value by way of disruption of [Earth's] operations," but "find[ing] little credibility to this assertion"); Docket No. 122 (identifying Debtors' Exhibits 13 and 14 as financial projections of Earth and EarthSnap); *Infusion Res.*, 351 F.3d at 696–97.

28.     Exhibit B is a declaration from Ralls, who testified at the Conversion Hearing. *See* Mot. Ex. B; Order 19. In his declaration, Ralls repeatedly states he "did not know" or "was not made aware" of the Debtors' many failures. *See, e.g., id.* ¶¶ 7, 11. However, everything Ralls states in his declaration could have been raised at the Conversion Hearing,[4] and thus does not constitute newly discovered evidence. *Infusion Res.*, 351 F.3d at 696–97; *Arlington Apt. Invs., LLC v. Allied World Assur. Co.*, No. 4:12-CV-061-Y, 2014 U.S. Dist. LEXIS 191415, at *3 (N.D. Tex. Sept. 11, 2014) ("Plaintiff submits new affidavits . . . attempting to rectify the problems the Court found with their prior submissions. But Plaintiff wholly fails to demonstrate that this new evidence . . . could not and should not have been obtained and presented to the Court long before the issuance of judgment."). Even if this was somehow newly discovered, these statements would not change the outcome. *Infusion Res.*, 351 F.3d at 696. All of these "facts" amount to nothing more than an attempt by Ralls to shift blame to Wiley; however, Ralls cannot escape liability for the acts of his attorney-agent. *See infra* ¶ 40.

29.     Exhibit C is correspondence between Ralls and Wiley in August of 2024 related to the creation of GreenMind, LLC ("**GreenMind**"). *See* Mot. Ex. C. The facts contained therein are not newly discovered evidence. First, the fact that Wiley assisted Ralls in creating GreenMind is irrelevant, as Ralls is responsible for the actions of his attorney-agent. *See infra* ¶ 40; *Infusion Res.*, 351 F.3d at 696. Second, the Debtors knew that GreenMind was a factual issue at the Conversion Hearing, and could have included it on their exhibit list.[5] *See* Conversion Mot.

---

[4] Notably, Debtors' proposed counsel, Gregory W. Mitchell of Freeman Law, PLLC, was not just present at the second day of the Conversion Hearing where Ralls testified, but also interjected himself at the hearing, making closing arguments.

[5] Notably, the Debtors filed four exhibit lists between March 14 and 19, 2025. *See* Docket Nos. 117, 122–24.

¶¶ 105, 130 (referencing GreenMind); Movants' Exs. 85, 86 (exhibits relating to GreenMind); Mot. Ex. C (predating Movants' Exhibits 85 and 86); *Infusion Res.*, 351 F.3d at 696–97.

30.     Exhibit D is an alleged expert report purporting to show that Wiley committed malpractice representing the Debtors. *See* Mot. Ex. D. The facts contained therein are not newly discovered evidence. First, whether Wiley committed malpractice would not alter the outcome of conversion, because Ralls "voluntarily chose [his] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Infra* ¶ 40 (quoting *Pioneer Inv. Servs.*, 507 U.S. at 397); *Infusion Res.*, 351 F.3d at 696. Second, the facts are not newly discovered, because Ralls, by his own admission, knew of these concerns as early as November of 2024. *See infra* ¶ 44; *Infusion Res.*, 351 F.3d at 696–97. Third, the expert report would be cumulative, because the Debtors already believed "[u]ncontroverted evidence" of Wiley's alleged malpractice "was established at the hearing on the Motion to Convert." Mot. ¶ 11; *Infusion Res.*, 351 F.3d at 697.

31.     Exhibits E and F are not newly discovered, because they were identified on Debtors' exhibit list, but were not admitted into evidence. *Compare* Debtors' Exs. 12, 16 *with* Mot. Exs. E, F; Order 3 (stating Court admitted Debtors' Exs. 1–7; *Infusion Res.*, 351 F.3d at 696–97. The Debtors fail to explain why they did not seek admission of these two documents, or why the Court erred in admitting them. *See generally id.*

32.     Because the Debtors have not, and cannot, establish that the Unadmitted Documents are newly discovered evidence, the Court can wholesale ignore them. The Debtors cannot sustain their Motion through the use of these untimely documents.

