**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24-60504 |
| | ) | |
| ERIC RALLS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

**PLANTSNAP INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO EXERCISE VOTING AND OTHER RIGHTS WITH RESPECT TO THE DEM SHARES AND FOR RELATED RELIEF**

> **Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**
>
> **No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

PlantSnap Inc. ("**PlantSnap**"), by and through undersigned counsel, moves (the "**Motion**") for relief from the automatic stay to exercise voting and other rights with respect to the DEM Shares (as defined below) and for related relief, and states as follows:

**INTRODUCTION**

1. Eric Ralls ("**Ralls**") has created a business enterprise that generates between $140,000 and $175,000 in profits per month. Rather than retain those profits in the enterprise or distribute those profits for the benefit of the estate, Ralls is transferring those profits to his personal company, where he uses the profits for his own benefit. *During his nearly twelve-month bankruptcy case, Ralls has transferred, at least, between $800,000 and $1.1 million out of the*

*enterprise for his own benefit*. Because Ralls shows no sign of stopping these transfers, PlantSnap moves for relief from the automatic stay to exercise its voting and other rights to the shares that control the enterprise, which Ralls granted to PlantSnap in connection with a binding agreement and confession of judgment.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief requested herein are sections 105 and 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**"),[1] Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and LBR 4001-1.

## BACKGROUND FACTS

### General Background of Ralls

4. Ralls has an extensive history of defrauding creditors, investors, and vendors. In the late 1990s, Ralls was found guilty of theft by check.[2]

5. In 1997, the States of Arizona and Hawaii investigated Ralls' illegal offshore credit card and payment scheme. Ralls was charged with fraudulent schemes/artifices, theft, illegal control of an enterprise, and operating an illegal pyramid promotional scheme. ***Ralls plead guilty***

---

[1] All references to sections or chapter are to the Bankruptcy Code unless otherwise stated.

[2] *See Ralls v. State*, No. 03-98-00212-CR (Tex. Crim. App.).

*to operating an illegal pyramid promotional scheme*, and was sentenced to two years of probation, and ordered to pay $14,701 in restitution and $40,000 in fines.[3]

6. In 2010, Microsoft Corporation sued Ralls and his company, RedOrbit, Inc. ("**RedOrbit**"), claiming Ralls used a sophisticated pay-per-click ad fraud scheme to boost website hits and revenue.[4]

7. In 2017, Taboola, Inc. sued Ralls and RedOrbit, alleging breach of contract and fraudulent conveyance, claiming Ralls transferred all of RedOrbit's assets to a new entity in 2014 while insolvent or for no consideration.[5]

8. Following RedOrbit's demise, Ralls founded PlantSnap, which obtained more than $17 million from DEJ Partners, LLC ("**DEJP**") as well as $705,000 from sophisticated and unsophisticated investors in February and March of 2021. A Colorado state court ultimately determined that Ralls converted that $705,000, finding **Ralls "had the convertible notes issued without proper authorization and had the funds deposited in an unauthorized account . . . for his personal use**." Ralls hired Matthew Giblin as PlantSnap's CFO, who discovered that Ralls was transferring PlantSnap's assets to Earth. When PlantSnap defaulted on its obligations to DEJP and failed to repay more than $12 million, DEJP exercised its right to vote Ralls' shares in PlantSnap's

---

[3] *See State v. Ralls*, No. 1997-008857 (Ariz. Super. Ct. Maricopa Cty.); *In re GMG Glob. Mktg. Grp.*, No. SEU-97-054 (Haw. Dep't of Com. & Consumer Aff.); *see also Business Briefs*, Honolulu Star Bull. (Sept. 12, 1997), https://archives.starbulletin.com/1997/09/12/business/bizbriefs.html.

[4] *See Microsoft Corp. v. Ralls*, No. 2:10-CV-0818-JCC (W.D. Wash.); *see also* Nancy Gohring, *Microsoft Chases 'Click Laundering'*, NETWORK WORLD (May 19, 2010), https://www.networkworld.com/article/730844/network-security-microsoft-chases-click-laundering.html.

[5] *Taboola, Inc. v. RedOrbit, Inc.*, No. 651410/2017 (N.Y. Super Ct. N.Y. Cty.); *see also RedOrbit.com Completes Strategic Sale to Science Matters Media*, Founders Advisors (Aug. 19, 2014), https://foundersib.com/2014/08/19/redorbit-com-completes-strategic-sale-to-science-matters-media/.

3

common stock, which Ralls pledged in connection with the loans. In March of 2021, PlantSnap removed Ralls as PlantSnap's CEO and sole director.

