**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Eric Ralls |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of Texas |
| Case number | 24-60504 |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

PlantSnap Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Patrick R. Akers
Name

3615 Delgany Street, Suite 1100
Number   Street

Denver          CO          80216
City          State          ZIP Code

Contact phone (303) 291-3200

Contact email pakers@fennemorelaw.com

Where should payments to the creditor be sent? (if different)

PlantSnap Inc.
Name

1040 South Gaylord Street, Suite 67
Number   Street

Denver          CO          80209
City          State          ZIP Code

Contact phone (720) 346-4996

Contact email giblin@plantsnap.net

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**    Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _____ 3,434,927.85 _____ . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Judgments for contract breach, conversion, attorney fees(contempt)

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    Ralls' shares in Digital Earth Media Inc.

**Basis for perfection:**    UCC-1 Financing Statements

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**       $ _____ Unknown _____

**Amount of the claim that is secured:**    $ ____ 2,599,175.95 ____

**Amount of the claim that is unsecured:** $ ____ 835,751.90 ____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**      $ _____

**Annual Interest Rate** (when case was filed) 12.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/10/2024
                   MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Dean E. Richardson | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | PlantSnap Inc. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1040 South Gaylord Street, Suite 67 | | |
| | Number    Street | | |
| | Denver | CO | 80209 |
| | City | State | ZIP Code |
| Contact phone | (720) 346-4996 | Email | giblin@plantsnap.net |

## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS (TYLER)

| | | |
|---|---|---|
| In re: | ) | Case No. 24-60504 |
| | ) | |
| ERIC RALLS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

### STATEMENT IN SUPPORT OF CLAIM

PlantSnap Inc. ("**Creditor**") submits this statement in support of its proof of claim in the amount of no less than **$3,434,927.85** (the "**Claim**") against the estate of Eric Ralls (the "**Debtor**").

1.      On March 17, 2021, Creditor initiated an action against Eric Ralls ("**Ralls**"), Earth.com, Inc. ("**Earth**"), and later, the Debtor, Digital Earth Media, Inc., and Metaversal Knowledge, Inc. (collectively, the "**Defendants**") before the District Court for San Miguel County, Colorado in the case styled, *PlantSnap Inc. v. Ralls*, No. 2021CV30005 (Colo. Dist. Ct. San Miguel Cty. Mar. 17, 2021) (the "**State Court Action**").

2.      In the State Court Action, PlantSnap asserted claims against the Debtors for conversion, civil theft, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, fraud, unjust enrichment, constructive trust, and tortious interference with contractual relationships.

3.      On April 19, 2023, and on the eve of trial in the State Court Action, Ralls, Earth, and the Debtor filed voluntary petitions under subchapter V of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the District of Colorado (the "**Bankruptcy Court**").  *See In re Ralls*, No. 23-11620-TBM (Bankr. D. Colo. Apr. 19, 2023); *In re Earth.com, Inc.*, No. 23-11621-TBM (Bankr. D. Colo. Apr. 19, 2023); *In re EarthSnap, Inc.*, No. 23-11622-TBM (Bankr. D. Colo. Apr. 19, 2023).

4.      On July 19, 2023, Creditor obtained relief from the automatic stay under section 362 of the Bankruptcy Code in the Bankruptcy Court, and proceeded to liquidate its claims in the State Court Action.

5.      Creditor and the Debtor consensually resolved the claims asserted in the State Court Action, and executed that certain Binding Term Sheet dated February 19, 2024 (the "**Agreement**"), a copy of which is attached at Exhibit 1-1 (with attachments).

6.      A settlement agreement is a contract to end judicial proceedings. Recreational Dev. Co. v. Am. Constr. Co., 749 P.2d 1002 (Colo. App.1987).

7.      A settlement agreement can be governed by and found enforceable under common law contract principles. Yaekle v. Andrews, 195 P.3d 1101, 1107 (Colo. 2008). Courts "interpret and enforce settlement agreements in accord with principles of contract law and with the policy favoring dispute resolution." People v. Forsyth, 292 P.3d 1248, 1255 (Colo. 2012).

8.      A court may summarily enforce a settlement agreement if it is undisputed that a settlement exists. Goltl v. Cummings, P.2d 556, 559 (Colo. 1963) (Courts "look with favor upon agreements and stipulations to end litigation, and will enforce them if possible . . .").

9.      An settlement agreement can be enforced if the terms are sufficiently definite to allow a court to determine whether the parties have complied with them. Stice v. Peterson, 355 P.2d 948 (Colo. 1960); Mestas v. Martini, 155 P.2d 161 (Colo. 1944).

10.     Here, there is no dispute that a settlement exists in the form of the Agreement.

11.     The State Court agreed that there is no dispute as to the validity of the Agreement, and on July 31, 2024, it entered Ralls' confessed judgment, in PlantSnap's favor, in the amount of $2,500,000 based on the Agreement being in default. Exhibit 1-2.

12.     In the confessed judgment, Ralls admitted to fraud, fraudulent inducement, fraudulent transfer, conversion, civil theft, and common law fraud, deceit, or manipulation in connection with the sale of securities.  Id.

13.     Ralls also agreed that the confessed judgment meets the standards set forth in 11 U.S.C. §§ 523(a)(19) for non-dischargability.  Id.

14.     Pursuant to the Agreement, the Debtor and other Defendants agreed to pay Creditor $2,500,000.00, the amount of which carries an 8% interest rate and 12% default interest rate. Exhibit 1-1

15.     The Parties agreed that the $2.5 million debt would be secured by Ralls' shares in Digital Earth Media, Id. at para. 3(A) ("The Note shall be secured by all of Ralls' founder's shares in the Entities (8,178,571, or the "Pledged Shares"). Id.

16.     The Agreement also allowed for PlantSnap to file a UCC-1 financing statement, which it did on February 28, 2024, in both Colorado and Texas.  Id. at para. 3(C) ("Ralls authorizes PlantSnap to file a UCC-1 financing statement."); see also Exhibits 1-3 and 1-4.

17.     Prior to execution of the Agreement, PlantSnap also obtained two judgments against Ralls in the State Court Action: 1) a judgment for $705,000, and 8% per annum interest, entered on January 11, 2024 (and reduced to a final judgment on February 29, 2024), stemming from Ralls' conversion of funds; and 2) a judgment for attorney fees of $84,189.00 and costs of $749.76, for a total of $84,938.76, and 8% per annum interest, issued on October 13, 2022 (and reduced to a final judgment on February 15, 2023), stemming from Ralls' contempt of court related violations of court orders and destruction of evidence (for which Ralls also served a short jail sentence) (the "**Judgments**").  The Court Orders and Final Judgments are attached as Exhibits 1-5, 1-6, 1-7, and 1-8.

18.     The Judgments were forgiven under the Agreement, so long as Ralls was not in default.  Ralls made the initial payments per the terms of the Agreement, but failed to make the July payment, and the Judgments, along with the $2,500,000 settlement amount, became due and owing upon Ralls' default.

19.     As stated, and after the Court determined the Agreement was in default, the State Court entered the confessed Judgement on July 31, 2024.  <u>Exhibit 1-2.</u>

20.     On August 18, 2024 (the "**Petition Date**"), the Debtor filed yet another voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

21.     The judgments that make up PlantSnap's **$3,434,927.85** Claim are all *pre-petition* judgments, entered in the State Court Action, and signed by the Judge in that matter.  The $2.5 million judgment is also, per Ralls' signature and agreement, non-dischargeable.

22.     As of the Petition Date, the Claim comprises the following amounts:

| Category | Amount |
|---|---|
| Agreement Principal | $2,500,000.00 |
| Agreement Interest[1] | $99,175.95 |
| Agreement Attorneys' fees and costs | TBD |
| $705,000 Judgment Principal | $705,000.00 |
| $705,000 Judgment Interest[2] | $33,994.40 |
| $84,938.76 Judgment Principal | $84,189.00 |
| $84,938.76 Judgment Interest[3] | $12,568.50 |
| **Total Claim** | **$3,434,927.85** |

## RESERVATION OF RIGHTS

23.     Creditor reserves the right to amend its Claim to include attorney fees, costs, and other charges that are authorized under Agreement, the Bankruptcy Code, or applicable state law,

---

[1] The per diem interest rate is $547.95 [$2,500,000.00 * 0.08 / 365]. Creditor seeks interest between February 19, 2024 and the Petition Date, or 181 days, which amounts to $99,175.95.
[2] The per diem interest rate is $154.52 [$705,000 * 0.08 / 365]. Creditor seeks interest between January 11, 2024 and the Petition Date, or 220 days, which amounts to $33,994.40.
[3] The per diem interest rate is $18.62 [$84,938.76 * 0.08 / 365]. Creditor seeks interest between October 13, 2022 and the Petition Date, or 675 days, which amounts to $12,568.50.

and to assert this Claim against the Debtor or other persons or debtors in any jointly administered case. Creditor reserves the right to amend this Claim consistent with Rule 9015 of the Federal Rules of Bankruptcy Procedure.

**BINDING TERM SHEET**

***PLANTSNAP AND ERIC RALLS, ET AL.***

1.  This Binding Term Sheet ("Agreement") settles all claims relating to Case No. 2021CV30005 (the "Litigation"), brought in the San Miguel County Combined Court by and between PlantSnap Inc. ("PlantSnap") and Eric Ralls, Digital Earth Media Inc., Earth.com Inc., EarthSnap Inc., and Metaversal Knowledge Inc. (collectively the "Ralls Parties"). PlantSnap and the Ralls Parties are collectively referred to herein as the "Parties." Digital Earth Media, Earth.com, EarthSnap, and Metaversal Knowledge are referred to as the Entities.

2.  The Agreement is binding as of the date of execution by all Parties.

3.  The Ralls Parties shall execute and deliver to PlantSnap a $2.5 million dollar Secured Promissory Note, pursuant to which they shall be jointly and severally liable, and subject to the following terms (the "Note").

    A.  The Note shall be secured by all of Ralls' founder's shares in the Entities (8,178,571, or the "Pledged Shares"). There are currently a total of 9,563,007 outstanding shares.

