Case 24-60363 Doc 167 Filed 04/21/25 Entered 04/21/25 15:50:27 Desc Exhibit
E) Order Granting Conversion Motion Page 1 of 20

Case 24-60363 Doc 767 Filed 04/21/25 Entered 04/21/25 15:58:27 Desc Main
Document Page 1 of 20

EOD
04/21/2025

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **EarthSnap, Inc.**[1] | § | JOINTLY ADMINISTERED |
| | § | under Case No. 24-60363 |
| | § | |
| | § | |
| Debtors | § | Chapter 11 - **Subch. V** |

**ORDER GRANTING MOTION TO CONVERT SUBCHAPTER V,
CHAPTER 11 CASES INTO CHAPTER 7 BANKRUPTCY CASES**

On March 19 and 25, 2025, the Court conducted a hearing on the "Joint Motion to Convert Chapter 11 Case to Chapter 7 Case Without Waiver of 30-Day Hearing Requirement"[2] (the "Motion") filed on February 17, 2025 by PlantSnap Inc. ("PlantSnap") and DEJ Partners, LLC ("DEJP"), and joined[3] by HI Investments, LLC ("HII"), collectively referred to as the Movants. The Court finds that the Motion was properly served pursuant to the Federal and Local Rules of Bankruptcy Procedure and that it contained the appropriate fourteen (14)-day negative notice language, pursuant to LBR 1017(d), which directed any party opposed to the granting of the relief sought by the Motion to file a written response within fourteen days or the Motion would be deemed

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax identification number, are: EarthSnap, Inc. (5236), and Eric Ralls (0447).

[2] ECF No. 97.

[3] ECF No. 101.

by the Court to be unopposed. The Court finds that no objection or other written response to the Motion has been timely filed by any party. And yet, for the reasons set forth on the record during an emergency hearing held on March 13, 2025, and in the interests of fairness, the Court did not treat the allegations in the Motion as unopposed despite Debtors' failure to file a written response as required.[4] To date, no written response has been filed, though Debtors' counsel appeared at the hearings on March 19 and 25, 2025 and opposed the Motion.[5]

The Court has held prior hearings in these cases, and expressed concerns about various apparent failures of Debtors. These concerns caused the Court, as set forth therein, to enter on February 13, 2025 its "Order To Show Cause Why Case Should Not Be Dismissed Or Converted For Cause Under § 1112."[6] This show cause order was also set for hearing on March 19, 2025, but the Court, as set forth on the record, elected for Movants to prosecute their Motion rather than the Court prosecuting its own show cause.

---

[4] At least one Court has affirmed conversion of a Chapter 11 case after the debtor's failure to respond to a conversion motion as required. *In re Cantera Dorado, Inc.*, 512 B.R. 126, 131 (D.P.R. 2014).

[5] The Motion was heard beginning on the 30th day after its filing in compliance with 11 U.S.C. § 1112(b)(3). The hearing could not be completed within 30 days due to the time needed for presentation of evidence. Furthermore, reviewing evidence and deciding this manner was subject to compelling circumstances which prevented the Court from meeting the time limits established by 11 U.S.C. § 1112(b)(3) because of the Court's unavailability.

[6] ECF No. 94.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). The Court has the authority to enter a final judgment in this contested matter because it constitutes a statutorily core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O), and meets all constitutional standards for the proper exercise of full judicial power by this Court.

At the hearing on the Motion, the Court admitted into evidence Movants' Exhibits 1 through 94, as attached to their Exhibit List.[7] Debtors failed to mark their exhibits with letters as required by LBR 7016(d) and LBR 9014(d). However, the Court admitted into evidence Debtors' Exhibits 1 through 7, as attached to Debtors' Exhibit List.[8]

Movants' Motion seeks conversion of these jointly administered cases from Chapter 11 to Chapter 7 pursuant to 11 U.S.C. § 1112(b). Under 11 U.S.C. § 1112(b), "[o]n request of a party in interest, and after notice and a hearing, the court shall convert to chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." § 1112(b) contains a non-exhaustive list of reasons constituting "cause." The Court, however, may also convert or dismiss a Chapter 11 case

---

[7] ECF No. 116.

