IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 24-60504 |
| | ) | |
| ERIC RALLS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

**PLANTSNAP INC.'S REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO EXERCISE VOTING
AND OTHER RIGHTS WITH RESPECT TO THE DEM SHARES AND FOR RELATED
RELIEF**

PlantSnap Inc. ("**PlantSnap**"), by and through undersigned counsel, submits this reply in support of its *Motion for Relief from the Automatic Stay to Exercise Voting and Other Rights with Respect to the DEM Shares and for Related Relief* [Docket No. 80] (the "**Motion**"),[1] and states as follows:

**I.      Ralls Lacks Standing to Oppose the Motion.**

Ralls cannot oppose the Motion for lack of standing. PlantSnap seeks stay relief under section 362(d)(1) for lack of adequate protection. *See* Mot. ¶ 45. "When a creditor seeks relief from stay due to a lack of adequate protection or a lack of equity in property, the central issue involves a relationship . . . between the creditor, its collateral, and the bankruptcy estate, which is administered by the trustee . . . ." *In re Moore*, 450 B.R. 849, 852 (Bankr. N.D. Ind. 2011). "[I]t does not involve the circumstances existing between the debtor and the moving creditor." *Id.* Accordingly, Ralls lacks standing to oppose the Motion. *See id.* at 851–52; *see also Bank of Am., N.A. v. Bertka (In re Bertka)*, No. 09-13893-SSM, 2010 Bankr. LEXIS 2219, at *3–4 (Bankr. E.D. Va. July 12, 2010) ("The trustee . . . is the representative of the estate, and normally a debtor does

---

[1] Capitalized terms not defined herein shall have their same meaning as set forth in the Motion.

not have standing to oppose relief from the stay with respect to the estate's interest in the property." (citations omitted)).

## II. Even If Ralls Had Standing, Which PlantSnap Does Not Concede, His Objection Lacks Merit.

### A. PlantSnap Has a Secured Interest in the DEM Shares.

PlantSnap has a perfected security interest in the DEM Shares. A security interest attaches when the following three elements are satisfied: (1) value is given; (2) the debtor has rights in the collateral; and (3) the debtor signs a security agreement that provides a description of the collateral. *See* C.R.S. § 4-9-203; *see also* Ralls Obj. ¶ 7. Here, PlantSnap's security interest **attached** to the DEM Shares. First, Ralls agreed to pay $2.5 million and secure such obligation with the DEM Shares in exchange for PlantSnap dismissing the State Court Action. *See* Mot. Ex. 2, ¶¶ 3, 16. Second, Ralls has rights in the DEM Shares. *See id.* Ex. 2, ¶ 3(A), (B); *see also* Docket No. 14 at 5 (scheduling the DEM Shares as an estate asset). Third, Ralls signed the Binding Term Sheet, which is a security agreement, and which identifies the DEM Shares. *See generally id.* Ex. 2. PlantSnap **perfected** its security interest in the DEM Shares by filing the UCC-1 financing statements. *See id.* ¶ 19.

Ralls claims that, under the Binding Term Sheet, a security interest could only be created when Ralls executed a secured promissory note. Ralls Obj. ¶¶ 5, 9. According to Ralls, because Ralls refused to execute the note, PlantSnap cannot satisfy the third requirement for attachment of a security interest: "The debtor has signed a security agreement that provides a description of the collateral." *See id.*; C.R.S. § 4-9-203(b)(3)(A); *see also see* Ralls Obj. ¶ 7. Stated differently, the Binding Term Sheet only "contemplates a security agreement"; it does not create the security agreement itself. *See* Ralls Obj. ¶ 9.

