Gregory W. Mitchell
THE MITCHELL LAW FIRM, L.P.
1100 W. Campbell, Suite 200
Richardson, TX  75080
(972)463-8417 – Office
(972)432-7540 – Facsimile
State Bar ID:  00791285
COUNSEL FOR DEBTOR

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-60504 |
| | § | |
| **Eric Ralls** | § | |
| | § | Chapter 7 (converted from |
| *Debtor* | § | chapter 11) |

## DEBTOR'S PRE-HEARING BRIEF

Debtor Eric Ralls ("**Debtor**") files this *Debtor's Pre-Hearing Brief* (the "**Brief**") in advance of a hearing on *Plantsnap Inc.'s Motion for Relief from the Automatic Stay to Exercise Voting and Other Rights with Respect to the DEM Shares and for Related Relief* ("**Motion**") filed by Plantsnap, Inc. ("**Plantsnap**" or "**Movant**") currently scheduled for Tuesday, September 9, 2025, in order to address legal issues that Debtor expects the Court to face.  In support, Debtor states as follows:

1. Movant filed its Motion on July 18, 2025.  *See* Dkt. No. 80.  In its Motion, Movant alleges that it has certain voting rights as to shares of Digital Earth Media ("**DEM**") as a result of a security interest it purportedly obtained in the DEM shares emanating from a "Binding Term Sheet" (the "**Binding Term Sheet**") (as described therein).

2. On August 1, 2025, Debtor filed *Debtor's Objection to Motion for Relief from Automatic Stay* (the "**Objection**") raising numerous objections to Movant's representations in the Motion regarding the existence of a security interest.

3. On August 4, 2025, Movant filed *Plantsnap Inc.'s Reply in Support of Motion for Relief form the Automatic Stay to Exercise Voting and Other Rights with Respect to the DEM Shares and for Related Relief* (the "**Reply**") in response to the Objection. In addition to addressing certain points raised in the Objection, the Reply alleges for the first time that the Debtor does not have standing to object to the Motion based on the fact that this case is in the posture of a Chapter 7 bankruptcy case, and therefore only the Trustee can object.

4. This Brief will address the issues raised by the Motion, the Objection, and the Reply. It will also address comments made by the Court at the preliminary hearing on this matter – including specific caselaw cited by the Court. Specifically, this Brief will address:

(1) The standing of the Debtor to object to the Motion;

(2) Colorado law regarding the requirements of obtaining a security interest in stock; and

(3) The lack of any security agreement that could establish a security interest in favor of Movant even if Movant satisfied the specific requirements of obtaining a security interest in stock (which it does not).

## I.    Standing

5. Movant argues that the Debtor lacks standing to object to the Motion based on his status as a chapter 7 debtor.

6. It is generally true that chapter 7 debtors do not have standing to object to claims or orders relating to them because these debtors typically lack any pecuniary interest in the trustee's disposition of property of the estate, since title to such property no longer resides in the debtor. *See, e.g., Schiano v. Salkin*, 2019 WL 3997129, at *4 (S.D. Fla. 2019).

7. However, a well-settled exception to this principle exists where there is a possible pecuniary impact on the debtor. *See, e.g., In re Vosotas*, 666 B.R. 684, 690 (Bankr. S.D. Fla., 2025).

8. In *Vosotas*, that pecuniary impact was found to exist where a settlement agreement – with respect to which the debtor therein sought to object – adversely impacted the debtor's defenses in a non-dischargeability action.

9. Other cases have found that a debtor is an interested party where the debtor's estate is solvent and there is a likelihood of a surplus distribution to the debtor. *See, e.g., In re Ebel*, 338 B.R. 862, 874 (Bankr. D. Colorado, 2005).

10. In this case, the Debtor's estate holds 84% of the stock of DEM, which in turn owns 100% of Earth.com, Inc. – a company which very recently was valued at almost $18 million.

11. Debtor's bankruptcy schedules reflect total liabilities in the amount of $5,306,940.50.

**Part 2: Summarize Your Liabilities**

| | Your liabilities<br>Amount you owe |
|---|---|
| 2. Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D*....... | $27,500.00 |
| 3. Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 106E/F)<br>3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*.................................. | $0.00 |
| 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*.............................. | + $5,279,440.50 |
| Your total liabilities | $5,306,940.50 |

12. Debtor therefore establishes the existence of a likely surplus distribution and therefore has standing to object.

## II.    Security Interest in Stock Requires Possession of Stock

13. Pursuant to Colorado Statute, C.R.S. 4-9-313(a), in order to perfect a security interest in certificated securities, a secured party must take delivery of the certificated securities. *See also Moreland v. Alpert*, 124 P.3d 896 (Col. Court of Appeals, Div. V, 2005); *Securities Investor Protection Corp. v. First Entertainment Holding Corp.*, 36 P.3d 175 (Col. Court of Appeals, Div. I, 2001).