**C.     The Court Did Not Commit Manifest Error by Finding No Unusual Circumstances Under Section 1112(b).**

33.     The Debtors state the Court committed manifest error by failing to find four unusual circumstances to mitigate against conversion: (1) that Wiley was responsible for the Debtors' failure; (2) the business enterprise is "on the verge an explosion of success"; (3) conversion only benefits their competitors; and (4) by remaining as debtors in possession, the Debtors can avoid prosecuting a professional malpractice claim against Wiley. *See* Mot. ¶¶ 3, 37.

34.     None of these circumstances constitute unusual circumstances. First, as previously stated, the Debtors cite nothing to the record to establish these claims. *See supra* section II.B.1. Second, the Debtors improperly support these claims with facts that are not newly discovered evidence. *See supra* section II.B.2. Third, even if the Court took these "vague and conclusory summary statements" at face value, none of these circumstances rise to the level of unusual circumstances. *Thomas*, 2025 U.S. Dist. LEXIS 3439, at *4–5. For these reasons, the Court did not commit manifest error in finding that the Debtors failed to meet their high burden in establishing unusual circumstances under section 1112(b)(2).

35.     Each of the Debtors' alleged "unusual circumstances" are discussed below.

**1.     Wiley's alleged failures.**

36.     The Debtors argue that Wiley kept them in the dark and they did not know of their failures in these cases. *See, e.g.*, *id.* ¶¶ 7, 11. This argument fails for a myriad of reasons.

**a.     Wiley's acts and omissions have no bearing on the unusual circumstances analysis.**

37.     The Debtors incorrectly apply the unusual circumstances prong of section 1112(b)(2). The Debtors argue that Wiley's conduct created "[u]nusual circumstances [which] undeniably let to most of the bases cited by the Court in its Order for converting the case." Mot. ¶ 3(1). However, under section 1112(b)(2), a court does not examine the unusual circumstances of

the failures resulting in a finding of cause, but the unusual circumstances that make conversion or dismissal inappropriate. *See* 11 U.S.C. § 1112(b)(2); *Assadi*, 2021 U.S. Dist. LEXIS 44377, at *10 (stating the unusual circumstances analysis does not focus on unusual circumstances of the debtor, but "focuses on unusual circumstances that make [conversion or dismissal] not in the best interest of the creditors or estate" (citation omitted)); *see, e.g.*, *In re Hyperion Found., Inc.*, No. 08-51288-NPO, 2009 Bankr. LEXIS 4647, at *21 (Bankr. S.D. Miss. Aug. 11, 2009) (finding unusual circumstances where dismissal would create "chaos among the nursing home residents and in the community"). Stated differently, the Debtors are attempting to identify unusual circumstances to justify their failures; not identify the unusual circumstances showing that conversion is inappropriate.

38.    The Debtors have not, and cannot, cite any authority for the proposition that the ***continued*** use of an attorney committing malpractice constitutes unusual circumstances under section 1112(b)(2).[6] *See generally* Mot.; *In re Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 173, 177 (B.A.P. 1st Cir. 2016) (finding no unusual circumstances under section 1112(b)(2), and stating, "The record clearly establishes that the Debtor failed to file timely several monthly operating reports. Although the Debtor blames its late filing on its counsel's email system and the U.S. Trustee's failure to notify the Debtor that it was not in compliance, the bankruptcy court found these excuses were not sufficient or persuasive. It was the Debtor's obligation to comply with its reporting requirements and to ensure that it counsel timely filed the reports with the U.S. Trustee and the bankruptcy court.").

---

[6] Even then, the Debtors appear to have retained new counsel, thus mooting any unusual circumstance. *See* Docket No. 134.