### The State Court Action: Part I

9. On March 17, 2021, PlantSnap (and later DEJP) initiated an action against Ralls and Earth in the case styled, *PlantSnap Inc. v. Ralls*, No. 2021CV30005 (Colo. Dist. Ct. San Miguel Cty. Mar. 17, 2021) (the "**State Court Action**"), seeking a declaration that Ralls was properly removed from PlantSnap and seeking more than $2.5 million in damages on account of widespread civil theft, conversion, and fraud.

10. Throughout the State Court Action, PlantSnap was confronted with countless acts of obfuscation by Ralls and Earth, including the following:

    a. Less than one hour after the Court entered a preliminary injunction order, Ralls began destroying evidence and permanently deleting PlantSnap's accounts, including communications with PlantSnap's investors. Ralls did not turn over the accounts until those communications were permanently deleted. PlantSnap and DEJP moved for sanctions, and the state court awarded both remedial and punitive sanctions, including an award of fees and expenses in the amount of $84,938.76 and ***sentencing Ralls to forty-eight hours in county jail***.

    b. Numerous discovery abuses resulting in the state court awarding PlantSnap and DEJP their attorneys' fees and costs.

    c. During the depositions of Ralls, individually and on behalf of Earth, Ralls invoked his Fifth Amendment privilege ***279 times***.

11. In March and April of 2022, eleven months into the State Court Action, Ralls created three new entities—EarthSnap Inc. ("**EarthSnap**"), Digital Earth Media, Inc. ("**DEM**"),[6] and Metaversal Knowledge Inc. ("**Metaversal**")—which he created to continue perpetuating his fraudulent activities. DEJP later asserted fraudulent conveyance claims against these entities.

---

[6] DEM is a Delaware corporation. *See* Exhibit 1, DEM Statement of Foreign Entity Authority.

12. PlantSnap and DEJP filed partial motions for summary judgment. On April 18, 2023, the state court granted DEJP's motion, awarding it $978,043.23 in damages. The state court did not issue an order on PlantSnap's motion.

### The Colorado Bankruptcy Cases

13. On April 19, 2023, Ralls, Earth, and EarthSnap filed voluntary petitions for relief under subchapter V of chapter 11 in the United States Bankruptcy Court for the District of Colorado in the cases styled, *In re Ralls*, No. 23-11620-TBM (Bankr. D. Colo. Apr. 19, 2023), *In re Earth.com, Inc.*, No. 23-11621-TBM (Bankr. D. Colo. Apr. 19, 2023), and *In re EarthSnap, Inc.*, No. 23-11622 (Bankr. D. Colo. Apr. 19, 2023).

14. On July 19, 2023, the Colorado bankruptcy court granted PlantSnap and DEJP relief from the automatic stay to liquidate their claims in the State Court Action.

15. Less than one month later, on August 11, 2023, Ralls, Earth, and EarthSnap moved to dismiss the Colorado bankruptcy cases, which occurred on October 17, 2023.

### The State Court Action: Part II

16. Once the Colorado bankruptcy court lifted the automatic stay, the state court set the State Court Action for a ten-day jury trial beginning March 4, 2024.

17. In the weeks leading up to trial, Ralls and the other State Court Action defendants suffered crippling defeats. On January 11, 2024, the state court granted PlantSnap's partial summary judgment motion, awarding PlantSnap $705,000 in damages. Between February 6 and 9, 2024, the state court granted all of PlantSnap's and DEJP's motions in limine, which precluded Ralls from presenting expert testimony and testifying on any topic in which he invoked his Fifth Amendment privilege. As a result, Ralls was effectively precluded from testifying at trial.

**The Binding Term Sheet and PlantSnap's Right to Vote the DEM Shares**

18. On February 19, 2024, PlantSnap, Ralls, and the other State Court Action defendants entered into that certain Binding Term Sheet (the "**Binding Term Sheet**"), a copy of which is attached at Exhibit 2. The Binding Term Sheet contained the following provisions:

   d. Ralls agreed to pay PlantSnap $2.5 million over a thirty-seven month period. *See* Ex. 2, ¶¶ 3, 3(F)(a). The first twelve payments were in the amount of $7,500 per month, commencing on May 7, 2024. *Id.* ¶ 3(F)(a).

   e. Ralls secured the obligations under the Binding Term Sheet with his shares of DEM's common stock (the "**DEM Shares**"). *Id.* ¶ 3(A).

   f. "PlantSnap, upon an event of default, shall be empowered to exercise all voting and other rights associated with the Pledged Shares until such time as their disposition . . . ." *Id.* ¶ 3(D).