    B.  The Pledged Shares are security certificates. Contemporaneously with Ralls placing the Pledged Shares in escrow, Ralls will execute a blank stock power to PlantSnap. An independent agent, on which all Parties will agree, will hold the Pledged Shares in escrow. The Parties will work together to formulate escrow instructions to the agent that conform with this Agreement. DEJ Partners, LLC ("DEJP"), PlantSnap, and the Ralls Parties each shall be responsible for one-third (1/3) of any fees or expenses charged by the escrow agent.

    C.  Ralls authorizes PlantSnap to file a UCC-1 financing statement.

    D.  If there is ever an uncured default of the Settlement Agreement, the escrow agent shall deliver the Pledged Shares to PlantSnap. PlantSnap shall be authorized to promptly conduct a sale of the Pledge Shares pursuant to Article 9 of the Uniform Commercial Code. PlantSnap, upon an event of default, shall be empowered to exercise all voting and other rights associated with the Pledged Shares until such time as their disposition pursuant to the Uniform Commercial Code.

    E.  The pledge of the Pledged Shares shall not prevent or impede Ralls from operating the Entities or exercising his voting rights associated with the Pledged Shares so long as Ralls and the Ralls Entities are not in Default under the Settlement Agreement.

    F.  The Note shall have the following payment schedule and terms:

a)  $7,500/month for first year; b) $10,500/month second year; c) $12,500/month third year, with the first payment due on May 7, 2024. Thereafter, monthly payments shall be due and received by PlantSnap on the seventh day of each month. In month 37, a balloon payment, with the balance of the Note (interest and principal) shall be due and payable,

b)  The Note shall carry an 8% interest rate, and default interest rate of 12%.

c)  In the event of a monetary default, PlantSnap shall provide the Ralls Parties with written Notice of Default, giving the Ralls Parties seven (7) business days to cure the default. Thereafter, any right to cure shall be irrevocably waived and PlantSnap shall be entitled to exercise all rights and remedies it may have against the Ralls Parties, individually or cumulatively. Notice may be delivered by email to Ralls@earth.com with a copy delivered to current counsel for Ralls and the Entities with such email notice deemed effective as of the date and time the email is sent.

d)  There is no penalty for early payment.

G.  Ralls may be permitted to sell up to but not more than ten percent (10%) of the Pledged Shares subject to the following conditions: (1) Ralls must present PlantSnap with documentation in form satisfactory to PlantSnap that Pledged Shares are being sold to a bona fide third party purchaser, at fair market value and upon reasonable commercial terms; (2) Ralls' remaining Pledged Shares, following any sale, must constitute not less than ninety percent (90%) of the total founder shares owned by Ralls; (3) Ralls must present PlantSnap with documentation satisfactory to PlantSnap that the remaining Pledged Shares, following any sale, shall constitute not less than a majority fifty-one percent (51%) of the total outstanding shares issued by Digital Earth Media, Inc.; and (4) the terms of the sale must require that fifty percent (50%) of the total purchase proceeds of Ralls' Pledged Shares are to be wired directly by the purchaser to PlantSnap or DEJP, which funds shall be applied towards the outstanding balance owed to PlantSnap on the Note. Upon receipt of the fifty percent (50%) payment, PlantSnap will file a partial release of its UCC-1 financing statement on the Pledged Shares being sold. So long as the foregoing conditions are met, PlantSnap shall not unreasonably withhold its consent to any requested partial release and sale of a portion of the Pledge Shares. In the event Ralls wishes to sell more than ten percent of the Pledges Shares, the Parties agree to work in good faith to try to negotiate mutually acceptable terms of any further permitted sales. Except as permitted herein, Ralls shall not pledge, transfer, encumber or hypothecate in any way, shape or form any of the Pledged Shares until the Note to PlantSnap is paid in full, unless otherwise agreed between the parties.

4. The current judgments in PlantSnap's favor will remain in place (attorney fees and conversion), and the Ralls Parties shall cooperate with and not oppose PlantSnap's CRCP 54 certification of any judgments previously entered (PlantSnap's summary judgment award). Once the Note has been paid in full those judgments will be deemed satisfied and will be vacated.

5. The Ralls Parties shall provide a current asset schedule for the Entities. The Ralls Parties agree that any sale or encumbrance of all or substantially all of the assets or of any stock of any one or more of the Ralls Entities, unless agreed to in writing by all Parties hereto, which agreement shall not be unreasonably withheld, shall trigger an immediate obligation to pay PlantSnap all outstanding amounts due under the Note and Settlement Agreement, whether due at that time or not.

6. The current status of the agreement to use the Earth.com domain owned by Innovation HQ.is that there is no written agreement. Innovation HQ terminated the written agreement due to the filing of civil racketeering claims in this case. At present, there is no written agreement other than a back end interest to be paid to Innovation HQ up sale of DEM. Ralls anticipates once a settlement is achieved in this case Innovation HQ will want to enter into a renegotiated written agreement.

7. The Ralls Parties shall deliver a Confession of Judgment (a pocket judgment) for conversion, civil theft, fraud, and fraudulent transfer with the agreement that the confessed judgment shall not be recorded or executed upon except in the event of a default or filing of bankruptcy, with accompanying language and terms in the Settlement Agreement to provide for a non-dischargeable obligation. The agreed upon form of the confession of judgment is attached hereto and signed by Ralls, and the Ralls Entities.

8. The Ralls Entities agree to indemnify, and hold harmless, to the fullest extent permitted by Colorado law, all owners, agents, attorneys, members, directors, shareholders, managers, officers, and employees of PlantSnap, for any/all acts while Ralls served as PlantSnap's CEO (up to and including the date the Court issued the TRO Order on April 27, 2021).

9. Global releases as to all Parties.

10. Warranties and representations: The finalized agreements will include representations and warranties, including, without limitation, the following:

   a. The Ralls Entities will warrant and represent the Pledged Shares shall be free and clear of any liens at the time of the pledge and that Ralls has authority to pledge the shares. Ralls further warrants that he has not transferred any of the Ralls Entities' assets since February 2022.
   b. DEJP and PlantSnap will warrant that there have been no offers to purchase PlantSnap or its stock since April 1, 2022; that other than the expert evaluation by Mr. Harrison disclosed in this litigation, neither PlantSanp or DEJP have valued the Ralls stock, or the PlantSnap business as a whole.

11. Each side bears their own fee/costs, but for PlantSnap's judgment already entered relating to attorney fees, subject to being vacated as provided herein.

12. To the extent he has them, Ralls shall immediately transfer PlantSnap's domains, outlined in **Exhibit A** and currently held in his GoDaddy account, and any other PlantSnap property in his possession, back to PlantSnap upon execution of this Agreement.

13. The Parties agree that any cross collateralized obligations or other overlapping undertakings owed to DEJP and PlantSnap by the Ralls Entities shall be governed by an Intercreditor Agreement between DEJP and PlantSnap to ensure that the Ralls Entities do not have conflicting contractual duties to DEJP and PlantSnap.

14. This Term Sheet and the Settlement Agreement shall be governed by Colorado law. The Parties agree that in the event of a dispute of any kind arising out of or relating in any way to the Term Sheet, the Settlement Agreement, or the drafting of the Settlement Agreement, the San Miguel County Combined Court shall have sole and exclusive jurisdiction to resolve the dispute and that the dispute shall be submitted in the existing Action styled as PlantSnap v. Ralls et al, Case No. 2021 CV 30005. The Court shall award the substantially prevailing party all attorney fees, costs and expenses.

15. The Parties will work together to draft definitive settlement documents, but the terms outlined herein are enforceable and binding upon execution.

16. Once definitive documents are signed, PlantSnap shall dismiss all its claims against the Ralls Entities, and the Ralls Entities shall dismiss all claims brought against PlantSnap, in the Litigation.

17. The Parties each represent and warrant that (a) the person signing this Agreement on behalf of the respective party has full authority and representative capacity to execute this Agreement on behalf of the corporation for which he or she purports to act as stated herein, and (b) this Agreement has been duly executed and delivered and constitutes the valid and binding obligation of the party signing such Agreement.

[Intentionally Blank]

PlantSnap Inc.
By: Matt Giblin
Date: February 19, 2024

_____

Eric Ralls
Date:

_____

Earth.com Inc.
By:
Date:

_____

Digital Earth Media Inc.
By:
Date:

_____

EarthSnap Inc.
By:
Date:

_____

Metaversal Knowledge Inc.
By:
Date:

*Eric Ralls*
_____

PlantSnap Inc.
By: Eric Ralls
Date: 2-19-24

*Eric Ralls*
_____

Eric Ralls
Date: 2-19-24

*Eric Ralls*
_____

Earth.com Inc.
By: Eric Ralls
Date: 2-19-24

*Eric Ralls*
_____

Digital Earth Media Inc.
By: Eric Ralls
Date: 2-19-24

*Eric Ralls*
_____

EarthSnap Inc.
By: Eric Ralls
Date: 2-19-24

*Eric Ralls*
_____

Metaversal Knowledge Inc.
By: Eric Ralls
Date: 2-19-24

# Binding Term Sheet.PlantSnap.Siganture Verison.02182024.FINAL

**Final Audit Report** 2024-02-19

| | |
|---|---|
| Created: | 2024-02-19 |
| By: | Michael Melito (melito@melitolaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAANMBvFdtCqkV_C9ek9RMe-YwIEEBTM_c1 |

## "Binding Term Sheet.PlantSnap.Siganture Verison.02182024.FINAL" History

📄 Document created by Michael Melito (melito@melitolaw.com)
2024-02-19 - 2:02:54 PM GMT- IP address: 204.144.183.247

📧 Document emailed to Eric Ralls (ralls@earth.com) for signature
2024-02-19 - 2:02:59 PM GMT

📄 Email viewed by Eric Ralls (ralls@earth.com)
2024-02-19 - 2:04:14 PM GMT- IP address: 68.52.91.184