[8] ECF No. 101.

for reasons not specified in § 1112(b), "provided that these reasons are sufficient to demonstrate the existence of cause." *In re Andover Covered Bridge LLC*, 553 B.R. 162, 172 (B.A.P. 1st Cir. 2016). Determining the existence of cause is a specific inquiry. *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371–72 (5th Cir. 1987). "One ground, however, is sufficient, standing alone, to establish cause under the statute." *Andover Covered Bridge, LLC*, 553 B.R. at 172. The moving party bears the initial burden to establish cause, but once established the burden shifts to a debtor to establish an exception under § 1112(b)(2).[9] The existence of cause under §

---

[9] One bankruptcy court explained this burden shifting as follows:

> When determining whether to dismiss or convert a case under § 1112, a court is required to apply a burden shifting analysis. *In re Aurora Memory Care, LLC*, 589 B.R. 631, 637 (Bankr. N.D. Ill. 2018) ("The amended section 1112(b) also introduced a burden-shifting scheme under which the debtor can resist an otherwise mandatory conversion or dismissal."). Under that analysis, the moving party bears the initial burden to establish "cause" by a preponderance of the evidence. *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir.1994). Once the movant shows "cause," the burden shifts to the debtor to establish the exceptions in § 1112(b)(2). *In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 Bankr. LEXIS 4132, 2010 WL 4866874, at *3 (Bankr. N.D. Tex. Nov. 23, 2010) ("Thus, the statutory framework establishes that the initial burden to establish 'cause' lies with the [moving party], and if the [moving party] establishes 'cause,' then the burden shifts to the [non-moving party] to establish the 'unusual circumstances' exception to mandatory dismissal.").
>
> If the movant establishes "cause" and the non-movant fails to meet its burden of proving the statutory exceptions under § 1112(b)(2), dismissal or conversion is mandatory, unless the court determines the appointment of a chapter 11 trustee or an examiner is in the best interests of creditors and the estate. See, § 1112(b)(1).

*In re Delta AG Grp., LLC*, 596 B.R. 186, 194 (Bankr. W.D. La. 2019).

1112(b) is in the Court's discretion. *In re Haydel Props., LP*, No. 12-50048-KMS, 2013 Bankr. LEXIS 5782, at *11 (Bankr. S.D. Miss. 2013) (collecting cases). Debtors oppose conversion on any basis as evidenced by their evidence and testimony admitted during the hearing.

### A. 11 U.S.C. § 1112(b)(4)(F) - Unexcused failure to timely file required monthly operating reports and § 1116 financial documents.

Subchapter V small business debtors have a duty to timely file accurate monthly operating reports. 11 U.S.C. § 1116(4), 1187(b); *In re Turk. Leg Hut & Co. LLC*, 665 B.R. 129, 139 (Bankr. S.D. Tex. 2024). As one Court has explained:

> Monthly operating reports provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts. The requirement to file these reports on a timely basis, no later than twenty days following the reporting period, assures that current information is regularly and easily available to anyone with an interest in monitoring the progress of a case toward confirmation. Late filings complicate this task, and missing filings may render it impossible.

*In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011). The evidence in this case shows, as does the docket itself, that Debtors have repeatedly failed to timely file monthly operating reports. These reports are due on the twentieth day of the month following the month for which the report is filed.

Debtor, Earthsnap, Inc., filed its voluntary petition in Case No. 24-

60363 on June 17, 2024,[10] meaning its first monthly operating report should have been filed by July 20, 2024, and subsequent reports on the 20th of each month thereafter. The June, July, and August 2024 reports were filed late on October 8, 2024.[11] The September report was also filed on October 8, 2024, but was timely.[12] The October, 2024 report was filed late on December 19, 2024.[13] The November report was also filed on December 19, 2024, but was timely.[14] The December, 2024 and January, 2025 reports were filed late on February 24, 2025 after the conversion Motion was already pending.[15] After the Court heard the Motion and took it under advisement, Earthsnap, Inc. filed the February, 2025 report late on March 30, 2025.[16] The March, 2025 report, though due, has not been filed. Debtor, Earthsnap, Inc., also amended many of these reports after the hearing.[17]

Debtor, Eric Ralls, filed his voluntary petition in Case No. 24-60504 on

---

[10] Earthsnap, Inc. previously filed Case No. 23-11622-TBM in the U.S. Bankruptcy Court District of Colorado. See EX. 73. That case was dismissed September 8, 2023.

[11] ECF Nos. 42, 43, and 44.

[12] ECF No. 45.

[13] ECF No. 67.

[14] ECF No. 68.

[15] ECF Nos. 99 and 100.