Ralls can only reach this conclusion by ignoring the plain terms of the Binding Term Sheet and established Colorado law. Under the Binding Term Sheet, Ralls agreed to "execute and deliver to PlantSnap a $2.5 million dollar Secured Promissory Note . . . , ***subject to the following terms*** . . . : The Note shall be secured by all of Ralls' founder's shares in the Entities," i.e., the DEM Shares. Ex. 2, ¶ 3(A) (emphasis added). Although the parties anticipated Ralls executing a secured note, the absence of such note is irrelevant, because the parties agreed to the following provision: "The Parties will work together to draft definitive settlement documents, ***but the terms outlined herein are enforceable and binding upon execution***." *Id.* ¶ 15 (emphasis added). Ralls can only reach its conclusion by ignoring paragraph 15 of the Binding Term Sheet.

Furthermore, under established Colorado law, the Binding Term Sheet is a valid and enforceable document. *See McCarthy v. Kent*, No. 23CA1907, 2024 Colo. App. LEXIS 1862, at *5–6 (Colo. App. Sept. 12, 2024) ("The fact that the parties indicated in a filing with the court that they planned to 'finaliz[e] the settlement documents' doesn't mean that the MOU was not, at the time of its execution, intended to be valid and binding." (citations omitted). Notably, and like the case at hand, the agreement in *McCarthy* which was a "binding contract" was secured by property, in that case, real property. *See id.* at *11; *see also* Proof of Claim No. 6-1 pt. 2, ¶¶ 6–9 (citing cases).

Contrary to Ralls' claims, the Binding Term Sheet is the security agreement that granted PlantSnap a security interest in the DEM Shares. A "security agreement" is simply "an agreement that creates or provides for a security interest." C.R.S. § 4-9-102(a)(76). A security agreement need not contain any "magic words":

> In determining whether a security interest has been created, courts may not only look at the words in the instrument, but also at the intent of the parties. *In re Amex-Protein Dev. Corp.*, 504 F.2d at 1059 ("While there are no magic words which create a security interest[,] there must be language in the instrument which []leads

3

to the logical conclusion that it was the intention of the parties that a security interest be created.[]"); *see also* 3 Cathy Stricklin Krendl & James R. Krendl, *Colorado Methods of Practice* § 90:2 (5th ed. 2013) ("***If the intent was to protect one party against the nonperformance of an obligation by the other through the creation of an interest in personal property or fixtures, then a security interest was created***.").

*Wheeler v. Tower Building, LLC (In re Estate of Wheeler)*, 410 P.3d 483, 486 (Colo. App. 2013) (emphasis added).

Here, the Binding Term Sheet, itself, makes clear that Ralls' obligations under the Binding Term Sheet were secured by the DEM Shares. Again, Ralls agreed that the DEM Shares secured his obligations under the Binding Term Sheet. *See* Mot. Ex. 2, ¶¶ 3(A); *see also* C.R.S. § 4-9-203(b)(3)(A) (requiring debtor to sign security agreement that identifies collateral). The Binding Term Sheet defines the DEM Shares as the "Pledged Shares." *See id.* ¶¶ 3(A), (B), (D), (E), (G). The Binding Term Sheet even references Article 9 of the Uniform Commercial Code, which governs the creation of security interests in personal property. *See id.* ¶ 3(D).

Furthermore, Ralls clearly intended to secure his obligations under the Binding Term Sheet with the DEM Shares. PlantSnap did not unilaterally file a UCC-1 financing statement; "Ralls authorize[d] PlantSnap to file a UCC-1 financing statement." *Id.* ¶ 3(C). Notably, Ralls performed under the very section of the Binding Term Sheet he now seeks to invalidate; Ralls made a payment to PlantSnap under the note which he did not execute. *See* Mot. ¶ 20, Ex. 4 at 1; Ralls Obj. ¶ 5 (stating the subsections of paragraph 3 of the Binding Term Sheet are contingent on the creation of a secured promissory note). Moreover, while Ralls was a debtor in possession, he never once raised this issue, let alone filed an adversary proceeding to determine the extent of PlantSnap's lien in the DEM Shares. *See* Docket; Fed. R. Bankr. P. 7001(2).