14. Debtor's equity interest in DEM is security. *See* C.R.S. 4-8-103(a).

15. Pursuant to C.R.S. 4-8-102(4), a "Certificated Security" is a security that is represented by a certificate.

16. Delivery of a certificated security occurs when a party acquires physical possession of the security certificate. *See* C.R.S. 4-8-301(a)(1).

17. Applied to the case at bar, it is undisputed that Movant never took physical possession of Debtor's DEM stock certificates.

18. Therefore, Movant has no perfected interest in the DEM shares.

19. At the preliminary hearing on this matter, the Court cited the parties to *Great Plains National Bank, N.A. v. Mount*, 280 P.3d 670 (Col. Court of Appeals, Div. VI, 2012), which analyzed a security interest in cattle (not certificated securities). That case focused on a provision of the Food Security Act of 1985 (FSA) that looked at where cattle were "produced in" for purposes of determining whether an out of state purchaser took cattle subject to a security interest created in Oklahoma. It was undisputed in that case that security interests were granted; the issue was whether or not the buyer could take the cattle free of the security interest pursuant to the FSA. Therefore, Debtor asserts that *Great Plains* has limited applicability to the case at bar.

20. This Court also referenced *In re Estate of Wheeler*, 410 P.3d 483 (Col. Court of Appeals, Div. I, 2013) at the preliminary hearing on this matter. In that case, a Colorado court found that a lease agreement reasonably identified secured collateral as all of tenant's personal property at tenant's jewelry store, and therefore the lease created an enforceable security interest. Critically, once again this case does not deal with certificated securities, which by statute – C.R.S. 4-9-313(a) – require physical possession on the part of a secured party in order for there to be a perfected security interest. Additionally, there was no dispute in that case that the tenant granted the lien on its personal property. Therefore, the lease itself was the security agreement. Here, the Binding Term Sheet made specific reference to a subsequent secured promissory note (an "agreement to agree") that was never executed.

Analogous facts would have been if the lease contemplated the subsequent negotiation and execution of a security agreement pursuant to which the landlord would take a security interest in tenant's property, but that is not what occurred. Therefore, Debtor once again respectfully suggests that *In re Estate of Wheeler* is not controlling in the case at bar.

### III.    No Security Agreement with Respect to the DEM Shares Exists

21.    Even if a security agreement was sufficient to establish Movant's security interest in the DEM shares (it is not), no security agreement with respect to the DEM Shares was ever executed.

22.    Debtor entered into separate "Binding Term Sheets" with Plantsnap and with DEJ Partners ("**DEJP**"). While there were materially different terms in each agreement, both contemplated the subsequent execution of multiple documents, including:

(1)    a formal settlement agreement;
(2)    a security agreement; and
(3)    a secured promissory note.

23.    The drafts of these agreements that were circulated contained new material terms that the parties had not discussed and did not reach agreement on. Communication between/among the parties reveals that ongoing discussions and negotiations occurred over several months and that no formal agreements were ever reached, and no documents were ever executed prior to the Debtor's bankruptcy filing.

24.    The negotiations reveal a classic "agreement to agree" that never materialized. Query how a so-called "binding" term sheet could be truly binding if documents required by the Binding Term Sheet to be executed were not actually executed. Although it is unnecessary for the Court to reach this conclusion for purposes of the Motion, it is clear that the so-called Binding Term Sheets were just that – agreements to agree that required further negotiations and agreements that never materialized.

25. "There can be no binding contract if it appears that further negotiations are required to work out important and essential terms." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Col. Court of Appeals, Div. IV, 2001); *Griffin v. Griffin*, 699 P.2d 407 (Colo. 1985) (Agreements to agree in the future are generally unenforceable because the court cannot force parties to come to an agreement).

26. Additionally, both Binding Terms Sheets contemplated an "Intercreditor Agreement" designed to "to ensure that the Ralls Entities do not have conflicting duties to DEJP and Plantsnap." This was an important concern for the Debtor, and unlike the other agreements referenced above, there was not even a draft of an Intercreditor Agreement that was circulated. Therefore, a substantial material agreement affecting the Debtor's rights had not yet been drafted.