**b.    The Debtors are accountable for the acts of their attorney-agent.**

39.    It is well-established law that, because the Debtors "voluntarily chose [Wiley] as [their] attorney as [their] representative in the action," they "cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 397 (1993) (citation omitted); *see also In re Sann*, No. 14-61370-7, 2016 Bankr. LEXIS 1085, at *12 (Bankr. D. Mont. Apr. 5, 2016) ("The Debtor will not escape responsibility for his attorney's actions in transferring funds from the trust account. The Debtor voluntarily selected Sherwood and his other attorneys and he cannot avoid the consequences of the acts or omissions of his freely-selected attorney." (citations omitted)); *In re Stokes*, No. 09-60265-11, 2009 Bankr. LEXIS 3030, at *45–46 (Bankr. D. Mont. Sept. 21, 2009) ("Stokes admitted that his Schedules and SOFA contained numerous errors and omissions, and blames his attorney for the condition of the original Schedules. However, Stokes voluntarily selected Duncan as his attorney of record, and he cannot avoid the consequences of the acts or omissions of his freely-selected attorney." (citations omitted)); *Artificial Intel. Corp. v. Casey (In re Casey)*, 193 B.R. 942, 949 (Bankr. S.D. Cal. 1996) ("While [holding plaintiffs liable for their attorneys' failure to serve complaints within 120 days] may seem harsh towards the plaintiffs, they are accountable to the acts of their attorneys." (citation omitted)). Accordingly, the Debtors' main argument fails as a matter of law.

**c.    The Debtors' argument is factually unsupported.**

40.    Even if the Debtors could escape conversion by blaming Wiley, the Debtors failed to present evidence at the Conversion Hearing that Wiley was actually to blame for the Debtors' failures. The Debtors make serious allegations regarding Wiley, including that he "failed to demonstrate even a basic level of competence as it relates to this case" and that he "demonstrated a gross degree of negligence in his conduct." Mot. ¶¶ 8, 25. The Debtors also claim that these

problems "dated to the inception of the case." *Id.* ¶ 16. However, the Debtors cannot establish these alleged facts with citations to the record. *See generally id.* Instead, the Debtors identify various failures, such as the failure timely file monthly operating reports and obtain a debtor-in-possession account, and then make the unsupported statement that all of them "are attributable to the inadequacy of [Wiley]." *Id.* ¶ 12. These "vague and conclusory summary statements" cannot support a Rule 59(e) motion. *Thomas*, 2025 U.S. Dist. LEXIS 3439, at *4–5.

41.    Even if the Court relied on two of the Unadmitted Documents to establish these claims—the Ralls declaration and expert report, these documents do not establish that Wiley caused the Debtors' failures.

42.    The Ralls declaration amounts to nothing more than a self-serving declaration, which further evidence the Debtors' own failures. The crux of the Ralls declaration is that Wiley did not keep Ralls informed and that Ralls was unaware of any deficiencies.[7] *See generally* Mot. Ex. B. This position is based on unsupported statements. For example, Ralls states that he "timely provide information sufficient to [Wiley] to prepare and file monthly operating reports." *Id.* ¶ 5. However, he provides no actual facts to support this statement, such as what information he provided and when he provided such information. *See id.* This position is also contradicted by clear evidence. For example, Ralls claims that he "was not aware of and was not made aware of this Court's discovery orders." *Id.* ¶ 11. However, Ralls was present at both the December 19, 2024 and February 11, 2025 hearings, both of which addressed discovery deficiencies, and the latter of which specifically addressed HI Investment's *Request for Expedited Virtual Hearing on Discovery*

---

[7] Had the Debtors properly raised this argument, the Creditors could have, and would have, examined communications between the Debtors and Wiley. *See In re Korn*, 523 B.R. 453, 466 (Bankr. E.D. Pa. 2014) ("[T]he Debtor withdrew the asserted excuse after it became clear that blaming counsel would open the door to scrutiny of his communications with counsel.").

*Matters* [Docket No. 87]. *See* Order 2. Notably, in the Show Cause Order issued shortly after the

February 11, 2025 hearing, the Court expressly stated, "It appeared to the Court at the hearing

Debtors may *still* have not complied with the directives in the Discovery Orders." *See* Docket No.