   g. Upon a monetary default, PlantSnap was required to provide Ralls and the State Court Action defendants with a written notice of default giving them seven days to cure the default. *Id.* ¶ 3(F)(c). If Ralls or the State Court Defendants failed to cure the default, then "any right to cure shall be irrevocably waived and PlantSnap shall be entitled to exercise all rights and remedies it may have against the Ralls Parties, individually or cumulatively." *Id.* Notice could be delivered by email to Ralls at ralls@earth.com. *Id.*

19. PlantSnap perfected its security interest in the DEM Shares by filing UCC-1 Financing Statements on February 28, 2024 with the Colorado Secretary of State at Validation No. 20242018639 and the Texas Secretary of State as Filing No. 24-0018665507. *See* Exhibit 3, UCC-1 Financing Statements.

20. On July 10, 2024, PlantSnap emailed a notice of default to Ralls (the "**Default Notice**"). *See* Exhibit 4, Default Notice. Ralls and the State Court Action defendants failed to timely cure the default, resulting in PlantSnap filing a confession of judgment pursuant to paragraph 7 of the Binding Term Sheet. *See* Ex. 2, ¶ 7; Exhibit 5, Confession of Judgment.

21. Ralls refused to turn over the DEM Shares. *See* Exhibit 6, ¶¶ 3–4, Forthwith Motion. On August 14, 2024, PlantSnap filed a Forthwith *Motion for Order to Apply Property on*

6

*Judgment* in the State Court Action, seeking an order requiring Ralls to deliver the DEM Shares to PlantSnap. *See id.* That same day, the state court entered an order requiring Ralls to respond to the motion by August 23, 2024. *See* Exhibit 7, Order on Forthwith Motion.

### The Texas Bankruptcy Cases

22. On August 18, 2024, Ralls filed a voluntary petition for relief under subchapter V of title 11 to prevent PlantSnap from foreclosing on and voting the DEM Shares. *See* Docket No. 1; Hr'g Tr. 9:8–10:5, Dec. 19, 2024, excerpts of which are attached at Exhibit 8. Ralls' bankruptcy case was jointly administered with the bankruptcy case of EarthSnap, *In re EarthSnap, Inc.*, No. 24-60363 (Bankr. E.D. Tex. June 17, 2024) (the "**EarthSnap Case**"). *See* Docket.

23. PlantSnap, DEJP, and HI Investments, LLC ("**HI Investments**") have filed nondischargeability actions against Ralls. *See* Docket Nos. 29, 31, 33.

24. PlantSnap, DEJP, and HI Investments moved to convert the cases, which the Court did on April 21, 2025. *See* Docket. In the Court's order, it held that Ralls grossly mismanaged his estate, finding that EarthSnap or a non-debtor affiliated entity paid his living expenses, and that "money flows back and forth, up and down, between Mr. Ralls and [his related] entities without clear explanation or disclosure." EarthSnap Case, Docket No. 167 at 8–11.

25. On April 30, 2025, the Trustee was appointed as the chapter 7 trustee of Ralls' bankruptcy estate. *See* Docket No. 45.

26. On June 9, 2025, the Trustee filed a motion to approve bid procedures to sell the DEM Shares and Ralls' other equity interests. *See* Docket No. 51. Several parties, including PlantSnap, objected to that motion. *See* Docket Nos. 59, 63–64.

27. The Trustee has not exercised her rights to vote the DEM Shares, and Ralls remains DEM's CEO and sole director.

28. On October 10, 2024, PlantSnap submitted Proof of Claim No. 6-1 (the "**Proof of Claim**"), asserting a secured interest in the DEM Shares. DEJP also asserts a secured interest in the DEM Shares. *See* Proof of Claim No. 10-2.

**Ralls Has Abused, and Continues to Abuse, the Bankruptcy Code to Perpetuate His Fraud**

29. Ralls claims to have created an enterprise that is "focused on nature, the preservation of species, and the global environment." EarthSnap Case, Docket No. 75, ¶ 12. The enterprise is comprised of three entities: DEM, EarthSnap, and Earth (collectively, the "**Enterprise**").

30. DEM is the parent of the Enterprise. *Id.* ¶ 29. Ralls has an 86% interest in DEM, whereas HI Investments has a 14% interest. *Id.* DEM has a 100% interest in two companies: EarthSnap and Earth. *Id.* ¶ 30.