🖋 Document e-signed by Eric Ralls (ralls@earth.com)
Signature Date: 2024-02-19 - 2:04:50 PM GMT - Time Source: server- IP address: 68.52.91.184

✅ Agreement completed.
2024-02-19 - 2:04:50 PM GMT

Adobe Acrobat Sign

EarthSnap, Inc. is redacted from and not subject to this document based on the 11 U.S.C. § 362(a) automatic stay.

| | |
|---|---|
| DISTRICT COURT, SAN MIGUEL COUNTY, COLORADO<br>Court Address: 305 West Colorado Avenue<br>P.O. Box 919<br>Telluride, Colorado 81435 | DATE FILED: July 31, 2024 9:14 AM<br>CASE NUMBER: 2021CV30005 |
| **Plaintiff**,<br>PLANTSNAP, INC.;<br><br>v.<br><br>**Defendant**,<br>ERIC RALLS and EARTH.COM, INC.;<br><br>v.<br><br>**Third Party Plaintiff**,<br>DEJ PARTNERS, LLC;<br><br>v.<br><br>**Third Party Defendants**,<br>EARTHSNAP, INC.; DIGITAL EARTH MEDIA, INC.; METAVERSAL KNOWLEDGE, INC. | ▲ COURT USE ONLY ▲ |
| | Case Number: 2021CV30005<br><br>Division: 3 |
| **CONFESSION OF JUDGMENT** ||

UPON Stipulation between the parties to this action, IT IS ORDERED, ADJUDGED, AND DECREED that Judgment enter in favor of Plaintiff, PlantSnap, Inc. ("Plaintiff"), and against Defendants Eric Christian Ralls and Earth.com, Inc. ("Earth.com"), and Third-Party Defendants ▬▬▬▬▬▬ Digital Earth Media, Inc. ("Digital Earth"); Metaversal Knowledge, Inc. ("Metaversal") (Defendants Ralls and Earth.com, and Third-Party Defendants

███████ Digital Earth and Metaversal, shall be, unless otherwise indicated, collectively referred to as "Defendants"), jointly and severally, in the principal sum of $2,500,000.00 (the "Confession of Judgment").

This Confession of Judgment arises from Case No. 2021CV30005, brought in the San Miguel County Combined Court, by PlantSnap against Ralls, Earth.com, Digital Earth, ███████ and Metaversal (the "Entities" and the "Action").

The Action contained claims against Ralls and the Entities for Conversion, Civil Theft, Fraud, and Fraudulent Transfer, etc. (the "Claims").

The Claims, and the resulting Confession of Judgment, were predicated on Ralls' and the Entities' intent to cause willful and malicious injuries to PlantSnap.

The Claims all occurred while Ralls acted in a fiduciary capacity as an officer and director of PlantSnap.

The Claims, and the resulting Confession of Judgment, relate to Ralls' and the Entities' intentional acts and false representations, that they knew were false at the time they made them, and Ralls and the Entities acknowledge that his representations were made with the intention and purpose of deceiving PlantSnap, that PlantSnap relied on the representations, and sustained damages based on his misrepresentations.

The Claims, and the resulting Confession of Judgement, are also based on Ralls' and the Entities' civil theft of PlantSnap property, and Ralls' and the Entities' acknowledge taking and depositing funds belonging to PlantSnap, exerting control or possession over those funds, with the intention to permanently deprive PlantSnap of its property, and Ralls' and the Entities' acknowledge that their actions were willful, wanton, and malicious.

The Claims were based on Ralls' and the Entities' taking money, property, and/or services obtained by false pretenses, false representations, and actual fraud, and Ralls and the Entities agree that such conduct, and the resulting Confession of Judgment, meets the standards set forth in 11 U.S.C. §§ 523(a)(2).

Ralls and the Entities acknowledge that the Claims, and the resulting Confession of Judgment, are non-dischargeable by Ralls and/or the Entities, as they relate to a debt for fraud and/or defalcation while Ralls was acting in a fiduciary capacity, and Ralls agrees that such conduct meets the standards set forth as outlined in 11 U.S.C. §§ 523(a)(4).

The Claims, and the resulting Confession of Judgement, are non-dischargeable by Ralls and/or the Entities as they relate to the willful and malicious injuries caused to PlantSnap's property, and Ralls and the Entities agree that such conduct meets the standards set forth as outlined in 11 U.S.C. §§ 523(a)(6).

The Claims, and the resulting Confession of Judgement, also relate to Ralls' and the Entities' common law fraud, deceit, or manipulation in connection with the sale of securities, and Ralls and the Entities agree that such conduct meets the standards set forth as outlined in 11 U.S.C. §§ 523(a)(19).

The Judgment shall bear interest at the rate of 12% per annum, compounded annually, until paid in full.

The Clerk of the District Court is hereby directed to enter the Judgment in the Registry of Actions of this Court pursuant to C.R.C.P. 79(a)(4).

SO ORDERED this ____ day of _____ July 31, 2024 _____, 202__.

BY THE COURT:

_____
District Court Judge

This Judgment is confessed by:

_____
Eric Ralls
Date: 2-19-24

_____
Earth.com, Inc.
By: Eric Ralls
Date: 2-19-24

_____
Digital Earth Media, Inc.
By: Eric Ralls
Date: 2-19-24

_____
Metaversal Knowledge, Inc.
By: Eric Ralls
Date: 2-19-24

EXHIBIT 1

# Confession of Judgment.PlantSnap.signature version

Final Audit Report                                                  2024-02-19

| | |
|---|---|
| Created: | 2024-02-19 |
| By: | Michael Melito (melito@melitolaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAl2t5gzYMSyWyz4CWOXljrcP6LUTrnCSU |

## "Confession of Judgment.PlantSnap.signature version" History

🗎 Document created by Michael Melito (melito@melitolaw.com)
2024-02-19 - 6:26:46 PM GMT- IP address: 204.144.183.247

✉ Document emailed to Eric Ralls (ralls@earth.com) for signature
2024-02-19 - 6:26:50 PM GMT

🗎 Email viewed by Eric Ralls (ralls@earth.com)
2024-02-19 - 6:52:18 PM GMT- IP address: 68.52.91.184

✍ Document e-signed by Eric Ralls (ralls@earth.com)
Signature Date: 2024-02-19 - 6:52:38 PM GMT - Time Source: server- IP address: 68.52.91.184

✅ Agreement completed.
2024-02-19 - 6:52:38 PM GMT

🅰 **Adobe Acrobat Sign**

EXHIBIT 3

# UCC Financing Statement

**Colorado Secretary of State**
Date and Time: 02/28/2024 10:39:24 AM
Master ID: 20242018639
Validation Number: 20242018639
Amount: $8.00

---

**Debtor: (Individual)**

Last name: Ralls          First name: Eric          Middle name:          Suffix:
Address1: 473.5 W. Colorado Ave., #3740
Address2:
City: Telluride          State: CO          ZIP/Postal Code: 81435-3740
Province:          Country: United States

---

**Secured Party: (Organization)**

Name: PlantSnap Inc.
Address1: 1040 S. Gaylord St., Suite 67
Address2:
City: Denver          State: CO          ZIP/Postal Code: 80209
Province:          Country: United States

---

## Collateral

**Description:**

All of Debtor's right, title and interest in and to all of the shares of common stock of Digital Earth Media Inc., a Delaware corporation, now or hereafter owned by Debtor, and all proceeds thereof.

---

## Optional Information

## Optional filer reference data/miscellaneous information:

15819-2

EXHIBIT 1

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Karin A Tupper 303-291-1641

**B. E-MAIL CONTACT AT SUBMITTER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Karin Tupper
3615 Delgany Street
Suite 1100
Denver, CO 80216-80216
USA

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**FILING NUMBER: 24-0018665507**
**FILING DATE:** 02/28/2024     10:13 AM
**DOCUMENT NUMBER:** 1337275610002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME | | | |
| | 1b. INDIVIDUAL'S SURNAME<br>**Ralls** | FIRST PERSONAL NAME<br>**Eric** | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS<br>**6961 Park Slope** | CITY<br>**Tyler** | STATE<br>**TX** | POSTAL CODE<br>**75703** | COUNTRY<br>**USA** |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or Name of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME<br>**PlantSnap Inc.** | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS<br>**1040 S. Gaylord St., Suite 67** | CITY<br>**Denver** | STATE<br>**CO** | POSTAL CODE<br>**80209** | COUNTRY<br>**USA** |

4. COLLATERAL: This financing statement covers the following collateral:
All of Debtor's right, title and interest in and to all of the shares of common stock of Digital Earth Media Inc., a Delaware corporation, now or hereafter owned by Debtor, and all proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
15819-2

**FILING OFFICE COPY**

| DISTRICT COURT, SAN MIGUEL COUNTY, COLORADO<br>305 W. Colorado Ave, P.O. Box 919<br>Telluride, Colorado 81435 | |
|---|---|
| PLANTSNAP INC.,<br><br>Plaintiff,<br><br>v.<br><br>ERIC RALLS and EARTH.COM, INC.,<br><br>Defendants,<br><br>v.<br><br>DEJP PARTNERS, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>EARTHSNAP, INC., DIGITAL EARTH MEDIA, INC. and METAVERSAL KNOWLEDGE, INC.,<br><br>Third-Party Defendants. | COURT USE ONLY |
| | Case Number:<br>2021CV30005<br><br>Division: 2 |

DATE FILED: January 11, 2024 8:34 AM
CASE NUMBER: 2021CV30005

## ORDER RE: PLANTSNAP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE PORTIONS OF DECLARATION OF ERIC RALLS

This matter is before the Court on Plaintiff PlantSnap, Inc.'s ("PlantSnap") motion for partial summary judgment. In entering orders on the summary judgment motion, the Court has also necessarily considered PlantSnap's Motion to Strike Portions of Declaration of Eric Ralls. Having reviewed the parties' briefs,

supplemental briefing, the file, and relevant authorities, the Court enters this

order.

## I.    **FINDINGS OF FACT**

1. Defendant Ralls founded PlantSnap in 2016 and served as the company's majority shareholder, director, and Chief Executive Officer prior to March 9, 2021. (Ex. 1).