[16] ECF No. 145.

[17] ECF Nos. 135 to 138, 140, 142-144, 147-157.

August 18, 2024, meaning his first monthly operating report should have been filed by September 20, 2024, and subsequent reports on the 20th of each month thereafter. Reports for September, October, and November, 2024 were all filed late on December 28, 2024.[18] The January, 2025 report was also late on March 12, 2025, the week before the hearing.[19] The report for February, 2025 was filed late on April 9, 2025 and inexplicably in the wrong case.[20] The March, 2025 report, though due, has not been filed.

It is clear Debtors have failed to comply in a timely manner with the fundamental monthly reporting requirement applicable to Chapter 11 debtors. Testimony at the hearing did not convince the Court that Debtors have sufficient excuse for these failures. Certainly the Court is sympathetic to the challenges Debtors' counsel has faced, but these failures date from the inception of Debtors' cases.

For example, Debtors failed in the first week of these cases to comply with 11 U.S.C. § 1187(a). Subchapter V small business debtors are required, upon electing Subchapter V treatment, to "file the documents required by

---

[18] Case No. 24-60504, ECF Nos. 36, 37, and 38.

[19] Case No. 24-60504, ECF No. 39.

[20] Case No. 24-60363, ECF No. 165. This report should have been filed in Case No. 24-60504 under the "Order Granting Joint Administration of Bankruptcy Estates" entered October 17, 2024. Case No. 24-60363, ECF No. 50; Case No. 24-60504, ECF No. 21.

subparagraphs (A) and (B) of section 1116(1) of this title." 11 U.S.C. § 1187(a). This requirement that a debtor "shall—(1) append to the voluntary petition or, in an involuntary case, file not later than 7 days after the date of the order for relief—(A) its most recent balance sheet, statement of operations, cash-flow statement, and Federal income tax return; or (B) a statement made under penalty of perjury that no balance sheet, statement of operations, or cash-flow statement has been prepared and no Federal tax return has been filed. . ." 11 U.S.C. § 1116(1). Both Debtors have, quite simply, failed to file these documents.

This failure, and the failures to timely file monthly operating reports, constitutes cause for dismissal or conversion under § 1112(b).

### B.  11 U.S.C. § 1112(b)(4)(B) - Gross Mismanagement of the Estate

Under § 1112(b)(4)(B), gross mismanagement of the estate constitutes cause for dismissal or conversion. Continuing operations as a debtor in possession comes with responsibilities. See *In re Haydel Props., LP*, No. 12-50048, 2013 Bankr. LEXIS 5782, at *11-12 (Bankr. S.D. Miss. Mar. 11, 2013) (citing COLLIER ¶ 1112.04[6][b] (quoting *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007)). These responsibilities include managing the estate in a responsible manner. *Id*. Gross mismanagement is a breach of a debtor in possession's fiduciary duties

to its creditors. *In re Turk. Leg Hut & Co. LLC*, 665 B.R. 129, 140 (Bankr. S.D. Tex. 2024). "Simple mismanagement is insufficient for a finding of gross mismanagement of the estate, but simple misconduct can collectively demonstrate gross mismanagement of the estate." *Id*. The inquiry focuses not on mismanagement of debtor prior to bankruptcy filing, but rather on management of the estate after filing. *In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 Bankr. LEXIS 4132, at *14 (Bankr. N.D. Tex. 2010).

To begin, Debtors have failed to file monthly operating reports, or to comply with § 1187(b). During the hearing, the Court also heard testimony indicating Debtors failed to timely open debtor in possession bank accounts as required by the United States Trustee. Further, for at least some portion of the pendency of his case, Debtor, Eric Ralls, did not have a bank account at all. Rather, the evidence reflects that Debtor, Earthsnap, Inc. or one of Mr. Ralls' other legal entities paid his living expenses directly.

This is of particular concern because, as the Court heard, Mr. Ralls on on August 15, 2024 created a new entity, GreenMind, LLC, to control the flow of money into and out of Debtor, Earthsnap, Inc., and another entity he indirectly owns, Earth.com. Earthsnap, Inc. and Earth.com are both owned by another entity called Digital Earth Media, which in turn is owned by Mr. Ralls and is somehow managed by GreenMind, LLC. Mr. Ralls previously

used another company, Metaversal, for a similar purpose until Movants, Plantsnap and DEJ, obtained judgments against Metaversal and Mr. Ralls on July 31, 2024.[21] The change from Metaversal to Greenmind, LLC occurred while the bankruptcy of Earthsnap, Inc. was already pending.