4

Ralls, without any evidence or support, claims PlantSnap provided "misrepresentations" and "false allegations" to the Court.[2] *See* Ralls Obj. ¶¶ 2, 4. PlantSnap denies that it made any misrepresentation or false allegation to the Court. PlantSnap has a secured interest in the DEM Shares.

**B.    The Remainder of Ralls' Objection Amounts to a General Objection, Which the Court Can Summarily Reject.**

Pursuant to LBR 4001-1(a), the Motion contained the following provision: "**If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**" Mot. 1 (emphasis in original). Having rejected Ralls' claim that PlantSnap does not have a security interest in the DEM Shares, *see supra* section II.A, the objection amounts to one sentence: "Debtor denies generally the assertions in Movant's Motion." Ralls' Obj. ¶ 1. This objection is wholly deficient, because Ralls fails to "**explain[] the factual and/or legal basis for opposing the relief**." Mot. 1 (emphasis in original); *see also* LBR 4001-1(a). Accordingly, the Court can overrule the remainder of Ralls' objection. *See id.*; *cf. In re Hight*, 393 B.R. 484, 496 (Bankr. S.D. Tex. 2008) ("A general objection without specific reference to a proper ground may be an insufficient objection and is subject to a motion to dismiss at, or prior to, a hearing." (citation omitted)).

---

[2] As alluded to by Ralls, Ralls' counsel raised the alleged misrepresentations by email to PlantSnap's counsel on July 30, 2025. *See* Ralls Obj. ¶ 10. That same day, PlantSnap's counsel responded to counsel's email by providing factual and legal citations supporting PlantSnap's position. Bankruptcy Rule 9011 is intended to curb abuse, not to chill proper advocacy. Ralls' counsel may disagree with PlantSnap's position, but that does not entitle counsel to use Bankruptcy Rule 9011 as a broadsword to be swung blindly at opposing counsel with whom he may disagree. As set forth herein, and as provided to Ralls' counsel prior to him filing the objection, PlantSnap's allegations have evidentiary support and its legal contentions are warranted by existing law. *See generally* Reply; Ralls Obj. ¶ 10; Fed. R. Bankr. P. 9011(b)(2), (3). PlantSnap reserves all rights with respect to Ralls' claims of misrepresentations and for sanctions. *See* Ralls Obj. ¶¶ 2, 4; *Foy v. First Nat'l Bank of Elkhart*, 868 F.2d 251, 258 (7th Cir. 1989) ("A frivolous request for sanctions is itself sanctionable." (citations omitted)); *Fansteel, Inc. v. Int'l Assoc. of Machinists & Aerospace Workers, Lodge No. 1777*, 708 F. Supp. 891, 900 (N.D. Ill. 1989) ("[An] ill-considered Rule 11 motion—symptomatic of the infectious sanctions-seeking disease that threatens to reach epidemic proportions in the legal profession—is itself suspect." (citation omitted)).

**III.    The Trustee Has Failed to Establish Cause for the Court to Defer Ruling on the Motion, but PlantSnap Does Not Oppose Allowing the Trustee to Seek Reconsideration of the Motion at a Later Date.**

At this time, the Trustee does not take a position on the Motion and cannot do so "[u]ntil the Trustee is able to obtain and review additional information [from Ralls], including the opportunity to examine the Debtor." Trustee's Limited Obj. ¶¶ 1, 5; *see id.* ¶¶ 3–4. However, under section 362(e)(2), the automatic stay terminates on September 16, 2025 unless the Court reaches a final decision prior to that date or such period is extended by "the court for such specific period of time as the court finds is required for good cause." Here, the Trustee cannot establish cause exists to extend the sixty-day period.