27. In any event, at the very least it is clear that the contemplated security agreement referenced in the Binding Term Sheets was never executed. Once again, email communication between/among the parties reveals an ongoing back and forth negotiation regarding material terms.

28. Additional disputes reflected in the communications among the parties include:

   (1) Failure to identify an escrow agent;

   (2) Failure to reach a fee-splitting agreement with respect to fees of the escrow agent;

   (3) Failure to reach agreement on a cure period prior to release of shares.

29. To the extent that it could remain unclear, the Movant itself – in a court status report filing – corroborates the incomplete nature of the negotiations. In mid-May, 2024, counsel for Movant filed a status report with the Colorado court that referenced multiple open issues (including "nine points"). Subsequently, in an *Order Following Status Conference*, the Colorado Court adopted the status of the case as follows: "The parties are still working to execute the terms of a binding settlement agreement between them":

```
DISTRICT COURT, SAN MIGUEL COUNTY, COLORADO
Court Address:
305 W. COLORADO, P.O. BOX 919, TELLURIDE, CO, 81435
Plaintiff(s) PLANTSNAP INC
v.
Defendant(s) ERIC RALLS et al.

DATE FILED
June 27, 2024 9:22 AM
CASE NUMBER: 2021CV30005

⚠ COURT USE ONLY ⚠
Case Number: 2021CV30005
Division: 3        Courtroom:
```

**ORDER FOLLOWING STATUS CONFERENCE**

This matter came on for a status conference. Mr. Richardson appeared for PlantSnap; Mr Thomas for DEJ; Mr. Kitsmiller for the corporate entities; and Mr. Melito for Mr. Ralls.

The Court and counsel discussed the case status. The parties are still working to execute the terms of a binding settlement agreement between them. One major outstanding issue includes the placement of Mr. Ralls' shares into escrow, which has been prolonged.

The Court requests further status within 30 days.

Issue Date: 6/27/2024

*[signature]*

KERI ANN YODER
District Court Judge

30. While it is true that the Debtor made two months of payments consistent with the Binding Term Sheets, those payments merely reflect efforts to keep negotiations alive. While consistent with a binding framework on some points, substantial communications illustrate that the parties had not reached consensus on material terms.

31. Movant asks this Court to deem the Binding Term Sheet as the security agreement, but to do so would be asking this Court to impermissibly rewrite the Binding Term Sheet. "Courts possess no authority to rewrite contracts and must enforce unambiguous contracts in accordance with their terms." *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748 (Col. 1978, en banc).

32. Here, the Binding Term Sheet unambiguously required the subsequent negotiation and execution of a secured promissory note, as well as the other agreements noted above. Movant is asking this Court to ignore those provisions, rewrite the Binding Term Sheet, and impose a security agreement that the parties themselves had been unable to negotiate. Doing so would compel a party

to fulfill duties for which they did not contract. Once again, the analysis comes back to the Binding Term Sheet being nothing more than an agreement to agree.

### IV.    Summary

33. The bottom line is that, no matter what conclusion this Court reaches regarding the ongoing validity of the Binding Term Sheets, Movant did not have a security interest in Debtor's DEM stock.

34. Movant was not and never has been in possession of Debtor's stock certificates and therefore never perfected a security interest. And at a more basic level, no security agreement was ever reached. Filing a UCC-1 alone does not perfect a security interest in certificated stock, and it does not create a security interest where no security agreement exists.

35. The relief sought in Movant's Motion hinges on the existence of a security interest that Movant does not have. Therefore, the relief sought must be denied.

WHEREFORE, Debtor urges the Court to make findings and conclusions consistent with the analysis herein and ultimately deny the relief sought by Movant in its Motion.

**DATED this 7th day of September, 2025.**

Respectfully submitted,

**THE MITCHELL LAW FIRM, L.P.**

1100 W. Campbell Road, Suite 200
Richardson, Texas 75080
(972) 463-8417 – Office
(972) 432-7540 – Facsimile
greg@mitchellps.com – E-mail

By:   **/s/ Gregory W. Mitchell**
     GREGORY W. MITCHELL
     State Bar No. 00791285

ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

  I hereby certify that on this **7th day of September, 2025**, a copy of the foregoing was served on all counsel receiving notice via the Court's ECF system.

                **/s/ Gregory W. Mitchell**
                Gregory W. Mitchell
                Attorney for Debtor