94 at 1. The self-serving Ralls declaration only serves to further diminish Ralls' credibility. *See*

Order 19 (finding "little credibility" in Ralls' testimony on the impact of conversion).

43.     Moreover, the Ralls declaration corroborates existing evidence that, to the extent

Wiley was responsible for the acts and omissions, the Debtors knew about these issues, yet chose

to sit idle. The existing record shows that Ralls knew of the issues underlying the Show Cause

Order and Conversion Motion in late-2024. *See, e.g.*, Debtors' Ex. 4 (Ralls sending DIP bank

statements, noting the "deadline on the 20th," and stating, "Let's please be sure to file them on

time with the court"). And again, Ralls was present during the December 19, 2024 and February

11, 2025 hearings, where the Court expressed concerns with monthly operating reports,

compliance with discovery order, and debtor-in-possession accounts. The Ralls declaration further

supports the existing record. Ralls states he had concerns with Wiley as early as November of

2024. *See* Mot. Ex. B, ¶ 2 (Ralls stating he learned Wiley allegedly incorrectly listed his address

in November of 2024, but did not remedy the error until December of 2024; *see also id.* ¶ 5 (Ralls

stating he attempted to obtain bank statements since July of 2024, but noting Wiley did not send a

demand letter to the bank until December 24, 2024). Despite believing that Wiley was responsible

for the Debtors' failures since November of 2024, the Debtors continued to employ Wiley for the

next several months, including through the Conversion Hearing. The Debtors cannot avoid

conversion by knowingly using Wiley as both a sword and shield. *See In re Spiegel*, 662 B.R. 666,

688, 688 n.15 (Bankr. N.D. Ill. 2024) (finding no "unusual circumstances" to appoint chapter 11

trustee, and noting debtor blamed original counsel and "hid[] behind counsel when his actions [wer]e question[ed]," but "continued to avail himself of [counsel's] assistance in this case").

44.    The expert report also misses the mark, because it assumes facts which the Debtors never established at the Conversion Hearing. For example, there is no evidence in the record that "Wiley failed to inform[] Debtors of basic activity in the case." Mot. Ex. D, ¶ 11; *see also id.* ¶ 12. Moreover, although Wiley identified his challenges at various points in this case, and the record evidences the Debtors' failures to file and timely file documents, there is no evidence that Wiley's challenges **caused** or "**precipitated**" such failures. *Id.* ¶ 10 (emphasis added).

45.    Even assuming there was some evidence that Wiley caused the failures, the Debtors are not without blame. Ralls blames Wiley for "incorrectly list[ing] my address as '6691 Park Slope' instead of '6961 Park Slope.'" Mot. Ex. B. ¶ 3. However, Ralls, **on three separate occasions**, signed petitions and amended petitions **under penalty of perjury**, stating his address was "6691 Park Slope." *See* Docket Nos. 1, 12; Ralls Case, Docket No. 1. Moreover, the Debtors were obligated to accurately state and maintain their address. *See* Fed. R. Bankr. P. 4002(a)(5). Had the Debtors accurately maintained their address, they would have received documents served under Bankruptcy Rule 2002, including the Conversion Motion. *See* Docket No. 97-13.

    **2.    The Debtors' "imminent success."**

46.    The Debtors also claim there are unusual circumstances because the business enterprise is "on the verge of an explosion of success that will render it much more likely that all creditors will get paid in full." *See* Mot. ¶ 37.

47.    Assuming the Debtors raised this argument and supported it with evidence, the Debtors cite no authority for the proposition that a debtor on the "verge of an explosion of success" is an unusual circumstance mitigating against conversion. *See generally id.* Although there is authority for the proposition that unusual circumstances exist where a plan proposes to pay

16

creditors in full on the petition date, the is not such case. *See In re M & C P'ship*, No. 19-11529, 2021 Bankr. LEXIS 1135, at \*20, 31–32 (Bankr. E.D. La. Apr. 28, 2021) (finding no unusual circumstances where debtor's plan, which proposed to pay creditors in full, had "unresolved concerns and contingencies surrounding the proposed funding" (citing *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008)).