31. EarthSnap earns revenue through "subscriptions, which is [where] people pay ay early or monthly fee to use the application." Ex. 8 at 4:24–5:22. EarthSnap earns minimal revenue. *See id.* at 15:15; *see also* EarthSnap Meeting Creditors Tr. 11:8–12, May 22, 2025 (stating EarthSnap generates roughly $1,500 per month), excerpts of which are attached at Exhibit 9.

32. Earth provides news and information concerning nature, science, and the environment through the website, http://www.earth.com/ (the "**Earth Domain**").[7] Earth generates substantial revenue through advertising. *See* Ex. 8 at 4:18. Between July of 2024 through February of 2025, Earth's net profit was $875,144.32. *See* EarthSnap Case, Docket No. 166-1 at 1–2. Earth generates, on average, between $200,000 and $250,000 per month. *See* Ex. 8 at 29:22–25. Earth has few expenses, which include compensation for Ralls and eight to ten additional people and a

---

[7] EARTH.COM, https://www.earth.com/ (last visited July 18, 2025).

handful of vendors. Ralls Meeting Creditors Tr. 27:14–29:6, May 22, 2025, excerpts of which are attached at Exhibit 10. Earth's gross profit margin is roughly 70%. *Id.* at 30:4–5.

33. Earth does not retain its profits or distribute profits to DEM. Instead, all of Earth's profits flow to Greenmind LLC ("**Greenmind**") (and previously Metaversal), which is owned and controlled exclusively by Ralls:

> Q. So essentially Earth.com is funneling all of its revenues to another non-debtor entity that is solely 100 percent owned and controlled by you, correct?
>
> A. That is correct. The management company of Earth.com is 100 percent owned by me.

Ex. 8 at 31:1–5; *see also* Ex. 10 at 25:14–15; EarthSnap Meeting Creditors Tr. 39:15–20, July 9, 2024 ("Q. So, are you saying that Earth.com have revenue contracts, where Earth.com is earning revenue, but you are redirecting that revenue where it never enters a[n] Earth.com or DEM [account],which DEM is the sole banking institution for Earth.com currently today. Is that correct? A. Yes, that's correct."), excerpts of which are attached at Exhibit 11. Ralls created Greenmind three days before filing for bankruptcy to shield Earth's cash from PlantSnap and other creditors. *See* Ex. 10 at 13:10–13; EarthSnap Case, Docket No. 75, ¶¶ 33–35 (stating Greenmind was established "[a]s a partial solution" to avoid "Metaversal Knowledge's assets [from being] seized and . . . taken over by a third party" and Ralls being "forced to get another job"); EarthSnap Case, Docket No. 167 at 9 (finding Ralls created Greenmind on August 15, 2025).

34. Ralls claims Greenmind is akin to a "not for profit" because "it doesn't earn anything" and is "just a company that does management and distributes funds." Ex. 10 at 20:12–15. However, Ralls uses the Greenmind bank account to pay his personal expenses. *See* EarthSnap Case, Docket No. 167 at 10–11, 14; Ex. 10 at 18:2-7 (Ralls stating he uses the Greenmind bank account to pay post-conversion personal expenses). Furthermore, there are no written agreements between Ralls and Greenmind or Greenmind and Earth or EarthSnap. *See* Ex. 10 at 26:4–9; *see*

9

*also* Ralls Continued Meeting Creditors Tr. 37:23–38:12, Oct. 9, 2024, excerpts of which are attached at Exhibit 12. The fact that Ralls uses the Greenmind bank account for his personal use and the fact there are no written agreements between these parties is alarming. But even more alarming is the fact that, based on Ralls' representations of Earth's profits and revenue, there should be, at least, between $800,000 and $1.1 million in the Greenmind bank account. *See infra* ¶¶ 44–48. As of May 22, 2025, Ralls expected the account to have between $48,000 and $75,000. *See* Ex. 10 at 24:23–25:1.

35. By creating Greenmind on the eve of bankruptcy and using the automatic stay to prevent PlantSnap from exercising its voting rights to the DEM Shares, Ralls has successfully used the Bankruptcy Code over the past year to maintain control of the Enterprise, minimize transparency, and divert the Enterprise's profits for his own benefit. Absent PlantSnap voting the DEM Shares to remove Ralls from the Enterprise and stop the diversion of Earth's profits to Greenmind, Ralls will continue to gut the Enterprise and the Trustee will be unable to sell the DEM Shares for any discernable value; the successful bidder will be left with nothing but fraudulent transfer claims, which Ralls has successfully evaded for almost ten years.

**LAW AND ARGUMENT**

**The Trustee Has the Right to Vote the DEM Shares**

36. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. 541(a)(1). A debtor's shares of common stock are estate property. *See In re Guyana Dev. Corp.*, 168 B.R. 892, 905 (Bankr. S.D. Tex. 1994).