2. PlantSnap is a mobile application that allows its users to identify plant genus and species through their cellular phone cameras. (Ex. 1).

3. During the relevant periods herein, Ralls was the legal record owner of 750,000 shares of Common Stock in PlantSnap, which comprised approximately 80% of the company's total stock. (Exs. 1, 9).

4. In February 2017, Counterclaim Defendant DEJP Partners ("DEJP") became PlantSnap's first major seed investor. (Ex. 1). Daniel Johnson is DEJP's general partner. DEJP became a major stockholder in PlantSnap, along with Ralls. (Ex. 24). PlantSnap, Ralls, and DEJP entered into a Stockholders' Agreement on October 19, 2017. *Id.* This agreement was drafted by Pivotal Law Firm, Inc., which represented only PlantSnap in the transaction. *Id.* at 15.13.

5. On August 15, 2017, PlantSnap and Ralls entered into the Credit and Reimbursement Agreement with DEJP. (Ex. 7) ("Amex Agreement"). The Amex Agreement permitted PlantSnap to use the DEJP American Express credit card for "reasonable or necessary company related expenses" and required written approval prior to any charges in excess of $10,000.

6. The Amex Agreement includes Ralls' personal pledge of 750,000 shares of Common Stock as collateral security for payment of PlantSnap's obligations to repay the charged amounts plus interest. (Ex. 7 § 5(a) and (b)). The Agreement provides that Ralls "pledges, hypothecates, assigns, transfers, sets over and delivers all of the Pledged Stock to [DEJP]..." *Id.* at 5(b). Upon an Event of Default, and following written notice to Ralls, DEJP is "authorized and empowered to transfer and register in its name ...the whole or any part of the Applicable Portion...of the Pledged Collateral...and to otherwise act with respect to the Applicable Portion of the Pledged Collateral as though [DEJP] was the out-right owner thereof." The Applicable Portion is defined as the number of shares of "Pledged Stock equal to the dollar amount of the Charged Amount plus accrued interest thereunder relating to the Event of Default. For illustrative purposed, if the Charged Amount plus accrued interest...is $3,000, then the Applicable

Portion of the Pledged Collateral …shall be 3,000 shares of Common Stock of the Company." *Id.*

7. Ralls signed the Amex Agreement both on behalf of PlantSnap and in his personal capacity. *Id.*

8. As of February 24, 2021, PlantSnap failed to repay $978,043.23 in outstanding principal and interest under the Amex Agreement. (Ex. 1).

9. On July 9, 2019, PlantSnap entered into a Promissory Note with DEJP in the amount of $94,424.44. (Ex. 20 to Verified Complaint) ("Note"). Ralls pledged 100,000 shares of his personal Common Stock as collateral security for the payment by and performance of any and all obligations under the Note. Upon an Event of Default, DEJP is authorized to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral. *Id.*

10. Ralls signed the Note on behalf of PlantSnap and in his personal capacity. As of February 24, 2021, PlantSnap was in default on the Note, having made no payments toward the principal or interest. (Ex. 11).

11. PlantSnap and DEJP executed the "Consolidated Note" on September 30, 2019, in the principal amount of $9,103,301.44. (Ex. 3). The Consolidated Note consolidated previous Royalty Agreements and a March 2019 Promissory Note between the parties. It further consolidated the "A/R Line of Credit" which amounts were transferred into "Loan 2, 3, and 4." *Id.* at Schedule C. By the Consolidated Note's plain language, the Amex Agreement was not consolidated therein. Instead, it incorporated the Amended and Restated Accounts Receivable Loan and Pledge Agreement dated August 9, 2017, which was incorporated into the September 26, 2018 Royalty Agreement between the parties. (*Compare* Ex. 4 attached to Motion for Partial Summary Judgment to Exhibit 14 to Verified Complaint clearly incorporating and identifying the August 9, 2018 Accounts Receivable Loan and Pledge Agreement ("AR Agreement") between the parties)).

12. The Consolidated Note matured upon demand by DEJP at any time after September 2, 2019. *Id.* at ¶ 1a.

13. As part of the security for the payment under the Consolidated Note, Ralls personally pledged 750,000 shares of Common Stock in PlantSnap ("Pledged Shares"). The Consolidated Note provides that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP] to have and to hold the Pledged [Shares]." *Id.* at ¶ 4(a) and (b).

3

14. Ralls signed the Consolidated Note on behalf of PlantSnap but not in his personal capacity. In his 2018-2019 SEC filings, Ralls listed the Consolidated Note as PlantSnap debt and indicated that the debt was secured by a pledge of 750,000 shares of Common Stock owned by Ralls. (Ex. 9 signed June 19, 2020). Ralls asserted in that same SEC filing that PlantSnap would convert the note into equity "at some point in the future." Ralls separately listed in the SEC filing the amounts owed under the Amex Agreement and indicated that the debt was secured by "a pledge of common stock owned by Eric Ralls, PlantSnap CEO." *Id.*

15. The Consolidated Note provides that "[a]ll instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of buyer [DEJP] pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in blank, including duly executed blank stock powers." (Ex. 3 § 4(d)).

16. Ralls previously executed the Assignment Separate from Certificate ("Stock Power") in 2017 in conjunction with the Royalty Agreement and delivered it to DEJP through Pivotal. (Ex. 4 to Complaint; Ex. 13). That 2017 Royalty Agreement was consolidated into the Consolidated Note.

17. The Pledged Stock was reported in a 2021 UCC-1 Financing Statement with the Colorado Secretary of State, listing Ralls as the individual debtor. (Prel. Inj. Ex. 41).

18. The Consolidated Note provides that after an Event of Default and following written notice to Ralls, DEJP is authorized and empowered "to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral, to exchange certificates or instruments representing or evidencing Pledged Collateral for certificates or instruments of smaller or larger denominations, to exercise the voting rights with respect thereto, to collect and receive all cash dividends and other distributions made thereon, and to otherwise act with respect to the Pledged Collateral as though [DEJP] was the out-right owner thereof." (Ex. 3 at ¶ (4)(g)(i)).

19. The Consolidated Note contains several provisions specific to Ralls in his personal capacity, including that "following the occurrence and during the continuance of an Event of Default, Ralls will not at any time plead, claim or take the benefit of any appraisal, valuation, stay, extension…to prevent or delay the enforcement of this agreement, or the transfer of the whole or any part of the Pledged Collateral to Buyer." *Id.* at ¶ 4(g)(iii). It further provides that Ralls "waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that the Obligations are not then due and payable in accordance with the agreements and instruments governing and

4

evidencing such obligations or have been fully and indefeasibly paid or otherwise satisfied." *Id.* at ¶4(g)(iv).

20.      As of February 24, 2021, PlantSnap failed to repay $11,398,304.11 in outstanding principal and interest under the Consolidated Note. (Ex. 1). On that date, DEJP sent a Notice of Default and Demand for Repayment to PlantSnap. (Ex. 11). The Notice listed the amounts owed in the Amex Agreement, Note, and Consolidated Note and demanded immediate repayment of all obligations and that Ralls cease violating the October 19, 2017, Stockholders Agreement. *Id.*

21.      PlantSnap's defaults resulted in an "Event of Default" under the Amex Agreement, Note, and Consolidated Note. (Exs. 3, 7, and Ex. 20 to Verified Complaint).

22.      On March 6, 2021, DEJP notified Ralls that it intended to exercise its right to transfer the Pledged Shares pursuant to the Amex Agreement, the Note, and the Consolidated Note. The letter provided that it constituted written notice that DEJP was exercising "its rights to take *ownership* of all Pledged Shares…in satisfaction of the Obligations." (Ex. 12) (emphasis added). There is no evidence that Ralls agreed that all Pledged Shares could be taken in full satisfaction of the obligations.

23.      Ralls did not respond to the notice of default or DEJP's intent to take ownership of the pledged shares. He did not contact Pivotal to revoke the pledge.

24.      On March 8, 2021, PlantSnap transferred the pledged shares from Ralls to DEJP, using the Stock Power previously executed by Ralls. (Ex. 6 to Complaint). On March 9, 2021, the Board of Directors of PlantSnap, Inc. passed resolutions removing Ralls from all officer or director positions and removing Ralls as an authorized person and/or signatory on PlantSnap's accounts or contracts. As a result, Ralls' ability or authority to act on behalf of PlantSnap was revoked, and Matthew Giblin was appointed as Chief Executive Officer, Chief Operations Officer, Treasurer, and Secretary of PlantSnap. (Ex. 7 to Complaint). Daniel E. Johnson was appointed as PlantSnap's director. *Id.*

25.      In late 2020 – early 2021, Ralls solicited the following six individuals to invest in PlantSnap: 1) Yang B. Kwok; 2) Karen Sweet; 3) Katherine M. Jaris; 4) Thomas P. Powers; 5) Gwendolyn W. Powers; and 6) James Brownlie. (Exs. 14, 15, 16, and 17).

26.      Ralls then entered into convertible notes ("Notes") with the foregoing investors on behalf of PlantSnap as follows: 1) Jaris on February 22, 2021, for $30,000; 2) Kwok on February 23, 2021, for $75,000; 3) Sweet on

March 4, 2021, for $5,000; and 4) T. Powers, G. Powers, and Brownlie on March 8, 2021, for $200,000 each. (Exs. 18, 19, 20, 21, 22, and 23).

27.    DEJP did not consent to the issuance of the Notes as required under the Stockholders' Agreement. (Ex. 24); *see also* Ralls Response to Motion for Summary Judgment (no denial of this factual assertion).

28.    PlantSnap executed the Notes, but, between February and March 2021, $705,000 of the proceeds were placed into an account owned by Defendant Earth.com (a separate entity controlled by Ralls) instead of directly into PlantSnap's corporate accounts. (Exs. 25-26).

29.    Ralls has failed to provide PlantSnap with any proceeds from the Notes. (Ex. 1 ¶ 16).

30.    Later, in April 2022, Ralls transferred the funds from the Earth.com account to a TIAA account he maintained for PlantSnap. (Ex. 29). On September 30, 2022, Ralls pled guilty to contempt for using that same TIAA account for personal use in violation of the Court's prior orders.