Debtor, Eric Ralls, filed his bankruptcy case on August 18, 2025, three days after forming Greenmind, LLC. On August 19, 2025, GreenMind, LLC opened a new bank account.[22] The first deposit into that account was from Debtor, Earthsnap, Inc., with similar subsequent wire transfer deposits.[23] The first withdrawal from this new account was a purchase at "TST Home Grow" and the second was for $20.40 to "Ryman Food & B". Subsequent purchases were made at Amazon.com, Walgreens, Kroger, TCVM Pet Supply, and a merchant in Nashville, TN called "The Vinyl Lounge."[24] Purchases in the following months while these bankruptcy cases were pending incude Spotify, 1-800-PETMEDS, Southwest Airlines, GEICO Auto, Hulu, Uber, Doordash, Instacart, Cigna, Mosquito Joe, Clear, and Publix.[25] These merchants, with the possible exception of Amazon.com, have little to do with

---

[21] Ex. 62, 63.

[22] Ex. 68.

[23] *Id.*

[24] *Id.*

[25] *Id.*

the business of Debtor, Earthsnap.com, and instead appear personal to Mr. Ralls. Yet, the statements from this account admitted into evidence do not clearly reflect any deposits from Mr. Ralls.[26]

The allocation of income and expenses between Debtor, Earthsnap, Inc, Mr. Rall's other entities, and Mr. Ralls himself, was not clear from the evidence. What was clear, however, is that money flows back and forth, up and down, between Mr. Ralls and these entities without clear explanation or disclosure. It appears the creation of GreenMind, LLC and the use of its new bank account in this way is specifically designed to avoid compliance with Chapter 11 reporting requirements. In a system premised on transparency, this is unacceptable, and combined with reporting failures, the Court finds gross mismanagement of these Debtors' estates under § 1112(b)(4)(B).

### C. 11 U.S.C. § 1112(b)(4)(E) - Failure to Comply with Court Orders

Cause exists where a debtor in possession fails "to comply with an order of the court." 11 U.S.C. § 1112(b)(4)(E). Movants allege Debtor, Earthsnap, Inc., has failed to comply with two discovery orders. The Court granted PlantSnap and HII's requests for Rule 2004 examinations of Earthsnap, Inc. on September 17 and October 25, 2024.[27] Debtor, Earthsnap, Inc., did not

---

[26] *Id.*

[27] ECF Nos. 36, 54.

respond, resulting in motions to compel filed December 20 and 23, 2024.[28]  It was not until December 26, 2024, that Debtor, EarthSnap, Inc. provided responses discovery responses.[29]  The parties dispute whether these late responses were complete, but do not dispute that they consisted of objections made after the Court has already compelled responses.  The evidence admitted contains no responses made by the deadline set in the original discovery orders.

It is clear that Debtors' have failed to timely comply with this Court's two discovery orders[30] dated September 17 and October 25, 2024.  Further, the evidence presented provided no sufficient excuse for these failures.  The Court finds that cause exists under § 1112(b)(4)(E).

**D.  Inability to Confirm the Plan**

The goal of these Chapter 11 cases is for Debtors to propose and achieve confirmation of a reorganization plan.  To accomplish this goal they must propose a plan which, as required by § 1191, can meet the enumerated requirements of § 1129(a)(1)–(15), excepting subsection (a)(15), if confirmed consensually under § 1191(a), or excepting subsections (a)(8), (10), and (15), if

---

[28] ECF Nos. 72, 73.

[29] Ex. 87, 89, and 93.

[30] ECF Nos. 36, 54.

confirmed non consensually under § 1191(b). A careful review of Debtors' plan as proposed at the time of hearing shows it cannot meet the requirements for confirmation.[31]

Debtors' plan of reorganization was filed, after an extension of the relevant deadline, on January 16, 2024.[32] Debtors' plan appears to be dependent on relief which they have not requested from the Court. Page 3 of the plan states as follows:

> 13. The Debtors combined proposed plan with the related debtor is as follows:
>
> i. Propose with the secured creditors regarding the Allowed Secured Claim as
> defined herein based on a contested motion for claim estimation heard prior to or
> with the hearing on the Confirmation.
>
> ii. Propose a plan where, if the claims estimates described herein are approved, the
> Allowed Secured claim is paid in full, with a plan for similar payment of 100%
> of allowed unsecured claims, assuming the Debtors get approval of the claim
> estimation.