The very person from whom the Trustee is seeking information to respond to the Motion—Ralls—has already provided the basis for establishing cause under section 362(d)(1). Ralls has testified under oath on numerous occasions in these bankruptcy cases, including two times in which the Trustee led the questioning of Ralls. *See* Mot. Exs. 8–12 (showing Ralls testified five times during these bankruptcy cases). Between Ralls' own testimony and the report he commissioned to oppose conversion,[3] PlantSnap has demonstrated that Ralls has transferred, at least, between $800,000 and $1.1 million out of the enterprise for his own benefit. *See id.* ¶¶ 45–54. Although PlantSnap welcomes the Trustee's continued investigation of Ralls, Ralls has already established causes exists to grant stay relief.

Additionally, the Trustee has had ample time to obtain the requested information and testimony. Beginning on June 20, 2024, the Trustee served as the subchapter V trustee of the estates of EarthSnap and Ralls. *See* Docket No. 8; EarthSnap Case, Docket No. 4. The Trustee was active

---

[3] Notably, the Trustee relies on this report to establish bid procedures to sell the DEM Shares. *See* Docket No. 51, ¶ 10.

6

in those cases, even participating at the hearing on conversion, which resulted in the Court converting the cases for gross mismanagement, amongst other things. *See* EarthSnap Case, Docket No. 167. Based on her experience as subchapter V trustee in these cases, the Trustee was appointed as the chapter 7 trustee on April 30, 2025. *See* Docket No. 45; EarthSnap Case, Docket No. 174. Despite requesting a "reasonable opportunity to completed her investigation," the Trustee has not identified what information she needs or how long she needs to obtain such information. *See* Trustee's Limited Obj. ¶ 6; *see generally id.* And there appears no urgency to obtain the information, as the Trustee's examination was twice cancelled, and the examination has yet to be rescheduled in the past two weeks. *See id.* ¶ 3 (stating examination cancelled on July 21, 2025). The fact remains that PlantSnap's collateral is losing value every day that Ralls remains in control of the Enterprise, and the Trustee has failed to establish cause exists to extend the sixty-day period under section 362(e)(2). *See id.*

Nevertheless, PlantSnap is willing to accommodate the Trustee's request that "any order entered with respect to the Motion be expressly without prejudice to the Trustee's rights to seek further relief as appropriate after additional information is obtained." Trustee's Limited Opp'n ¶ 6. PlantSnap suggests amending the proposed order to include the following provision:

> IT IS FURTHER ORDERED that nothing in this Order prejudices the Trustee's right to seek relief from this Order after the Trustee obtains additional information from the Debtor.

PlantSnap believes this additional paragraph adequately addresses the Trustee's limited objection and provides the Trustee the opportunity to obtain the requested information and testimony.

7

                                                Respectfully submitted,

Dated: August 4, 2025                     */s/ Patrick R. Akers*
                                                Patrick R. Akers (CO 54803)
                                                Markus Williams Young & Hunsicker LLC
                                                1775 Sherman Street, Suite 1950
                                                Denver, Colorado 80203
                                                (303) 830-0800
                                                (303) 830-0809 (facsimile)
                                                pakers@markuswilliams.com

                                                Dean E. Richardson (CO 35349)
                                                Gould & Ratner LLP
                                                1801 Wewatta Street, 11th Floor
                                                Denver, Colorado 80202
                                                (303) 284-1062
                                                (312) 236-3241 (facsimile)
                                                drichardson@gouldratner.com

                                                *Counsel for PlantSnap*

**CERTIFICATE OF SERVICE**

I certify that on August 4, 2025, I served a complete copy of *PlantSnap Inc.'s Reply in Support of Motion for Relief from the Automatic Stay to Exercise Voting and Other Rights with Respect to the DEM Shares and for Related Relief* on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- Areya Holder Aurzada, via CM/ECF
- John P. Stanford, via CM/ECF
- Joyce C. Lindauer, via CM/ECF
- Pete Thomas, via CM/ECF
- Russell W. Mills, via CM/ECF
- Amalia Y. Sax-Bolder, via CM/ECF
- Gregory W. Mitchell, via CM/ECF
- Marcus Salitore, via CM/ECF

/s/ Patrick R. Akers
Patrick R. Akers (CO 54803)

*Counsel for PlantSnap*