48.    The Debtors do not dispute that they filed a patently unconfirmable plan. *See generally* Mot. Instead, the Debtors believe the Amended Plan, which was not filed until **after** the Conversion Hearing, cures may of their failures. *See id.* ¶¶ 28–31. As an initial matter, the Court was under no obligation to consider the Amended Plan. *See Morreale v. 2011-SIP-1 CRE/CADC Venture, LLC*, No. 15-cv-0008-WJM, 2015 U.S. Dist. LEXIS 10921, at \*8 (D. Colo. Jan. 30, 2015) ("The Court recognizes that the Debtor has filed a new plan since the conversion order was entered, but such subsequent actions do not make the bankruptcy court's findings clearly erroneous. While it would have been within the bankruptcy court's discretion to delay converting the case to allow the Debtor time to come up with a new reorganization plan, the court's failure to do so is not error. It was certainly within the bankruptcy court's discretion to determine that the Debtor would be unable to rehabilitate his estate . . . .").

49.    Even if the Court did consider the Amended Plan, that plan still does not remedy PlantSnap's or the Court's concerns. First, the Amended Plan does not address the Creditors' concerns with plan feasibility. *Compare* Docket No. 166 *with* Docket No. 103, ¶¶ 33–39.

50.    Additionally, under the Amended Plan, the Debtors state that PlantSnap and DEJP, "collectively,[8] will have an Allowed Claim for the principal amount of $2.5 million," which will

---

[8] It is unclear why PlantSnap and DEJP's claims are paid "collectively." PlantSnap's and DEJP's secured claims are based on two different binding term sheets. Under the binding term sheets, PlantSnap and DEJP are secured up to $2.5 million and $1.5 million (excluding interest and fees), respectively. *See* Movants' Exs. 37, 38.

be paid in full over five years.[9] *See* Docket No. 166 at 31. Yet, PlantSnap has an allowed secured

claim against Ralls in the amount of $2,599,175.95. *See* Movants' Ex. 37. The Amended Plan

proposes to pay PlantSnap less than its allowed secured claim in violation of section 1129(a)(1).

Moreover, the Court noted that the Plan "appears dependent on relief which [the Debtors] have not

requested from the Court," and cited the following Plan provision as support:

> At the hearing on the estimation of claims, the Debtors seek to prevail on the theory
> that the Allowed Secured Claim of PlantSnap is capped on its terms . . . for $2.5
> million, payable on its terms over a three year [sic] period at 8%.

Order 13–14 (citation omitted). The only way the Debtors can confirm the Amended Plan and pay

PlantSnap $2.5 million is through the claims process. *See id.* at 14. However, it still holds true now

as it did at the Conversion Hearing that "[n]o claim estimation motions, nor claims objections,

have been filed by the Debtors regarding any secured claims." *Id.*

51.     Furthermore, although the Amended Plan contains a liquidation analysis, that

analysis is woefully inaccurate. *See* Docket No. 166 at 14–15. The Debtors claim that

$1,131,396.92 in unsecured debt would go unpaid. *Id.* at 15. However, this is based on the incorrect

claim that PlantSnap and DEJP are entitled to the entire value of Ralls' shares in Digital Earth

Media, Inc. ("**DEM**"), which the Debtors value at $11.5 million. However, PlantSnap and DEJP

assert secured claims against the DEM shares (and only the DEM shares) in the collectively

amount of $4,099,175.95, which means unsecured creditors can share in the remaining

$7,400,824.05. *See* Movants' Exs. 37, 38. This amount resolves the $1,131,396.92 shortfall, and

even provides a return to the Debtors.

---

[9] The Amended Plan does not provide for interest on PlantSnap's and DEJP's claims.

### 3.    Impact on "competition."

52.    The Debtors next claim that unusual circumstances exist because PlantSnap acted solely to eliminate a competitor at the expense of the estate. *See* Mot. ¶¶ 41–46.