37. A chapter 7 trustee is vested with the right to vote shares of common stock during the bankruptcy case. *See* Del. Code Ann. tit. 8, § 217(a) ("Persons holding stock in a fiduciary capacity shall be entitled to vote the shares so held."); *In re Richardson Foods, Inc.*, 659 B.R. 154,

10

173 (Bankr. S.D.N.Y. 2024) ("[T]he RFI estate holds a beneficial interest in the RBC Share and is therefore entitled to step into the shoes of RFI . . . and exercise all rights that RFI has with respect to that share. . . . Accordingly, the Trustee was entitled to vote the RBC Share . . . .").

38. Here, the DEM Shares are estate property. *See* Docket No. 14 at 5. Despite having the ability to vote the DEM Shares, the Trustee has not exercised that right, and Ralls remains DEM's sole director and officer.

### Cause to Vote Shares Under Section 362(d)(1)

39. Section 362(a)(3) imposes an automatic stay on "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

40. A secured creditor seeking to exercise its voting rights under a pledge agreement must first obtain relief from the automatic stay. *See In re Country Estates Nursing Home, Inc.*, 268 B.R. 316, 321 (Bankr. D. Mass. 2001) (citing *In re Marvel Entm't Grp.*, 209 B.R. 832, 838 (Bankr. D. Del. 1997)).

41. After notice and a hearing, "the court ***shall*** grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or condition such stay—for cause." 11 U.S.C. § 362(d)(1) (emphasis added).

42. The Trustee has the burden to show cause does not exist to warrant stay relief. *See Id.* § 362(g); *In re Domestic Fuel Corp.*, 70 B.R. 455, 463 (Bankr. S.D.N.Y. 1987) ("[W]here the plaintiff seeks to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause, including the lack of adequate protection of the plaintiff's interest in the collateral in question, the debtor must prove facts sufficient to deny the plaintiff's request for relief.").

43. Cause includes "the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Cause also exists where there is post-petition mismanagement resulting in the diminution in value of the collateral. *See Sumitomo Tr. & Banking Co. v. Holly's, Inc. (In re Holly's Inc.)*, 140 B.R. 643, 690 (Bankr. W.D. Mich. 1992).

44. Courts have found cause where the estate does nothing to compensate or adequately protect a secured creditor from the deprivation of its ability to exercise its voting rights. For example, in *In re Sears*, the court stated,

> [I]t is undisputed the Korley [debtor] has defaulted under the promissory notes due to the Sears Creditors [secured creditors] by failing to pay the 2009 annual payments. Further, the Stock Pledge clearly and unambiguously grants to the Sears Creditors all voting and other consensual rights pertaining to the shares of, among other things, AFY. . . .
>
> Korley has not offered anything to compensate or adequately protect the Sears Creditors from deprivation of their ability to exercise their voting and other rights with respect to AFY. Thus, cause has been established for the granting of relief from the automatic stay in Korley's bankruptcy proceeding.

Case Nos. BK10-40275-TLS, BK10-40277-TLS, 2010 Bankr. LEXIS 1130, at *11–12 (Bankr. D. Neb. Apr. 12, 2010); *see also In re Hoffert Marine, Inc.*, 64 B.R. 409, 410–11 (Bankr. M.D. Fla. 1986) (granting stay relief under section 362(d)(1) for secured creditor to enforce pledge agreement, which authorized creditor to vote shares upon default of loan agreement); *cf. Domestic Fuel Corp.*, 70 B.R. at 463 (granting stay relief under section 362(d)(1) where movant presented evidence that the value of the shares decreased, and debtor failed to show movant was adequately protected).

**PlantSnap Is Entitled to Stay Relief to Vote the DEM Shares**

45. Ralls defaulted under the Binding Term Sheet. *See* Exs, 2, 4–5. Under that agreement, "upon an event of default, [PlantSnap] shall be empowered to exercise all voting and other rights associated with the Pledged Shares until such time as their disposition." Ex. 2, ¶ 3(D).

PlantSnap has received neither compensation nor adequate protection for the deprivation of its right to vote the DEM Shares. *See Sears*, 2010 Bankr. LEXIS 1130, at *11; *In re Allegiance Coal USA Ltd.*, 661 B.R. 874, 890 (Bankr. D. Del. 2024); 11 U.S.C. §§ 361, 362(d)(1) ("A secured creditor is entitled to adequate protection against the risk that its collateral may diminish in value over the course of a bankruptcy case.").