31.    Ralls used some of the proceeds from the Notes to pay his litigation expenses in this action. (Ex. A at 76, 88, 97; Ex. 26 at 5).

32.    Ralls was deposed by PlantSnap on May 26, 2022, nearly a year before PlantSnap filed its motion for summary judgment. During that deposition, Ralls repeatedly invoked the Fifth Amendment privilege against self-incrimination and refused to answer questions related to his use of the $705,000 investor funds described above. (Ex. 27). He has provided explanations of his use of such funds for the first time in the affidavit attached to his response.

## II. <u>STANDARD OF REVIEW</u>

"Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988). The party against whom summary judgment is sought is entitled to receive the benefit of all reasonable inferences that may be drawn from the facts. *Id.*

The moving party on summary judgment "bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and of the affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact." *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987). If this initial burden is met, the burden shifts to the opposing party to establish a triable issue of fact; failure to meet this burden justifies an entry of summary judgment. *Id*. at 713.

### III. <u>CONCLUSIONS OF LAW</u>

PlantSnap moves for summary judgment on its claims for Declaratory Judgment (Count 1), Conversion (Count 2), and Civil Theft (Count 3). The declaratory judgment claim seeks a declaration that Ralls was properly removed as the company's CEO. The claims for conversion and civil theft against Ralls and Earth.com arise from Ralls' misappropriation of the investor funds raised from the convertible notes.

#### A. *Declaratory Judgment Claim*

PlantSnap, Ralls, and DEJP entered into a series of lengthy security agreements governing Ralls' pledged shares of common stock. Ralls repeatedly pledged all of his shares in PlantSnap as collateral for substantial loans provided by DEJP. At times in this case, Ralls has made certain arguments that a secured interest did not attach, particularly in the Consolidated Note. The attachment of a secured interest requires that: 1) value has been given; 2) the debtor has rights in the collateral; and 3) the debtor has signed a security agreement that provides a description of the collateral; or (as relevant to this case) 4) the

7

collateral is a certificated security in registered form and the security certificate has been delivered to the secured party pursuant to a security agreement. C.R.S. § 4-9-203(b). Here, it is undisputed that DEJP provided value to PlantSnap, that Ralls had rights in the collateral, and that Ralls signed the security agreements either in his individual capacity or on behalf of PlantSnap. Ralls also agreed to deliver all instruments representing the Pledged Collateral under the Amex Agreement and Consolidated Note and provided a blank stock power to DEJP (pursuant to the 2017 Royalty Agreement that was consolidated into the Consolidated Note).

While Ralls has argued that the Consolidated Note incorporated the Amex Agreement, the Court finds as a matter of law that it did not. This finding is based on undisputed facts contained in the Court's Findings of Fact in ¶ 11, above. The "A/R" loan identified in the Consolidated Note was incorporated into "Loans 2, 3, and 4." Loan 3—the September 30, 2018, Royalty Agreement— unambiguously refers to the Amended and Restated Accounts Receivable Loan and Pledge Agreement ("AR Agreement"). The Amex Agreement is nowhere referred to as an "AR Agreement."[1] Furthermore, Ralls has admitted through SEC filings that he pledged 750,000 of his common stock as security for *both* the Amex Agreement and Consolidated Note. His argument that the Amex Agreement was incorporated into the Consolidated Note is therefore unsupported.

---

[1] The Consolidated Note includes a 10/1/2018 date for the Royalty Agreement, which was actually dated 10/26/2018 and took effect 9/30/2018. But the note otherwise accurately refers to its terms, including the specific royalty amounts ($.50 for every $3.95 of revenue), thereby identifying it as the same Royalty Agreement.

Ralls has argued that the Amex Agreement was incorporated into the Consolidated Note to support his position that he pledged at the most 100,000 shares of his common stock (as represented in the Note). He has repeatedly asserted that the Consolidated Note is unenforceable against him because he did not sign the note in his individual capacity. But this is incorrect as a matter of law. The UCC in C.R.S. § 4-9-203 outlines the authentication requirements for the pledge of a security interest. A security interest attaches and satisfies the statute of frauds if **either** the debtor authenticates a security agreement that provides a description of the collateral **or** delivers the security pursuant to the agreement. C.R.S. § 4-9-203(b)(3)(A)(C). In this case, Ralls did in fact himself sign the security agreement—the Consolidated Note—on behalf of PlantSnap as the company's majority shareholder and director. But he also previously delivered the certificated security (stock power) pursuant to an incorporated agreement and in compliance with C.R.S. § 4-8-301. Either way, the security interest attached, and the statute of frauds is satisfied. *See* C.R.S. § 4-9-203 cmts. 3 and 4.

The creation of DEJP's security interests in the Amex Agreement and Consolidated Note is evident. C.R.S. § 4-9-102(a)(76). The agreements unambiguously describe the number of stocks pledged and contain a clear recitation of the parties' obligations, warranties, and covenants related to the perfection of the lender's security interest. They contain descriptions of events of default and DEJP's rights and remedies. DEJP perfected its security interest by filing UCC-1 statements in both Delaware and Colorado and by assuring that

the pledged collateral was held by PlantSnap's agent (Pivotal). C.R.S. § 4-8-301;
§ 4-9-313.

Following a default, a secured party has the rights provided in C.R.S. § 4-9-
601, et. seq. and, except as otherwise provided in § 4-9-602, "those rights
***provided by agreement of the parties***." (emphasis added). Under the UCC, a
secured party may reduce a claim to judgment, foreclose, or otherwise enforce
the security interest by any available judicial procedure. C.R.S. § 4-9-601(1). A
party may take possession of collateral by self-help if no breach of the peace
occurs. C.R.S. § 4-9-609. After a secured party takes possession of collateral
following a default, "there is no longer any distinction between a security interest
that before default was nonpossessory and a security interest that was
possessory before default, as under a common-law pledge." *Id.* at cmt. 4. The
provisions of C.R.S. § 4-9-207 govern a party's duties with respect to possession
of collateral before and after default.

While Ralls, and at times the Court, have conflated the issues of possession
of the collateral and disposition of the collateral, the Court finds that DEJP
properly took possession of the collateral following the Event of Default under
the plain language of the security agreements. It clearly had the right to do so,
and that right is not prohibited, but supported by the UCC. PlantSnap and Ralls
entered into several similar agreements over time with DEJP and received the
benefits of the bargain when doing so—i.e. significant loan amounts and several
forgiven loan amounts. Under the security agreements, DEJP had the power
after default to "transfer and register in its name...the whole or any part of the

Pledged Collateral…to exercise the voting rights with respect thereto…as though [DEJP] was the out-right owner [of the Pledged Collateral]." That is what they have done.

After DEJP took possession of the collateral and voted its shares, the board voted to remove Ralls as CEO and appointed Giblin, who has since been operating the company. When the Court issued its Preliminary Injunction enjoining Ralls from continuing his attempts to run the business and sell his shares, the Court also ordered that no parties could dispose of the 750,000 shares of pledged common stock. The Court has authorized DEJP through its Preliminary Injunction order to continue to possess the 750,000 shares and thereby control PlantSnap.

Based on the foregoing, the Court finds that DEJP is legally in possession of Ralls' 750,000 shares of PlantSnap and may maintain those shares and vote them pursuant to the parties' agreements and in compliance with C.R.S. § 4-9-207. Part of the lawful voting of those shares resulted in PlantSnap's removal of Ralls as officer and director of the company on March 9, 2021. PlantSnap's motion for a declaratory judgment on its Count 1 that PlantSnap properly removed Ralls as an officer and director of the company on March 9, 2021, is GRANTED.

Going forward procedurally, including at trial, it is important to recognize the posture this case is in. Disposition has not occurred. DEJP cannot maintain control of Ralls' shares indefinitely without taking further action. To date, DEJP has been legally unable to dispose of the shares based on the Preliminary

Injunction. Any declaratory orders at the end of this case should include a timeline for DEJP to move toward disposition. To dispose of the shares, DEJP will be required to act in a commercially reasonable manner. C.R.S. § 4-9-607(c). They may sell the collateral at a public or private sale and any surplus would be due and owing to Ralls. C.R.S. § 4-9-608; § 4-9-610; § 4-9-615. This could include the return of shares to Ralls if DEJP sells only a subset of shares, so long as it is commercially reasonable. Or DEJP may proceed under C.R.S. § 4-9-620, which would require the debtor's consent to an acceptance of collateral in full satisfaction of the obligation it secures. This procedure is known as "strict foreclosure." *See* C.R.S. § 4-9-620 cmt. 2.

Based on the parties' various claims, defenses, and arguments, the Court also addresses the relevance at trial of a PlantSnap business valuation. If Ralls is entitled to a surplus after disposition, he would be entitled only to those amounts in excess of those due and owing to DEJP from PlantSnap. A valuation would only be (possibly) relevant following a sale pursuant to C.R.S. § 4-9-615(f) if DEJP or a related person purchases the shares. But this has not occurred, so a valuation is not yet relevant. A valuation would not be relevant if DEJP pursues a strict foreclosure.[2] If DEJP plans to argue at trial as it did in its motion for summary judgment that the Amex Agreement's liquidated damages provision is enforceable and that all 750,000 shares may be seized in full satisfaction of

---

[2] In its Demand Letter, DEJP did seem to attempt strict foreclosure and stated its intent to take "ownership" of the shares in full satisfaction of the obligations. But they did not demonstrate that this process was completed under the UCC since there is no evidence Ralls agreed to it as required under 4-9-620(c).

PlantSnap's obligations under that agreement, then valuation would likely be relevant to whether such disposition is commercially reasonable under C.R.S. § 4-9-607(c).[3]

A review of all parties' claims and defenses reveals that some are pled as though disposition has occurred. In anticipation of trial, the Court encourages the parties to discuss these discrepancies as they may relate to various jury determinations. The Court may set a status conference prior to the currently scheduled trial management conference to further discuss these issues.