Again on page 11, Debtors reference this concept where they state:

---

[31] After conclusion of the hearing, Debtors filed an amended reorganization plan on April 13, 2025. ECF No. 166. Debtors' filing of an amended plan does not moot the issues raised in the Motion, and the amended plan has not yet been set for confirmation. Moreover, the filing of an amended plan does not cure Debtors' reporting failures, gross mismanagement of the estate, and disregard of discovery orders.

[32] Ex. 14.

-13-

> 28. At the hearing on the estimation of claims, the Debtors seek to prevail on the theory that the Allowed Secured Claim of Plantsnap is capped on its terms of the aforementioned binding term sheet ("Term Sheet") for $2.5 million, payable on its terms over a three year period at 8% interest.

And again on page 12, the plan state as follows:

> Debtors will seek to estimate the Allowed Unsecured Claim at $0, given the value of the 14% interest retained under the Plan by HI.

No claim estimation motions, nor claim objections, have been filed by Debtors regarding any secured claims.

Debtors' plan also makes numerous references to Metaversal, the predecessor of GreenMind, LLC per Mr. Rall's testmony. Page 12 of the plan states that the "sole job of Metaversal Knowledge is to hire and manage contractors to work on the Earth.com website and the EarthSnap app." In following paragraphs the plan describes the role of Metaversal, and the importance of Mr. Ralls, before stating on page 13 in a single sentence that "As a partial solution, Ralls formed Greenmind, LLC to take over the management and payment responsibilities." Absent is any substantive description of the relationship between GreenMind, LLC, Debtor, Earthsnap, Inc., Metaversal, how they are managed, and how income and expenses are apportioned and kept separate. Also absent is any mention of Mr. Ralls' personal expenses being paid by these entities. This inaccuracy exemplifies

Debtors' lack of transparency because, when the plan was filed, significant deposits and withdrawals were running through GreenMind, LLC's bank account outside the purview of reporting received by creditors and the Court.

Another failure of Debtors' plan is its absence of a liquidation analysis. A Subchapter V debtor must include a liquidation analysis with a proposed reorganization plan because no plan may be confirmed unless the debtor can show it meets the requirement of 11 U.S.C. 1129(a)(7) that any impaired non-accepting class of creditors will receive under the plan at least as much as they would receive in a chapter 7 liquidation. Rather than provide a liquidation analysis, Debtors' plan on page 16 says only: "Given the 100% payment, hypothetical liquidation is mooted." Mr. Ralls further testified he was unfamiliar with the projections attached as "Exhibit A" to the plan. These projections are required, and are necessary for the Court and creditors to evaluate whether Debtors' plan is feasible. How could the Court possibly confirm a plan where Debtor, Earthsnap Inc.'s own representative, Mr. Ralls, cannot verify the accuracy of these required projections?

Based on the totality of these findings about Debtors' inability to confirm their proposed plan, cause exists for conversion or dismissal under 11 U.S.C. § 1112(b).

### E. Debtors' Exception Burden Under 11 U.S.C. § 1112(b)(2)

Because Movants have carried their burden to establish cause to dismiss or convert, the burden now shifts to Debtors to establish an exception, if any, under § 1112(b)(2). Debtors must first establish that "unusual circumstances" exist which warrant the Court declining to dismiss or convert despite the existence of cause to do so. This Court understands § 1112(b)(2) to require Debtors to establish "unusual circumstances" first before the Court need consider the additional requirements of §§ 1112(b)(2)(A) and (b)(2)(B). "Unusual circumstances" is not a defined term, but "other courts have found that 'unusual circumstances' involve 'conditions that are not common in most chapter 11 cases.'" *In re Express Grain Terminals*, LLC, No. 21-11832-SDM, 2022 WL 1051097, at *9 (Bankr. N.D. Miss. Apr. 7, 2022), citing *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148 (Bankr. D.N.M. 2008) ("[t]he code does not define 'unusual circumstances' within the meaning of 11 U.S.C. § 1112(b)), and *In re Korn*, 523 B.R. at 468 ("[C]ourts focus on the likely consequences of remaining in chapter 11 or converting the case to chapter 7 and consider what the likely differences would be in the end result under each chapter ... if the likely outcome for creditors will be vastly superior under chapter 11, courts may find unusual circumstances under § 1112(b)(2).").