53.    Again, the Debtors cite no evidence to support this statement. *See supra* section II.B. Even then, the Debtors cite no authority for the proposition that a creditor seeking conversion creates unusual circumstances under section 1112(b)(2). *See generally id.* The sole case cited by the Debtors is inapplicable. *See id.* ¶ 44 (citing *In re E.S. Bankest, L.C.*, 321 B.R. 590 (Bankr. S.D. Fla. 2005)). That case did not analyze unusual circumstances under section 1112(b)(2). *See generally E.S. Bankest*, 321 B.R. at 590. Nor does that case stand for the proposition that "a court should evaluate whether the creditor's interest extend beyond financial recovery and could potentially harm the debtor's business." Mot. ¶ 45. In *E.S. Bankest*, a party (who was not even a creditor) could not prosecute a conversion motion because it had no pecuniary interest in the estate, admitted its sole interest was to "preserv[e] its rights and defenses in the Adversary Proceeding," did not have a sufficient or practical stake in the outcome of the case, and did not have a legally protectible interest in the case. 321 B.R. at 598–99.

54.    Here, PlantSnap is not just a creditor of the Debtors' estate, but their largest creditor. *See* Movants' Exs. 25, 36. The fact that PlantSnap may also be a competitior of Earth or EarthSnap—an assertion with which it disagrees and for which there is no evidence—is irrelevant, as competitors are often creditors or parties in interest in bankruptcy cases. *See, e.g.*, *In re Express One Int'l*, 194 B.R. 98, 99 (Bankr. E.D. Tex. 1996) (addressing competitor-creditor's motion to terminate exclusivity period); *In re Premiere Network Servs.*, 333 B.R. 130, 130 (Bankr. N.D. Tex. 2005) (addressing separately classifying competitor-creditor's claim in plan); *In re Plant Specialties, Inc.*, 59 B.R. 1, 1 (Bankr. W.D. La. 1986) (addressing competitor-creditor participating

in unsecured creditors' committee); *In re Alco Corp.*, No. 12-00139 MCF, 2013 Bankr. LEXIS 919, at *2 (Bankr. D.P.R. Mar. 11, 2013) (addressing competitor-creditor's motion to convert chapter 11 cases). The Creditors filed the Conversion Motion not to gain a competitive advantage, but to redress the Debtors' lack of transparency and countless reporting failures. *See* Conversion Mot. ¶ 3.

55.    Moreover, the Debtors ignore the fact that HI Investments joined and prosecuted the Conversion Motion. *See* Docket No. 101. HI Investments is not a competitor, but the other interest holder in Earth and EarthSnap's parent company. *See* Movants' Ex. 14, ¶ 29; *E.S. Bankest*, 321 B.R. at 600 ("[T]o the extent that certain creditors and interested parties have joined in the Motino to Convert, those creditors and interested parties may proceed to prosecute the Motion to Convert.").

### 4. Post-petition malpractice claim.

56.    The Debtors' final argument that unusual circumstances exist is that the Debtors can avoid prosecuting a professional malpractice claim against Wiley if the cases are not converted. *See* Mot. ¶¶ 47–48.

57.    Not only is this argument tardy and unsupported, but it is nonsensical. *See supra* section II.B. Because the Debtors filed voluntary petitions under subchapter V, the estate—whether in subchapter V or chapter 7—does not have an interest in any post-petition malpractice claim. *See* 11 U.S.C. §§ 1115(a)(1), 1181(a); *see also In re Robinson*, 628 B.R. 168, 179 (Bankr. D. Kan. 2021). Whether the Debtors decide to prosecute this claim is of no interest to the estates or their creditors.[10]

---

[10] It is unclear why remaining in chapter 11 would prevent the Debtors from prosecuting the malpractice claim. It is also unclear why the Debtors would not assert a malpractice claim based on what they perceive to be strong claims against Wiley.

### D.   The Debtors Have Failed to Establish the Remaining Elements of Section 1112(b)(2).

58.    Even assuming the existence of unusual circumstances, the Debtors still did not establish the remaining three elements under section 1112(b)(2).[11]

59.    First, there is not a reasonable likelihood the Debtors can confirm a plan within a reasonable amount of time. *See* 11 U.S.C. § 1112(b)(2)(A). As discussed above, the initial plan was patently unconfirmable, and the Amended Plan fails to remedy the deficiencies in the initial Plan. *See supra* ¶ 49. Moreover, the EarthSnap initiated its bankruptcy case more than eleven months ago, and the Debtors still cannot put forth a facially-confirmable plan despite having already obtain an extension of time. Docket No. 1; Order 12–15.

60.    Second, there is no reasonable justification for the Debtors' failures. *See* 11 U.S.C. § 1112(b)(2)(B)(i). Again, the Debtors cite to no admitted evidence that "the Debtors . . . had no culpability in the deficiencies found by the Court that formed the basis of its Order." Mot. ¶ 33. On the contrary, the record establishes that Debtors were responsible for their failures. *See, e.g.*, *supra* ¶ section II.C.1. Importantly, the Court found that "money flows back and forth, up and down, between Mr. Ralls and these entities without clear explanation or disclosure." Order 11. The Debtors do not, and cannot, blame Wiley for these transfers; that failure falls squarely on Ralls. *See, e.g.*, Movants' Ex. 86.

61.    Third, the Debtors cannot cure the failures within a reasonable period of time. *See* 11 U.S.C. § 1112(b)(2)(B)(ii). Although the Debtors filed the Amended Plan and numerous MORs, the Amended Plan is deficient and the MORs raise more questions than answers. *See supra* ¶¶ 49–

---

[11] The Court did not find cause under section 1112(b)(4)(A). Therefore, the Debtor need not provide that "the grounds for converting or dismissing the case include an act or omission of the debtor other than under [section 1112(b)(4)(A)]." 11 U.S.C. § 1112(b)(2)(A).

52. For example, in the January 2025 MOR, Ralls identifies $8,500.00 in receipts and $18.50 in disbursements; Ralls supports these numbers with two bank statements. *See* Movants' Ex. 35. However, in the Amended January 2025 MOR, Ralls identifies $422.16 in receipts and $422.16 in disbursements; Ralls supports these numbers not with bank statements, but exhibits. *See* Docket No. 164. Ralls makes no attempt to explain these jarring inconsistencies despite signing both MORs **under penalty of perjury**. *Compare* Movants' Ex. 35 *with* Docket No. 164.

## CONCLUSION

62.    For the foregoing reasons, the Creditors respectfully request that the Court deny the Motion.

Respectfully submitted,

Dated: June 20, 2025

*/s/ Patrick R. Akers*
Patrick R. Akers (CO 54803)
MARKUS WILLIAMS YOUNG & HUNSICKER LLC
1775 Sherman Street, Suite 1950
Denver, Colorado 80203
(303) 830-0800
(303) 830-0809 (facsimile)
pakers@markuswilliams.com

Dean E. Richardson (CO 35349)
GOULD & RATNER LLP
1801 Wewatta Street, 11th Floor
Denver, Colorado 80202
(303) 284-1062
(312) 236-3241 (facsimile)
drichardson@gouldratner.com

*Counsel for PlantSnap*

*/s/ Peter W. Thomas*

Peter W. Thomas (CO 27657)
PRAXIDICE, PC
124 West Hyman Avenue, Suite 1A
Aspen, Colorado 81611
(970) 544-5900
peter@praxidicelaw.com

*Counsel for DEJP*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 20, 2025, a copy of the foregoing *Joint Opposition to Debtors' Motion for Reconsideration Regarding Order Converting Cases to Chapter 7* was electronically filed using the Court's electronic filing system. Notice of this filing will be sent by all parties by operation of the Court's system. Parties may access this filing through the Court's system.

<u>*/s/ Patrick R. Akers*</u>
Patrick R. Akers (CO 54803)

*Counsel for PlantSnap*