46. PlantSnap's collateral is losing value every day that Ralls remains in control over the Enterprise. DEM controls the Enterprise, and its value is derived by the value of its two subsidiaries, Earth and EarthSnap. *See* EarthSnap Case, Docket No. 166 at 16; Docket No. 184 at 4 (Ralls valuing DEM Shares at $9,890,000).

47. Earth is generating significant profits. Between July of 2024 through February of 2025, Earth's net profit was $875,144.32. *See* EarthSnap Case, Docket No. 166-1 at 1–2. Between March and May of 2025, Ralls estimated Earth's net profits at $119,631.13.[8] *Id.* at 2. Ralls' estimates were seemingly correct if not understated, as he testified that Earth earned $196,213.62 in revenue in April of 2025 and anticipated that Earth would earn $230,354 in May of 2025. *See* Ex. 10 at 26:21–27:4. Using Earth's gross profit margin of 70%, Earth's net profit for April of 2025 was likely $137,349.53 and its anticipated net profit for May of 2025 was likely $161,247.80. *See id.* at 26:21–27:4, 30:4–5. Between July of 2024 and May of 2025, Earth would have conservatively generated $1,234,037.90 in net profits.[9]

48. Earth's profits are not distributed to its sole shareholder, DEM, as evidenced by DEM's failure to satisfy its debts and make distributions to its two members, Ralls and HI

---

[8] $112,468.42 + 110,087.58 + $136,337.58 / 3 = $119,631.13.

[9] $875,144.32 (July of 2024 and February of 2025) + $112,468.42 (March of 2025) + $110,087.58 (April of 2025) + $136,337.58 (May of 2025) = $1,234,037.90. *See* EarthSnap Case, Docket No. 166-1 at 1–2.

13

Investments. *See* Docket No. 59 (Bill Jaris Consulting, LLC stating DEM failed to repay $500,000 note that matured on October 15, 2024). Nor does Earth retain those profits. *See* Ex. 8 at 31:1–5; Ex. 11 at 39:15–20.

49. Instead, Rall is transferring all of Earth's cash to Greenmind (and previously Metaversal), which is owned and controlled by Ralls. *See id.* Earth previously used DEM's bank account, but after PlantSnap garnished that account, Ralls directed all of Earth's cash to Greenmind, which was established on the eve of bankruptcy solely to prevent PlantSnap and other creditors from exercising their collection remedies. *See* EarthSnap Case, Docket No. 75, ¶¶ 33–35; EarthSnap Case, Docket No. 167 at 9. According to Ralls, Greenmind is a management company akin to a "not for profit": Greenmind merely pays the shared costs of Earth and EarthSnap. Ex. 10 at 20:12–15.

50. If Greenmind truly "doesn't earn anything" and is "just a company that does management and distributes funds," then there should be at least $1.2 million in the Greenmind bank account. *See id.*; *see supra* ¶ 44. But as of May 22, 2025, Ralls expected the account to have between $48,000 and $75,000. *See* Ex. 10 at 24:23–25:1. **Ralls cannot account for more than $1.1 million in revenue during his bankruptcy case**. *See id.*

51. This same discrepancy was identified by a third-party appraiser commissioned by Ralls. After the Court converted his bankruptcy case, Ralls used Earth's cash to retain Quist Valuation ("**Quist**") to value Earth and EarthSnap.[10] *See* Docket Nos. 50, 50-1. That valuation

---

[10] The Quist valuation contains glaring errors and the timing of the report is suspect. Although Ralls previously claimed that Earth owned the Earth Domain, he now claims Earth has no ownership interest. *See* Ex. 10 at 35:23–36:11. Nevertheless, Earth's February 28, 2025 balance sheet lists the earth.com domain as a $6 million asset. *See* Docket No. 50-1 at 38. When you remove this "asset" as well as the intercompany "loans" that Ralls will never repay, Earth's assets drop from $6,836,825 to $2,120. *See id.* Furthermore, Ralls commissioned the valuation in connection with his motion to reconsider the Court's conversion order. *See* Docket No. 50. Ralls did not put forth this valuation in connection with the two-day hearing on conversion, where, assuming its relevancy, the parties could have challenged its statements and conclusions.

contains a balance sheet for Earth as of February 28, 2025, which ***shows an accounts receivable from Greenmind in the amount of $789,995***. *See* Docket No. 50-1 at 38. Greenmind, which is an alleged "not for profit" that does nothing more than "distribute[] funds," has "borrowed" almost $800,000 in ten months.[11] *See id.*; Ex. 10 at 20:12–15.

52. When asked why the Greenmind bank account has so little money in light of Earth's substantial profits, Ralls repeatedly provides the same non-answer: that revenue is collected thirty to sixty days after it is earned. *See* Ex. 10 at 27:2–13; Ex. 12 at 57:25–58:16. Ralls does not answer the question, but implies that Earth has not yet realized its revenue. *See id.* While this non-answer explains why the Greenmind bank account had little to no cash during the first two months of Earth's profitability (and possibly when it was first made on October 9, 2024), the non-answer does not hold true when it was made on May 22, 2025 after Earth earned $875,144.32 in profits between July of 2024 through February of 2025. *See* EarthSnap Case, Docket No. 166-1 at 1–2.

53. However, the actual answer is straightforward. Greenmind has not "borrowed" any cash; Ralls has simply used Earth's funds for his own benefit. Both pre- and post-conversion, Ralls makes no secret that he uses Greenmind to pay his personal expenses. *See* EarthSnap Case, Docket No. 167 at 10–11, 14; Ex. 10 at 18:2-7. Pre-conversion, the Court made this finding when it converted Ralls' bankruptcy case to one under chapter 7. *See* EarthSnap Case, Docket No. 167 at 10–11 (finding Ralls used the Greenmind bank account to pay for Doordash and Publix, amongst other personal expenses). The personal use of funds coupled with reporting failures constituted gross mismanagement. *See id.* at 11. Post-conversion, Ralls is continuing to use Earth's cash and

---

[11] Ralls cannot claim this accounts receivable was used exclusively to develop EarthSnap. First, although the valuation makes such claim, Earth's accounts receivable from EarthSnap is only $10,250. *See* Docket No. 50-1 at 19, 38. Second, Ralls testified the development costs were $175,000. *See* Ex. 10 at 18:12–22. Even if Earth's accounts receivables from Greenmind and EarthSnap were used to develop EarthSnap, Ralls cannot explain the disappearance of $625,245 [($789,995 + 10,250) - $175,000].

15

the Greenmind bank account as his personal piggybank. *See* Ex. 10 at 18:2-7. Ralls is using Earth's profits to pay his myriad of attorneys and experts in two bankruptcy cases, two appeals, and three nondischargeability actions. *See* Docket; Docket Nos. 29, 31, 33; EarthSnap Case, Docket; *EarthSnap Inc. v. PlantSnap Inc.*, No. 6:25-cv-00238-MAC (E.D. Tex. June 25, 2025); *Ralls v. PlantSnap Inc.*, No. 6:25-cv-00260-MAC (E.D. Tex. July 16, 2025); Ex. 10 at 29:7–16, 33:3–35:14 (using Earth to pay legal fees and expert expenses). Ralls is also using Earth's profits to pay for his second residence in Nashville, Tennessee, which is a three-bedroom house that costs between $4,000 and $5,000 a month.[12] *See* 30:10–17, 37:11–38:9. Earth pays these costs, either as an Earth "expense" or as "compensation" to Ralls, who gave himself a 229% raise after the Court converted his bankruptcy case. *Compare* Ex. 12 at 39:23–40:1 (Ralls stating he earns, on average, $7,000 per month) *with* Ex. 10 at 12:19–22 (Ralls stating he earns $16,000 per month). Incredibly, Greenmind does not pay Ralls $16,000 per month; instead, Ralls pays all of his personal expenses from the Greenmind account, which allegedly total $16,000 per month. *See* Ex. 10 at 16:21–17:10.

54. As a debtor in possession, Ralls grossly mismanaged his estate. *See* EarthSnap Case, Docket No. 167 at 11. As a result, the Court converted his case to one under chapter 7. *See id.* Despite the Trustee warning Ralls "not [to] tak[e] any money out of those entities" and to refrain from "dissipat[ing] funds from those entities," Ralls is continuing to use Earth's profits for his own benefit. *See* Ex. 10. at 39:24–40. Absent Ralls' removal from the Enterprise, Rall will continue to siphon off Earth's profits for his own benefit, thus diminishing the value of PlantSnap's collateral. Because PlantSnap has received neither compensation nor adequate protection for the deprivation of its right to vote the DEM Shares, the Court must grant stay relief.

---

[12] Ralls testified that Metaversal prepaid the rent on his second residence prior to filing for bankruptcy. *See* Ex. 10 at 30:14–17; EarthSnap Case, Docket.

16

**To the Extent Ralls (as DEM's CEO and Sole Director) Makes Reasonable Requests for Additional Documents or Information to Reflect the Change in Voting Rights from the Trustee to PlantSnap, the Trustee Should Accommodate Such Requests**

55. Once the Court converted Ralls' bankruptcy case to one under chapter 7 and the Trustee was appointed, the Trustee became entitled to vote the DEM Shares. *See* Del. Code Ann. tit. 8, § 217(a); *Richardson Foods*, 659 B.R. at 173.

56. Under Delaware law, a pledgee can only exercise its voting rights under a pledge agreement after the company reflects the pledgee's rights on its stock ledger. *See* Del. Code Ann. tit. 8, § 219(c); *see also Nycal Corp. v. Angelicchio*, C.A. 13053, 1993 Del. Ch. LEXIS 226, at *17–18 (Del. Ch. Aug. 31, 1993).

57. If the Court grants PlantSnap relief from the automatic stay to exercise its voting and other rights with respect to the DEM Shares, PlantSnap intends to submit the following documents to Ralls (as DEM's CEO and sole director): (a) PlantSnap's Proof of Claim, which includes the Binding Term Sheet and Default Notice; (b) *Notice of Chapter 7 Bankruptcy Case— No Proof of Claim Deadline* [Docket No. 45]; and (c) the order granting stay relief. PlantSnap believes these documents sufficiently evidence PlantSnap's right to vote the DEM Shares, and that Ralls (as DEM's CEO and sole director) must recognize that right.

58. However, to the extent Ralls (as DEM's CEO and sole director) makes a reasonable request for additional documents or information to reflect PlantSnap's voting rights on DEM's stock ledger, and the documents or information are solely in the possession, custody, or control of the Trustee,[13] PlantSnap respectfully requests that the Trustee respond to any such reasonable

---

[13] For example, the DEM Shares are certificated shares. PlantSnap does not know whether Ralls or the Trustee is in possession of those shares.

17

request. *See* 11 U.S.C. § 105(a) (authorizing a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title").

### Wavier of Stay of Order

59. PlantSnap requests that the Court waive the fourteen-day stay requirement pursuant to Bankruptcy Rule 4001(a)(3). As set forth above, Ralls has abused the Bankruptcy Code to remain in control of the Enterprise. Ralls' only source of income is from the Enterprise, and Ralls has made clear that, if removed, then the Enterprise's value will plummet. *See* Ex. 10 at 18:23–19:1; Docket No. 63 at 3 ("[I]f the Debtor walks away, then that [$3 million] figure likely substantially overvalues the asset sought to be sold."). To ensure Ralls does not dissipate funds from the Enterprise, PlantSnap's ability to vote the DEM Shares should take place immediately upon entry of an order.

WHEREFORE, PlantSnap respectfully requests that the Court (a) grant the Motion, (b) grant PlantSnap relief from the automatic stay to exercise its voting and other rights with respect to the DEM Shares; (c) order the Trustee to respond to any reasonable request by DEM For documents or information in order for DEM to reflect the transfer in voting rights from the Trustee to PlantSnap; and (d) grant any other relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 18, 2025 /s/ *Patrick R. Akers*
Patrick R. Akers (CO 54803)
MARKUS WILLIAMS YOUNG & HUNSICKER LLC
1775 Sherman Street, Suite 1950
Denver, Colorado 80203
(303) 830-0800
(303) 830-0809 (facsimile)
pakers@markuswilliams.com

Dean E. Richardson (CO 35349)
GOULD & RATNER LLP
1801 Wewatta Street, 11th Floor
Denver, Colorado 80202
(303) 284-1062
(312) 236-3241 (facsimile)
drichardson@gouldratner.com

*Counsel for PlantSnap*

## **CERTIFICATE OF SERVICE**

I certify that on July 18, 2025, I served a complete copy of *PlantSnap Inc.'s Motion for Relief from the Automatic Stay to Exercise Voting and Other Rights with Respect to the DEM Shares and for Related Relief* on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- Areya Holder Aurzada, via CM/ECF
- John P. Stanford, via CM/ECF
- Joyce C. Lindauer, via CM/ECF
- Pete Thomas, via CM/ECF
- Russell W. Mills, via CM/ECF
- Amalia Y. Sax-Bolder, via CM/ECF
- Eric Ralls, via regular U.S. mail at 6691 Park Slope, Tyler, TX 75703
- Gregory W. Mitchell, via CM/ECF
- Marcus Salitore, via CM/ECF
- Digital Earth Media, Inc., via regular U.S. mail at 473.5 West Colorado Avenue, #3740, Telluride, CO 81435
- Digital Earth Media, Inc., via regular U.S. mail at P.O. Box 3740, Telluride, CO 81435

*/s/ Patrick R. Akers*
Patrick R. Akers (CO 54803)

*Counsel for PlantSnap*