### B. Waiver of Fifth Amendment Privilege

During his deposition on May 26, 2022, Ralls was asked how he used the money he received from the investors that was then deposited into the Earth.com account. (Ex. 27). Ralls responded by invoking his Fifth Amendment privilege and refused to answer. He did so repeatedly throughout his deposition. *Id.* But in response to the present motion (on March 23, 2023), Ralls has submitted a sworn declaration stating that he used most of those funds to pay PlantSnap's corporate expenses, and that the remainder was eventually transferred into the company's accounts after he was removed from the board. Ralls explains that he placed the funds into the Earth.com account to protect them from a creditor that had filed a lien against PlantSnap's corporate accounts. Ralls submits this declaration to refute PlantSnap's allegation that he intended to permanently deprive PlantSnap of those funds.

---

[3] At page 14 of PlantSnap's and DEJP's supplemental brief, DEJP says it does not and cannot seek to enforce the dollar-per-share valuation in the Amex Agreement.

PlantSnap argues that the Court should disregard Ralls' declaration as a sham affidavit because it conflicts with his prior invocation of the Fifth Amendment privilege. A court may disregard an affidavit as a sham "where that affidavit contradicts the party's previous sworn deposition testimony." *Luttgen v. Fischer*, 107 P.3d 1152, 1156 (Colo. App. 2005). Here, Ralls avoided answering any questions about his use of the investor funds by invoking his Fifth Amendment privilege, but he now waives that privilege in response to PlantSnap's summary judgment motion. Under these circumstances, the Court will disregard Ralls' declaration and attached exhibits as a sham affidavit.

When a party invokes the Fifth Amendment privilege in a civil proceeding, a court must "carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment." *Steiner v. Minn. Life Ins. Co.*, 85 P.3d 135, 141 (Colo. 2004). This means that the invoking party cannot use the privilege to gain an advantage over the opposing party. On summary judgment, the invoking party may waive the assertion of the privilege if "(1) the litigant was not using the privilege in a tactical, abusive manner, and (2) the opposing party would not experience undue prejudice as a result." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 548 (5th Cir. 2012); *see also In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) ("But the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion.").

The Court finds that Ralls has used the Fifth Amendment privilege to obtain a tactical advantage. Ralls' improper use of PlantSnap's accounts has already been addressed in the prior contempt proceeding, in which Ralls admitted to violating the Court's order to turn over PlantSnap's accounts to its current CEO. In its contempt order, the Court found that Ralls improperly used PlantSnap's TIAA account for personal expenses. Ralls transferred the funds from the Earth.com account into the TIAA account. He pled guilty to contempt for misusing the TIAA account. While Ralls now states that he used the funds only for PlantSnap's expenses, his own guilty plea in the contempt proceeding contradicts that assertion. He refused to answer questions at his deposition about his use of investor funds. But he now offers a sworn statement addressing that same issue simply to oppose summary judgment. This strategy is improper because Ralls deprived PlantSnap's counsel of a meaningful opportunity to challenge him concerning the use of those funds.

Furthermore, PlantSnap is prejudiced by Ralls' declaration because this case is very old and discovery is closed. PlantSnap was unable to question Ralls concerning his use of the investor funds, and there is no reason to reopen discovery simply because Ralls now wants to waive his Fifth Amendment privilege. Ralls chose to invoke his Fifth Amendment privilege and the Court will hold him to that decision. Ralls cannot now testify concerning his use of the funds after withholding that testimony during his deposition. Therefore, Ralls' declaration is a sham affidavit that is improper under Rule 56.

### C. Conversion

PlantSnap moves for summary judgment on its conversion claim on the grounds that Ralls misappropriated the investor funds. "Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Byron v. York Inv. Co.*, 133 Colo. 418, 424, 296 P.2d 742, 745 (1956). Unlike a claim for theft, a conversion claim "does not require that a wrongdoer act with the specific intent to permanently deprive the owner of his property." *Itin v. Ungar*, 17 P.3d 129, 135 n.10 (Colo. 2000).

The undisputed facts show that Ralls converted the investor funds. In his sworn declaration, PlantSnap's current CEO, Matt Giblin, states that there is no written record of DEJP consenting to the issuance of the notes, nor has Ralls or Earth.com returned the proceeds. Under section 12.1(e) of the Stockholders' Agreement, PlantSnap could not issue any debt securities without DEJP's consent. Ralls conducted the debt offering without authorization and there is no dispute that he placed the proceeds in an unauthorized account. Therefore, the elements of conversion are satisfied against Ralls because he exercised dominion and control over the investor funds without authorization.

In his response, Ralls raises the "business judgment rule" as a defense for his actions. This rule gives a corporate officer wide discretion in making decisions for the company, but only applies if the officer acted in good faith. *Rifkin v. Steele Platt*, 824 P.2d 32, 35 (Colo. App. 1991). It is not legitimate for an officer to divert corporate funds without authorization or to use them for personal benefit. *Id.*

Ralls cannot rely on the business judgment rule. He had the convertible notes issued without proper authorization and had the funds deposited in an unauthorized account. The Court also found in the contempt proceeding that Ralls improperly used the funds in the TIAA account for his personal use. The business judgment rule does not provide a defense to Ralls' conduct.

Accordingly, PlantSnap is entitled to summary judgment against Ralls on its conversion claim because there is no dispute that Ralls exercised unauthorized control over the investor funds and used them for an improper purpose. The motion is GRANTED as to Count 2.

### D. Civil Theft

PlantSnap next moves for summary judgment on its civil theft claim. To prove civil theft, a plaintiff must satisfy the following elements: that the defendant "knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception," and acted "intentionally or knowingly in ways that deprive the other person of the property permanently." *Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018). The Court has already found that Ralls exercised control over the investor funds without authorization; the remaining issue is whether Ralls intended to permanently deprive PlantSnap of those funds. The specific intent to deprive another of their property is an issue of fact. *In re Estate of Chavez*, 520 P.3d 194, 204 (Colo. App. 2022).

At this point, the Court cannot find as a matter of law that Ralls acted with the requisite intent under a civil theft claim. Factual issues of a party's intent

can rarely be decided on summary judgment. *Schold v. Sawyer*, 944 P.2d 683, 684 (Colo. App. 1997). The Court will deny summary judgment on this claim.

### E. Damages

PlantSnap seeks damages for conversion in the amount of $705,000, the total amount of the proceeds from the convertible notes. These were the funds that Ralls deposited into the Earth.com account without authorization. In his response, Ralls contends that he is entitled to a setoff for personal loans he made to PlantSnap. But the common law defense of setoff must be pled as an affirmative defense under Rule 8(c). *Marso v. Homeowners Realty, Inc.*, 418 P.3d 542, 545 n.10 (Colo. App. 2018); *Ochoa v. Vered*, 212 P.3d 963, 972 (Colo. App. 2009). Ralls did not plead the defense of setoff in his answer, so this defense is waived.

Here, there is no dispute concerning the amounts collected from the convertible notes and that those funds were deposited into the Earth.com account. Therefore, PlantSnap is entitled to a judgment against Ralls for conversion in the amount of $705,000.

### F. Claims Against Earth.com

Finally, PlantSnap moves for summary judgment against Earth.com based on the actions of Ralls. At this point, the Court finds no legal basis for holding Earth.com liable for Ralls' actions because the corporate veil has not been pierced. While PlantSnap alleges in its complaint that Earth.com is an alter ego of Ralls, that allegation has not been proven. The Court will not grant summary judgment on the claims against Earth.com.

## IV. **ORDER**

Based on the foregoing, PlantSnap's Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART as stated above. The Court ORDERS:

1) Summary Judgment is GRANTED as to PlantSnap's Count 1-Declaratory Judgment. The Court finds and declares that Ralls was legally removed as an officer and director of PlantSnap on March 9, 2021;

2) Summary judgment is GRANTED IN PART as to PlantSnap's Count 2-Conversion as to Ralls; and

3)  PlantSnap is entitled to a judgment against Ralls for conversion in the amount of $705,000.

As to the remining claims, summary judgment is denied.

Further, PlantSnap's Motion to Strike Portions of Declaration of Eric Ralls is GRANTED.

SO ORDERED this 11th day of January, 2024.          BY THE COURT:

Keri A. Yoder
District Court Judge

| | |
|---|---|
| COMBINED COURT, SAN MIGUEL COUNTY, COLORADO<br><br>Court Address:  305 West Colorado Avenue<br>P.O. Box 919<br>Telluride, Colorado 81435 | **DATE FILED: February 29, 2024 3:58 PM**<br>**CASE NUMBER: 2021CV30005** |
| PLANTSNAP INC.,<br><br>　　　Plaintiff,<br><br>v.<br><br>ERIC RALLS and EARTH.COM, INC.<br><br>　　　Defendants,<br>v.<br><br>DEJ PARTNERS, LLC<br><br>　　　Third Party Plaintiff,<br><br>v.<br><br>EARTHSNAP, INC.; DIGITAL EARTH MEDIA, INC.; METAVERSAL KNOWLEDGE, INC.<br><br>　　　Third Party Defendants. | ▲  COURT USE ONLY  ▲<br>―――――――――――――――<br>Case Number: 2021CV030005<br><br>Division: 3 |
| **ORDER RE: MOTION FOR ENTRY OF FINAL JUDGMENT FOR SUMMARY JUDGMENT RULING** | |

    This matter comes before the Court on Plaintiff PlantSnap Inc.'s ("**PlantSnap**") Motion for Entry of Final Judgment for Summary Judgment (the "**Motion**"). This Court, having reviewed the Motion and related filings, the relevant legal authority, and being fully advised in the premises, hereby FINDS and ORDERS as follows:

    The Motion is GRANTED.

    The Court has previously awarded PlantSnap a judgment of $705,000.00 against Defendant Eric Ralls ("**Ralls**").

    FINAL JUDGMENT IS HEREBY ENTERED in favor of PlantSnap in the total amount of $705,000.00 against Ralls. Statutory interest in the amount of 8% per annum shall accrue on any principal amount owing until the judgment has been fully satisfied.

Dated: __February 29, 2024_____

_____

District Court Judge

EXHIBIT 17

| DISTRICT COURT, SAN MIGUEL COUNTY, COLORADO<br>305 W. COLORADO AVE.<br>P.O. BOX 919<br>TELLURIDE, CO 81435 | DATE FILED: October 13, 2022 11:17 AM<br>CASE NUMBER: 2021CV30005 |
|---|---|
| **Plaintiff:** PLANTSNAP, INC.,<br><br>v.<br><br>**Defendant:**  ERIC RALLS and EARTH.COM, INC.,<br><br>v. | |
| **Third Party Plaintiff/ Third Party Defendant:** DEJ PARTNERS, LLC,<br><br>v. | Case Number:<br>2021CV30005 |
| **Third Party Defendants:** EARTHSNAP, INC.; DIGITAL EARTH MEDIA, INC.; AND METAVERSAL KNOWLEDGE, INC. | Div.: 3   Ctrm: |

## ORDER ON PLANTSNAP'S AND DEJ'S VERIFIED MOTIONS FOR CONTEMPT AGAINST DEFENDANT ERIC RALLS

This matter came on the Court's docket on September 30, 2022 for a hearing on the following:

1) Verified Motion for Forthwith Citation to Eric Ralls filed by PlantSnap and DEJ April 29, 2022;
2) Joint Supplement to Verified Motion for Citation filed June 13, 2022; and
3) Joint Second Supplement to Verified Motion for Citation filed August 10, 2022.

1

EXHIBIT 7

Mr. Richardson appeared for PlantSnap; Mr. Thomas for DEJ; Mr. Ralls
appeared with counsels Mr. Melito, Mr. Kontnik, and Mr. Fenicle. The Court
took testimony from PlantSnap CEO Mr. Giblin and Mr. Ralls. Plaintiff's Exhibits
1, 3, 5, 6, 7, 8, and 10 were admitted into evidence, along with Defendant's
Exhibit G. After considering the credible testimony and evidence, the Court finds
that Mr. Ralls is in contempt of court for numerous acts and will impose both
remedial and punitive sanctions as follows.

## I.   FINDINGS OF FACT AND RELEVANT PROCEDURAL HISTORY

On April 23, 2021, this Court held a preliminary injunction hearing. For the
reasons more thoroughly articulated in its April 27, 2021 *Combined Order Re:
Plaintiff's and Defendant's Motions for Preliminary Injunctions* ("Order"), the Court
ruled in favor of PlantSnap and against Ralls and Earth. The Court ordered the
following:

> 1) Ralls shall be immediately enjoined from acting on behalf of
> PlantSnap and representing to any third parties that he is currently
> affiliated with PlantSnap; and;
> 2) Ralls shall immediately turn over complete access to all of
> PlantSnap's Accounts to PlantSnap's current CEO or other designee.
> Such Accounts include, but are not limited to: Alpine Bank, Amazon
> Web 16 Services, Apple App Store Connect, CleverTap, Dropbox,
> Facebook, Firebase, GoDaddy, Google Play Console, Google
> Workspace (GSuite), Huawei HMS Store, Imagga, Instagram, No
> Marker, Pinterest, QuickBooks, and Singular.
> It is further ORDERED that neither PlantSnap nor DEJ, during
> the pendency of this action, transfer or otherwise encumber the
> 750,000 shares that it foreclosed upon.

At the time the Court issued the foregoing, Ralls was represented by counsel at
Cooley, LLP. The Cooley attorneys competently and vigorously represented Ralls
at the preliminary injunction hearing and filings leading up to the hearing. The

Order was sent electronically to Cooley on behalf of Ralls on the same date it was issued. Ralls received the Order the same date it was issued, as he admitted at the hearing. On February 24, 2022, Kontnik Cohen, LLC substituted counsel with Cooley.

The evening that Ralls received the Order (less than an hour after its issuance), he was angry and deleted several e-mails from PlantSnap's GSuite in violation of the Order. Not only did he delete e-mails, but the Court finds that he permanently deleted several PlantSnap accounts—and the restoration period for the accounts has lapsed—based on Giblin's credible testimony. Only in May 2022 did Ralls, through counsel, purport to submit the deleted GSuite e-mails to PlantSnap via a pdf file. PlantSnap is unable to independently verify whether all deleted GSuite e-mails were recovered and provided.

Following the Order, Ralls refused access to a PlantSnap GoDaddy account and refused to turn over access to a PlantSnap Dropbox account. To this day, Ralls has not done so. Based on Giblin's credible testimony, PlantSnap paid a substantial portion to Dropbox to retain the account. Ralls argues that the Dropbox account holds information from other companies, and instead of providing unrestricted access to PlantSnap, he provided a hard drive purportedly from Dropbox in February 2022—nearly ten months after the Order. Ralls himself chose the items disclosed on the hard drive, and there is no method of independently verifying whether all relevant documents were provided. Ralls received no court order or authority to provide pdf and/or pst files and/or hard drives in lieu of unrestricted access. As to GoDaddy, Ralls testified that it

contains no PlantSnap account. However, his failure to grant PlantSnap access to it violated the Order. PlantSnap has been unable to properly operate based on its inability to access its own corporate records.

In May 2021, Ralls used PlantSnap's TIAA bank account. Ralls ran about 50 transactions through the PlantSnap TIAA account in May alone, including personal and business expenses, in clear violation of the Order. Ralls did not inform PlantSnap of the TIAA bank account following the Order and repeatedly used the account through the end of 2021.

Also in May 2021, Ralls attempted to sell to Maple Media and others the 750,000 shares that the Court held were properly foreclosed upon by DEJ. (Exs. 6 & 7). In attempting to sell these shares, Ralls necessarily held himself out as a principle of PlantSnap to third parties in violation of the Order. In one e-mail dated May 17, 2021, Ralls stated to a potential investor that "PlantSnap has a new acquisition bidder in the mix as of last night. NOW, I've got a bidding war for PlantSnap, so it's going to get very interesting. This is exactly what I needed to push the sale number over the $100 million mark." (Ex. 6). Ralls communicated with Maple Media on May 24, 2021 that the goal would be to sell them enough of his "personal stock to give them the controlling interest in PlantSnap" and he would then "stay onboard and run the biz dev and product dev side of PlantSnap." (Ex. 7).

Ralls' counsel from Cooley were aware of Ralls' actions and apparently either encouraged him to sell "his shares" or certainly did not stop him from

attempting to do so.[1]  (Ex. 7).  Critically, Ralls and Earth did not provide the aforementioned e-mails until the spring and summer of 2022.  Neither Ralls nor his attorneys disclosed that Ralls was attempting to sell his former shares in May 2021—Exhibit 7 was not disclosed until after an August 2022 discovery hearing.

As part of his attempts to sell his PlantSnap shares in May 2021, Ralls simultaneously promoted investments in Earth and offered to pledge his former PlantSnap shares as collateral.  Ralls represented to an investor that, with the sale of his "personal stock" in PlantSnap, Earth's domain name would be "paid in full" and he would be able to take Earth public.  (Ex. 5).  Ralls went further and guaranteed a potential investor that they would own "10% stock" in the "new Earth entity" and have a "personal guarantee from [Ralls] on the $750,000 investment."  The $750,000 investment under this proposal would have been secured by Ralls' PlantSnap shares, which the Court held were foreclosed upon and could not be transferred or otherwise encumbered.  Ralls did not inform the investor about this lawsuit, his inability to act on behalf of PlantSnap, or his financial obligations to DEJ.

As recently as April 2022 (even after obtaining new counsel), Ralls communicated with potential PlantSnap investors and held himself out as being affiliated with PlantSnap.  Ralls communicated directly with Meta AI (f.k.a. Facebook) on behalf of PlantSnap.  Starting in March 2022, Meta e-mailed Ralls

---

[1] Ralls attempted to introduce e-mails from his attorneys, which were not provided to Plaintiff and DEJ until the night before the hearing.  The Court allowed the attempted introduction but found that improper foundation was laid for their admission.  The Court, however, finds from the other exhibits that the Cooley attorneys did encourage Ralls to obtain offers on the stock that was foreclosed upon.  In addition, Ralls read some of the e-mails from his attorneys into the record without objection.

and indicated interest in working with PlantSnap on plant/animal recognition. (Ex. 10). Instead of passing on the message to Giblin or anyone else at PlantSnap, Ralls engaged in a series of e-mails with Meta. *Id.* Ralls then e-mailed the PlantSnap "705 investors" to inform them that Meta reached out to explore potential partnerships with PlantSnap now "and eventually earth.com". *Id.* In so doing, Ralls asked a potential investor to keep the matter "highly confidential" because "[a]s an investor, I want to keep you updated on everything that I can, but I also don't want to do anything to blow a potential landmark deal for PlantSnap by having it leak somewhere." *Id.* Ralls stated that the deal "will impact the timing of any PlantSnap sale but having a deal with Meta in place before selling the company would increase the value proposition dramatically, so this is a good thing." (Ex. 10).

When asked by one of the 705 investors, "Are you [i.e. PlantSnap] still associated with SnapChat?", Ralls responded, "Yes, PlantSnap is still working with SnapChat as a featured Lens partner." *Id.* Ralls admitted in his testimony to sending the e-mails and communicating with Meta but testified that he was not holding himself out as a PlantSnap principle. His testimony on that issue was not credible based on the plain language of the e-mail chains in Exhibit 10 and the fact that Ralls never informed any of the potential investors that he is not currently able to act on behalf of PlantSnap. Ralls testified that he told Meta via phone that he had no authority to enter into any agreements with them and instructed them to contact PlantSnap separately. His testimony was not credible

on that point either, because it was directly contradicted by the e-mails from
Meta and Ralls' subsequent e-mails to the potential investors.[2]

## II.    CONCLUSIONS OF LAW

Ralls has been represented by counsel throughout these proceedings, and
they waived advisement on Ralls' behalf at each of the advisement hearings.  The
contempt motion and supplements made clear that both remedial and punitive
sanctions were being requested, and the proceedings were conducted following
the required procedures.

At the start of the September 30th hearing, Ralls pleaded guilty to contempt—
both punitive and remedial—for deleting e-mails from the GSuite and for using
the TIAA PlantSnap bank account for private use.  The Court finds he is also in
contempt for failing to provide unfettered access to accounts as ordered, for
attempting to sell shares in PlantSnap that he did not own and in direct violation
of the Order, and for recently attempting to reach a deal with Meta AI on
PlantSnap's behalf and communicating such to potential  PlantSnap investors.

### A. Indirect Contempt/ Remedial Sanctions

Under C.R.C.P. 107(c), the court may order remedial sanctions where there
has been an indirect contempt.  Such sanctions may include attorneys' fees.  It

---

[2] Meta e-mailed Ralls on March 2, 2022 about "working together" and Ralls responded "I'd love to chat anytime
about how we could work together on plants/animal recognition…" and a meeting was scheduled the next week.
Meta then sent an e-mail in April 2022 checking in to see if Ralls had thought further about the licensing of plant
images. If Ralls truly communicated that Meta should e-mail a current PlantSnap rep, Meta's April 2022 e-mail
would make no sense.  After that, Ralls forwarded the Meta communications to potential investors, whom he had
not informed about this lawsuit or his current inability to act on behalf of PlantSnap, and specifically represented
that Meta was interested in partnering with PlantSnap.

may also include jail or a fine until compliance with a court order.  To find indirect contempt and impose remedial sanctions, the trial court must find: 1) that the alleged contemnor was subject to a court order; 2) that the alleged contemnor had knowledge of the order; 3) that the alleged contemnor refused or is refusing to perform the terms of the order; and 4) the alleged contemnor has the present ability to perform.  C.R.C.P. 107(c)(d)(2); *Marshall v. Marshall,* 536 P.2d 845 (Colo. 1975).  The moving party has the burden of showing the foregoing by a preponderance of the evidence.  Once a prima facie case has been made, the burden then shifts to the alleged contemnor to prove the inability to comply. *See In Re: Marriage of Lamutt,* 881 P.2d 445 (Colo. App. 1994).

The Court finds that Plaintiff and DEJ proved by a preponderance of the evidence that:   1) Ralls was subject to the April 27, 2021 Order; 2) Ralls had knowledge of the Order; 3) Ralls violated the Order by: failing to provide access to PlantSnap accounts; deleting PlantSnap GSuite e-mails and accounts; using PlantSnap's TIAA bank account for personal and business uses; holding himself out as affiliated with PlantSnap and attempting to sell or pledge all of his shares in May 2021, which shares remain tied up in this litigation; and by recently holding himself out as a PlantSnap principle to Meta and potential PlantSnap investors; and 4) Ralls has the present ability to comply with the Order by ceasing and desisting.  While Ralls argues that he does not have the present ability to comply because he cannot change what already occurred, the Court finds that he presently can choose to follow the Court's Order until final resolution of this case.

Based on the number of his violations, it appears that Ralls has no intention of complying with the Order throughout this litigation without court intervention. For Ralls to gain compliance and to purge this contempt, the Court orders the following remedial sanctions:

1) The Court imposes one day in jail for each day between now and final resolution of this case suspended contingent upon Ralls' strict compliance with the Order up to and including final resolution of this case—whether that be through settlement or trial; as part of Ralls' compliance with the Order, he shall immediately disclose to PlantSnap any and all communications from any entity or person whatsoever that has inquired about PlantSnap, whether that be to invest in it, work with it, or obtain any information whatsoever about it (this shall be done within 48 hours of receipt of any future communications and no later than within 21 days from today's date for any past communications);

2) Ralls shall file a proposed Notice of Lawsuit with the Court within 14 days of this Order, which notice shall include a statement that Ralls does not currently have the ability to hold himself out as affiliated with PlantSnap nor does he have the ability to sell or pledge his personal shares in the company; after Plaintiff and DEJ have the opportunity to respond to the proposed Notice of Lawsuit and it is approved by the Court, Ralls shall mail a copy of it to all noteholders, shareholders, or any other person or entity that is a creditor or equity interest holder of Ralls or any entity in which Ralls has an interest no later than 14 days after its approval; upon

9

mailing the Notice of Lawsuit, Ralls shall file a certificate of service with the Court identifying each person and entity no later than 14 days after the mailing.

The Court also orders that Mr. Ralls pay PlantSnap's and DEJ's reasonable attorneys' fees and costs for prosecuting the contempt motions pursuant to C.R.C.P. 107(d)(2). Counsel shall file an attorney's fees and costs affidavit within 21 days. If the reasonableness thereof is contested, a separate hearing will be held.

### B. *Indirect Contempt/ Punitive Sanctions*

To find indirect contempt and impose punitive sanctions, the Court must find beyond a reasonable doubt that: 1) the alleged contemnor was subject to a court order; 2) that he had knowledge of the order; 3) that he failed to obey the order; 4) that he had the ability to comply at the time of the contempt; 5) that the lack of compliance was willful; and 6) that the lack of compliance is offensive to the dignity of the court.

The Court finds that movants proved beyond a reasonable doubt that: 1) Ralls was subject to the April 27, 2021 Order; 2) Ralls had knowledge of the Order; 3) that he failed to obey the order by failing to provide access to PlantSnap accounts; deleting PlantSnap GSuite e-mails and accounts; using PlantSnap's TIAA bank account for personal and business uses; holding himself out as affiliated with PlantSnap and attempting to sell and/or pledge all of his shares in May 2021, which shares remain tied up in this litigation; and by recently holding himself out as a PlantSnap principle to Meta and potential PlantSnap

investors; 4) Ralls had the ability to comply at the time of the contempt; 5) that the lack of compliance was willful; and 6) that the lack of compliance is offensive to the dignity of the court.

Ralls has repeatedly violated this Court's Order, as he both admitted and as was proven beyond a reasonable doubt based on documentary and credible testimonial evidence. The deletion of GSuite information was done less than one hour after the Court's Order. Ralls unilaterally and without court approval decided not to provide PlantSnap access to online accounts as very specifically ordered. He was not authorized to parse through the accounts and determine what could be provided and what he could withhold.

While his attorneys did encourage him to gain bids on "his shares" in May 2021, Ralls took this encouragement further by continuing to hold himself out as a PlantSnap principle in violation of the Court's Order. Ralls' attorneys did not advise him that he could pledge all of his former shares in PlantSnap in exchange for a $750,000 investment in Earth; at most they encouraged him to get bids in order to pay off his debt to DEJ. But Ralls nonetheless negotiated with a potential Earth investor and tried to personally secure the loan with his former PlantSnap shares—nearly one month after the clearly worded Order. (Ex. 5). The Court finds Ralls' attempt to do so particularly egregious. At no time did Ralls inform potential buyers that he had no present ability to sell his shares or pledge them as collateral. (Exs. 6 & 7).

Even if Ralls was confused in May 2021 based on his attorneys' advice, he continued violating the Court's Order after obtaining new counsel. Ralls willfully

represented to Meta that he is still involved with PlantSnap and then in turn communicated with possible PlantSnap investors about Meta's interest while continuing to hold himself out as the company's contact person. Ralls did not forward the inquiries to Giblin or other current PlantSnap board member.

The Court finds that Ralls' repeated and willful violations of the Order are offensive to the dignity of the court. Even when confronted with his recent interactions with Meta, Ralls offered no logical explanation and was unapologetic about his actions.

A sentencing hearing is set on November 1, 2022 at 4:00 p.m., and Ralls will have the opportunity to provide a statement, along with any other relevant mitigating evidence. Ralls should be prepared to start any sentence on that date. If the Court orders jail, it will order that Ralls be remanded into custody immediately.

### III.   ORDER

The Court FINDS that Ralls is in contempt of court warranting both remedial and punitive sanctions;

ORDERS remedial sanctions as outlined above;

ORDERS that Ralls pay PlantSnap's and DEJ's attorney's fees and costs for prosecuting the contempt motions; and

SETS FOR SENTENCING punitive contempt sanctions on November 1, 2022 at 4:00 p.m.

SO ORDERED this 13th day of October, 2022.   BY THE COURT:

_____
Keri A. Yoder
District Court Judge

12

| COMBINED COURT, SAN MIGUEL COUNTY, COLORADO<br><br>Court Address: 305 West Colorado Avenue<br>            P.O. Box 919<br>            Telluride, Colorado 81435 | |
|---|---|
| PLANTSNAP INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ERIC RALLS and EARTH.COM, INC.<br><br>        Defendants,<br>v.<br><br>DEJ PARTNERS, LLC<br><br>        Third Party Plaintiff,<br><br>v.<br><br>EARTHSNAP, INC.; DIGITAL EARTH MEDIA, INC.; METAVERSAL KNOWLEDGE, INC.<br><br>        Third Party Defendants. | DATE FILED: February 15, 2023 8:21 AM<br>CASE NUMBER: 2021CV30005<br><br><br>▲ COURT USE ONLY ▲<br>_____<br>Case Number: 2021CV030005<br><br>Division: 3 |

**ORDER RE: MOTION FOR ENTRY OF FINAL JUDGMENT FOR AWARD OF ATTORNEYS' FEES**

    This matter comes before the Court on Plaintiff PlantSnap Inc.'s ("**PlantSnap**") Motion for Entry of Final Judgment for Award of Attorneys' Fees (the "**Motion**"). This Court, having reviewed the Motion and related filings, the relevant legal authority, and being fully advised in the premises, hereby FINDS and ORDERS as follows:

    The Motion is GRANTED.

    The Court has previously awarded PlantSnap attorneys' fees in the amount of $84,189.00 and costs in the amount of $749.76 against Defendant Eric Ralls ("**Ralls**").

    FINAL JUDGMENT IS HEREBY ENTERED in favor of PlantSnap in the total amount of $84,938.76 against Ralls. Statutory interest in the amount of 8% per annum shall accrue on any principal amount owing until the judgment has been fully satisfied.

Dated:  ___February 15, 2023___          _____

                                          District Court Judge