Under the evidence presented in these cases, Debtors have failed to

-16-

carry their burden to establish unusual circumstances. The Court has stated before, and will do so again here, that it is sympathetic to Debtors' counsel's challenges. Yet, Debtors' reporting failures date from the very beginning of these cases. Debtors other failures were not cured prior to the hearing despite ample time to do so. Debtors' plan proposed prior to the hearing does not meet the requirements for confirmation, even after Debtors' were permitted an extension of time in which to file a plan. These are not unique failures, and it is far from clear that creditors' outcome would be any better were these cases to continue under chapter 11. The Court will not excuse Debtors under the evidence and testimony admitted from compliance with the requirements of being in a Chapter 11, and finds no unusual circumstances under § 1112(b)(2) exist.

    **F. Conversion or Dismissal**

    The Court last considers whether conversion or dismissal is in the best interest of the creditors and estate. "Best interests of creditors and the estate" is not defined in the Bankruptcy Code, but it ". . . includes protecting the bankruptcy process under which the estate is administered . . ." *In re Fleetstar LLC*, 614 B.R. 767, 787 (Bankr. E.D. La. 2020), citing *In re Capra*, 614 B.R. 291, 299 (Bankr. N.D. Ill. 2020). The term is not defined because "[t]here is no bright-line test to determine whether conversion or dismissal is

in the best interest of creditors and the estate." *In re Bayaboff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011). Instead, courts look to factors to consider how "creditors fare inside, as opposed to outside, bankruptcy." *In re Fleetstar LLC*, 614 B.R. at 782; see also *In re Babayoff*, 445 B.R. at 82. Here, the Court finds conversion is in the best interests of creditors based upon those factors, as considered under the evidence admitted.[33] Debtors, as well as Earth.com, have previously filed chapter 11 in another jurisdiction.[34] See *In re Ralls*, Case No. 23-11620-TBM (Bankr. D. Colo. Apr. 19, 2023), *In re Earth.com, Inc.*, Case No. 23-11621-TBM (Bankr. D. Colo. Apr. 19, 2023), and *In re EarthSnap, Inc.*, Case No. 23-11622 (Bankr. D. Colo. Apr. 19, 2023). These prior cases did not result in sucessful confirmation of reorganization plans benefitting creditors.[35] It is entirely plausible that Debtors would, if these cases are dismissed, repeat the bankruptcy process a third time in yet another jurisdiction.

A chapter 7 trustee is best placed to investigate who owns what, how money flows or should flow, and to gain control of funds and their movement

---

[33] The Court does not consider appointment of a trustee under 11 U.S.C. § 1104(a) because the appointment of such a trustee is not permitted in a case filed under Subchapter V of Chapter 11. See 11 U.S.C. § 1181(a) ("Sections . . . 1104 . . . of this title do not apply in a case under this subchapter.").

[34] Ex. 65, 66, 71, and 73.

[35] *Id.*

between debtors and other entities.  In the event of dismissal, these flows would undoubtedly continue, with no controls, transparency, or likely benefit for anyone except Mr. Ralls.  A trustee would also be best placed to objectively identify what rights, if any, these estates have to the various legal entities owned or controlled by Mr. Ralls.  Only with transparency and observance of fiduciary duty to creditors can it be determined whether these estates have any value to be preserved or liquidated for benefit of all creditors.

Though Mr. Ralls testified that conversion would result in the destruction of significant value by way of disruption to Earth.com's operations, the Court finds little credibility to this assertion.  Rather, it will be incumbent upon a trustee, acting as a fiduciary for the estates and in the bests interests of creditors, to decide the best course of action to administer whatever there may be to administer.  Due to lack of transparency, the Court will not guess at what this outcome may look like for any particular asset or entity.

Accordingly, based upon the Court's consideration of the pleadings, the evidence admitted in the hearing, and the argument of counsel, and pursuant to Fed. R. Civ. P. 52, which is incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014, the Court finds that good cause exists for the entry of the following order.

**IT IS THEREFORE ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that both of the above cases are hereby **CONVERTED** to cases under Chapter 7.

**IT IS FURTHER ORDERED** that, **on or before May 5, 2025,** each of the Debtors shall file, separately in their respective cases, all required schedules and reports, including the schedule of unpaid debts and schedule of property acquired since confirmation, as required by Fed. R. Bankr. P. 1019(5)(A)**.**

Signed on 4/21/2025

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE