IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 24-60504 |
| | ) | |
| ERIC RALLS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

**PLANTSNAP INC.'S RESPONSE IN OPPOSITION TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 6 FILED BY PLANTSNAP INC.**

**I.    Introduction.**

Eric Ralls ("**Ralls**") has done everything in his power to remain in control of his business enterprise during these bankruptcy cases. He fought conversion, fought PlantSnap Inc. ("**PlantSnap**") from exercising its contractual rights to vote the DEM Shares (as defined below), and has indicated he will fight the Trustee to prevent the sale of the DEM Shares (likely with the hope that the district court will reverse the Court's conversion order prior to any sale). As a result, Ralls has successfully "borrowed" between $800,000 and $1.1 million as a debtor in bankruptcy.[1]

Now, in an effort to "cut the head off the snake," Ralls is going on the offense, challenging not just PlantSnap's secured interest in the DEM Shares, but the entirety of its claim. Ralls does so with no facts or legal authority, presumably because the facts and law lead to but one conclusion: PlantSnap has a claim against the estate in the amount of, at least, $3,434,927.85, of which a portion is secured by the DEM Shares.

Ralls claims the Binding Term Sheet (as defined below), which granted PlantSnap a security interest in the DEM Shares, is an "Agreement to Agree." Not only is this contrary to his

---

[1] Docket No. 80, ¶¶ 29–35, 47–54.

prior testimony and positions in these bankruptcy cases, but he can only reach this conclusion by ignoring the plain terms of the Binding Term Sheet, including paragraph 15, which makes clear that "[t]he Parties will work together to draft definitive settlement documents, ***but the terms outlined herein are enforceable and binding upon execution***." Obj. ¶ 3; Ex. 1, ¶ 15 (emphasis added). Looking solely within the four corners of the Binding Term Sheet, it is clear and unambiguous that the Binding Term Sheet is a valid contract and security agreement. Furthermore, PlantSnap perfected its security interest in the DEM Shares by filing a UCC-1 financing statement, which is expressly provided for under article 9 of the Uniform Commercial Code. The Court should reject Ralls' unsupported arguments, hold him to the benefit of the bargain, and overrule the Objection.

## II.     Ralls Lacks Standing to Object to the Claim.

As an initial matter, Ralls lacks standing to object to the Claim. "[A] [chapter 7] debtor generally cannot object to claims." *Okorie v. Citizens Bank (In re Okorie)*, No. 24-60255, 2024 U.S. Dist. LEXIS 25700, at *3–4 (5th Cir. 2024). An exception to this rule exists where "there exists a possibility that there will be a surplus after payment of claims." *Khan v. Xenon Health, L.L.C. (In re Xenon Anesthesia of Tex., P.L.L.C.)*, 698 F. App'x 793, 794 (5th Cir. 2017).

Here, there is no possibility that there will be a surplus after payment of claims. There is currently $7,634,593.34 in claim asserted against the estate. *See* Claims Register. Any sale of the DEM Shares will realize less than this amount. Even then, the value of the DEM Shares turns solely on the value of Earth.com, Inc. ("**Earth**"), which is balance sheet insolvent, and whose ability to generate income relies on its continued ability to "squat" on the Earth.com domain. *See* Docket No. 80, ¶ 51 n.10; Ex. 1, ¶ 6

**III.     PlantSnap Consents to Resolving the Lien Issue in a Contested Matter.**

Ralls challenges both the amount of the Claim and the extent of PlantSnap's interest in the DEM Shares, the latter of which must be resolved in an adversary proceeding. *See* Obj. ¶¶ 1–3; Fed. R. Bankr. P. 7001(2). However, PlantSnap consents to resolve both of these issues in a contested matter. *See Critical Point Advisors, LLC v. Columbia State Bank (In re Gray Land & Livestock, LLC)*, Ch. 11 Case No. 19-00467-FPC11, Adv. No. 22-80021, 2022 Bankr. LEXIS 3187, at *15–16 (Bankr. E.D. Wash. Nov. 10, 2022) ("Absent consent from all interested parties, Federal Rule of Bankruptcy Procedure 7001(2) requires an adversary proceeding to determine the validation, priority, or extent of an interest in property." (citation omitted)).

**IV.     Standard of Review.**

    **A.     Validity and Amount of Claim.**

The filing of a properly filed proof of claim constitutes prima facie evidence of the validity and amount of that claim. *See La. First Fin. Grp., Inc. v. Al Copeland Enters. (In re Al Copeland Enters.)*, 1998 U.S. Dist. LEXIS 40043, at *4 (5th Cir. June 9, 1998) (citing Fed. R. Bankr. P. 3001(f)). "The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail." *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988) (citations omitted); *see also In re Century Inns, Inc.*, 59 B.R. 507, 522 (Bankr. S.D. Miss. 1986) ("Where an objection is filed to the proof of claim, the objecting party has the initial burden of going forward with sufficient evidence to rebut the prima facie validity of the claim." (citations omitted)). "Only after the objecting party meets his burden does the burden of proof shift to the claimant filing the proof of claim." *Century Inns*, 59 B.R. at 522.

3

B.  **Validity, Priority, or Extent of Lien.**

The party asserting a lien has the burden of proof on the issue of the validity, priority, or extent of such lien. *See Slobodian v. Adams Cty. (In re Mann Realty Assocs.)*, 608 B.R. 408, 417 (Bankr. M.D. Pa. 2019) (assigning burden of proof on creditors to establish amount of claim and lien on property); *see also Silver v. Colo. Cas. Ins.*, 219 P.3d 324, 331 (Colo. App. 2009) ("[T]he burden of proof rests upon the party who asserts the affirmative of an issue[.]") (citation omitted)); *cf.* 11 U.S.C. § 363(p)(2) (stating entity asserting interest in property has burden of proof on issue of validity, priority, or extent of such issue).

IV.  **PlantSnap Has a Valid Claim Against the Estate.**

A.  **Ralls Has Failed to Rebut PlantSnap's Prima Facie Claim.**

PlantSnap properly filed its Proof of Claim No. 6-1 (the "**Proof of Claim**"), which asserts a claim in the amount of $3,434,927.85 (the "**Claim**"), a portion of which is secured by Ralls' shares of DEM's common stock (the "**DEM Shares**"). *See* Proof of Claim. The Proof of Claim includes all of the relevant documents and information needed to support and evidence its claim. *See id.* Accordingly, the Proof of Claim constitutes prima facie evidence of the validity and amount of the Claim. *See* Fed. R. Bankr. P. 3001(f).

Ralls, on the other hand, has failed to produce "sufficient evidence to rebut the prima facie validity of the claim." *Century Inns*, 59 B.R. at 522. *See* Obj. 2 (requesting the Court to deny the Claim in its entirety). "[T]o negate the *prima facie* validity of a claim, an objection must . . . come forward with some legal reason or some factual evidence to defeat the claim." *In re Cluff*, 313 B.R. 323, 337 (Bankr. D. Utah 2004). A claim objection "must contain . . . an affidavit and/or other documentary proof in support of the objection which is sufficient to overcome the presumption of validity imposed by Fed. R. Bankr. P. 3001(f)." LBR 3007-1(a)(2). "The claimant will prevail

4

unless the objecting party produces evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Litto Loan Servicing, L.L.P. v. Eads (In re Eads)*, 417 B.R. 728, 747 (Bankr. E.D. Tex. 2009) (citations omitted).

Ralls has wholly failed to meet his burden at this stage. Ralls provides no facts or legal authority in any of the three, short paragraphs that comprise his "objection." *See* Obj. ¶¶ 1–3. Instead, he baselessly objects to the amount of the Claim, to the Claim as secured, and that the Binding Term Sheet is an "Agreement to Agree." *See id.* Nor does Ralls provide "an affidavit and/or other documentary proof in support of the objection." LBR 3007-1(a)(2). Ralls' affidavit simply states, "I verify that the documents attached as exhibits"—***of which there are none***—"are true and correct copies of the originals and that the claims and statements made in my Objection to Claim"—***which are nothing more than conclusory statements***—"is [sic] true to the best of my knowledge and belief." Docket No. 119-2, ¶ 2; Obj. ¶¶ 1–3; *cf. Davis v. Kaeser Compressors, Inc.*, No. 2:22-CV-00058-JRG, 2022 U.S. Dist. LEXIS 122957, at *9 (E.D. Tex. July 12, 2022) (rejecting conclusory statements in dismissal motion). Because Ralls failed to "come forward with some legal reason or some factual evidence to defeat the claim" the Court can summarily overrule the Objection on this basis alone. *Cluff*, 313 B.R. at 337.

### B.  PlantSnap Has A Claim Against the Estate.

PlantSnap incorporates by reference the Proof of Claim, including the Statement in Support of Claim (the "**Statement**") and all exhibits to the same. By way of summary, PlantSnap and Ralls were engaged in protracted litigation in a State Court Action.[2] *See* Statement ¶¶ 1–3. During the State Court Action, PlantSnap obtained two judgments against Ralls: (1) a judgment for

---

[2] Capitalized terms not defined herein shall have their same meaning as set forth in the Proof of Claim.

$705,000.00 at 8% per annum interest (the "**First Judgment**"), which is attached at Exhibit 1-6 to the Statement; and (2) a judgment for $84,938.76 at 8% per annum interest (the "**Second Judgment**," and together, the "**Judgments**"), which is attached at Exhibit 1-8 to the Statement. *Id.* ¶ 17. On the eve of trial, Ralls and PlantSnap consensually resolved the claims asserted in the State Court Action and executed that certain Binding Term Sheet dated February 19, 2024. (the "**Binding Term Sheet**"), which is attached at Exhibit 1-1 to the Statement, and attached hereto for the Court's convenience at <u>Exhibit 1</u>. *Id.* ¶ 5. Ralls made two payments under the Binding Term Sheet, but defaulted, resulting in the State Court entering a confessed judgment in the amount of $2.5 million at 12% per annum (the "**Confession of Judgment**"). *Id.* ¶ 11; *see also* Docket No. 101, ¶ 30 ("[T]he Debtor made two months of payments consistent with the Binding Term Sheet[]."). Prior to Ralls and PlantSnap drafting the definitive settlement documents identified in the Binding Term Sheet, Ralls filed for bankruptcy on August 18, 2024 (the "**Petition Date**"). *See* Obj. ¶¶ 1–3; Statement ¶ 20.

The Claim is based on the Binding Term Sheet, which incorporates the Judgments and Confession of Judgment. *See* Ex. 1, ¶¶ 3–4. Accordingly, even if the Binding Term Sheet is not a valid contract, which it is, the amounts owed under the Judgments and Confession of Judgment as of the Petition Date total $3,434,927.85.

        **1.**       **The Binding Term Sheet is a valid contract.**

The Binding Term Sheet is not an "Agreement to Agree," but a valid, enforceable contract. *See* Obj. ¶ 3. "A settlement and compromise is, in effect, a contract to end judicial proceedings. In order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement." *H. W. Houston Constr. Co. v. Dist. Ct. of Tenth Jud. Dist.*, 632 P.2d 563, 565 (Colo. 1981) (citations omitted). The terms and

6

conditions must be "sufficiently definite to allow a court to determine whether the parties have complied with them." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 1981) (citation omitted).

> Determining whether essential elements to a contract are definite and settled presents a question of contract interpretation. The primary goal of contract interpretation is to determine and give effect to the parties' intent. The parties' intent is determined primarily from the language of the instrument itself. A reviewing court must examine and construe the instrument's language in harmony with the plain and generally accepted meaning of the words, and a court must consider all the instrument's provisions.

*Lee v. Silver Star Res. LLC*, No. 17CA0649, 2018 Colo. App. LEXIS 2132, at *14 (Colo. App. Mar. 29, 2018) (citations omitted). "The fact that the parties indicated in a filing with the court that they planned to 'finaliz[e] the settlement documents' doesn't mean that the [agreement] was not, at the time of its execution, intended to be valid and binding." *McCarthy v. Kent*, No. 23CA1907, 2024 Colo. App. LEXIS 1862, at *5 (Colo. App. Sept. 12, 2024) (citing *Yaekle v. Andrews*, 195 P.3d 1101, 1110–11 (Colo. 2008)).

Here, the Binding Term Sheet is a valid, enforceable contract. First, there was a clear meeting of the minds. Ralls agreed to pay $2.5 million and secure such obligation with the DEM Shares in exchange for PlantSnap dismissing the State Court Action. *See* Ex. 1, ¶¶ 3, 16. Second, the Binding Term Sheet's terms and conditions are sufficiently definite. *See generally id.* If there is any doubt that the Binding Term Sheet was not a valid contract, the Court need look no further than paragraph 17, which states that Ralls and PlantSnap "each represent[ed] and warrant[ed] that . . . this Agreement has been duly executed and delivered and ***constitutes the valid and binding obligation of the party signing such Agreement***." *Id.* ¶ 17 (emphasis added); *see also id.* ¶ 2 ("The Agreement is binding as of the date of execution by all Parties."); *id.* ¶ 15 ("[T]he terms outlined herein are enforceable and binding upon execution.").

7

To hold otherwise would violate the *Rooker-Feldman* doctrine, "which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)); *see also In re Besing*, 981 F.2d 1488, 1496 (5th Cir. 1993) ("The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]." (citation omitted)). The Binding Term Sheet required Ralls to deliver and execute a Confession of Judgment, and that Confession of Judgment was entered by the State Court prior to the bankruptcy case. *See* Ex. 1, ¶ 7; Statement Ex. 1-2. If the Court holds that the Binding Term Sheet is not an enforceable contract, it is effectively overruling the Confession of Judgment, which, again, was provided by Ralls pursuant to the very agreement in which he seeks to invalidate. As a result, the Court would create the odd circumstance where either (1) PlantSnap is forced to take a discount on the claims it asserted (and compromised) against Ralls in the State Court Action (if the Binding Term Sheet is invalid, but the Confession of Judgment is valid), or (2) Ralls is provided another "bite at the apple" to relitigate the State Court Action (if the Binding Term Sheet and Confession of Judgment are both invalid).[3] Because both results are contrary to the intention of the Binding Term Sheet, the Court should hold Ralls to the benefit of the bargain.

---

[3] This would amount to Ralls attempting—for a second time—to relitigate the State Court Action. Ralls previously filed for bankruptcy in the United States Bankruptcy Court for the District of Colorado on the eve of trial in the State Court Action, seeking to stave off an order granting summary judgment and to avoid adverse rulings by the State Court. *See* Statement ¶¶ 3–4.

8

Even if the Binding Term Sheet is an invalid contract, which it is not, there can be no dispute to the validity and amount of the Claim, because the Claim is derived from the Judgments and Confession of Judgment.[4]

### 2. PlantSnap has a claim for, at least, $3,434,927.85.

As of the Petition Date, the total amount owed under the Binding Term Sheet (or Judgments or Confession of Judgment) is as follows:

| Category | Amount |
| --- | --- |
| Agreement Principal | $2,500,000.00 |
| Agreement Interest[1] | $99,175.95 |
| Agreement Attorneys' fees and costs | TBD |
| $705,000 Judgment Principal | $705,000.00 |
| $705,000 Judgment Interest[2] | $33,994.40 |
| $84,938.76 Judgment Principal | $84,189.00 |
| $84,938.76 Judgment Interest[3] | $12,568.50 |
| Total Claim | $3,434,927.85 |

*See id.* Accordingly, PlantSnap has a valid Claim against the estate in the amount of, at least, $3,434,927.85.

### V. PlantSnap Has a Perfected, Secured Interest in the DEM Shares.

Article 9 of the Uniform Commercial Code applies to the creation of security interests. *See Denver Tec Bank v. Fed. Deposit Ins.*, 843 P.2d 129, 131 (Colo. App. 1992). "Under Article 9, in order to create an enforceable security interest, the interest must first be ***attached***, and then it must be ***perfected***." *Id.* (emphasis added) (citation omitted). "A security interest must first attach before it can be perfected." *Bowlen v. Fed. Deposit Ins.*, 815 P.2d 1013, 1014 (Colo. App. 1991) (citation omitted). Here, PlantSnap's security interest in the DEM Shares both attached and was perfected.

---

[4] Despite requesting that the Court deny the Claim in its entirety, Ralls provided no basis for rejecting the judgments, one of which stemmed from Ralls' contempt and destruction of evidence (for which Ralls also served a short jail sentence). *See* Obj. 2; Statement ¶ 17.

9

### A. PlantSnap's Security Interest Attached to the DEM Shares.

A security interest attaches to collateral when the following three elements are satisfied: (1) value is given; (2) the debtor has rights in the collateral; and (3) the debtor either (a) signs a security agreement that provides a description of the collateral, or, if the collateral is certificated shares, (b) delivers the collateral to the secured party. *See* C.R.S. § 4-9-203(b); *see id.* cmt. 4 ("Subsection (b)(3)(C) provides that delivery of a certificated security to the secured party under Section 8-301 pursuant to the debtor's security agreement is sufficient as a substitute for an authenticated security agreement."). All three elements are satisfied.

First, value was given. Ralls agreed to pay $2.5 million and secure such obligation in exchange for PlantSnap dismissing the State Court Action. *See* Ex. 1, ¶¶ 3, 16.

Second, Ralls has rights in the DEM Shares. *See id.* ¶ 3(A), (B); *see also* Docket No. 14 at 5 (scheduling the DEM Shares as an estate asset).

Third, Ralls executed the Binding Term Sheet, which is a security agreement, and which identifies the DEM Shares. *See generally* Ex. 1. A "security agreement" is simply "an agreement that creates or provides for a security interest." C.R.S. § 4-9-102(a)(76). A security agreement need not contain any "magic words":

> In determining whether a security interest has been created, courts may not only look at the words in the instrument, but also at the intent of the parties. *In re Amex-Protein Dev. Corp.*, 504 F.2d at 1059 ("While there are no magic words which create a security interest[,] there must be language in the instrument which []leads to the logical conclusion that it was the intention of the parties that a security interest be created.[]"); *see also* 3 Cathy Stricklin Krendl & James R. Krendl, *Colorado Methods of Practice* § 90:2 (5th ed. 2013) ("***If the intent was to protect one party against the nonperformance of an obligation by the other through the creation of an interest in personal property or fixtures, then a security interest was created***.").

*Wheeler v. Tower Building, LLC (In re Estate of Wheeler)*, 410 P.3d 483, 486 (Colo. App. 2013) (emphasis added).

Ralls summarily states the Binding Term Sheet was nothing more than an "Agreement to Agree." Obj. ¶ 3. Although he does not expound on this statement, Ralls previously argued that, because the parties did not finalize and execute definitive settlement documents, which would have provided for a security interest in the DEM Shares, PlantSnap does not have a security interest in such shares. *See* Docket No. 89, ¶¶ 5, 9. In other words, because he refused to execute definitive settlement documents, Ralls did not "sign[] a security agreement that provides a description of the collateral." *Id.* ¶¶ 5, 7, 9; C.R.S. § 4-9-203(b)(3)(A).

Ralls can only reach this conclusion by ignoring the plain terms of the Binding Term Sheet and established Colorado law. Under the Binding Term Sheet, Ralls agreed to "execute and deliver to PlantSnap a $2.5 million dollar Secured Promissory Note . . . , ***subject to the following terms*** . . . : The Note shall be secured by all of Ralls' founder's shares in the Entities," i.e., the DEM Shares. Ex. 1, ¶ 3(A) (emphasis added). Although the parties anticipated Ralls executing a secured note, the absence of such note is irrelevant, because the parties agreed to the following provision: "The Parties will work together to draft definitive settlement documents, ***but the terms outlined herein are enforceable and binding upon execution***." *Id.* ¶ 15 (emphasis added). Ralls can only claim the Binding Term Sheet is an "Agreement to Agree" by ignoring the plain text of paragraph 15 of the Binding Term Sheet. *See Strohe v. MEP Eng'g, Inc.*, 501 P.3d 826, 829–30 (Colo. App. 2021) ("[T]he meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation. We review contracts in their entirety, seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless. Each word in an instrument is to be given meaning if at all possible." (citations omitted)).

Looking within the four corners of the Binding Term Sheet, it is clear that Ralls' obligations under the Binding Term Sheet were secured by the DEM Shares. Ralls agreed that the DEM Shares

11

secured his obligations under the Binding Term Sheet. *See* Ex.1, ¶¶ 3(A); *see also* C.R.S. § 4-9-203(b)(3)(A) (requiring debtor to sign security agreement that identifies collateral). The Binding Term Sheet defines the DEM Shares as the "Pledged Shares." *See id.* ¶¶ 3(A), (B), (D), (E), (G). "Ralls authorize[d] PlantSnap to file a UCC-1 financing statement," which is used to perfect a security interest. *Id.* ¶ 3(C); *Konkel v. Golden Plains Credit Union*, 778 P.2d 660, 661 (Colo. 1989). The Binding Term Sheet even references Article 9 of the Uniform Commercial Code, which governs the creation of security interests in personal property. *See id.* ¶ 3(D).

    **B.**     **PlantSnap Perfected Its Security Interest in the DEM Shares.**

A secured party can perfect certificated securities in one of two ways. *See* C.R.S. §§ 4-9-312(a), 4-9-313(a). First, a secured party can take possession of the securities. *See id.* § 4-9-313(a) ("A security party may perfect a security interest in certificated shares by taking delivery of the certificated securities under section 4-8-301."). Second, a secured party may file a UCC-1 financing statement. *See id.* §§ 4-9-312(a) ("A security interest in . . . investment property . . . may be perfected by filing."); 4-9-102(a)(49) (defining "investment property" as "a security, whether certificated or uncertificated"); *see also id.* § 4-9-312 official cmt. 4 ("A security interest in investment property, including certificated securities, . . . may be perfected by filing.").

Here, PlantSnap perfected its security interest in the DEM Shares by filing UCC-1 financing statements on February 28, 2024. *See* Statement ¶ 16, Exs. 1-3, 1-4. PlantSnap has a perfected, secured interest in the DEM Shares.

**VI.**     **The Court Need Not Examine Parole Evidence to Determine the Parties' Intent.**

The Court need not examine parole evidence to determine whether the Binding Term Sheet is a valid contract and security agreement. During the October 9, 2025 continued hearing on PlantSnap's stay relief hearing, Ralls sought to introduce documents and testimony to show the

parties' intent in the Binding Term Sheet. *See* Docket No. 102 (identify Robert Kitsmiller as a witness and the "E-Mail history from February 10, 2024[] to August 14, 2024" at Exhibit C). However, "[a]n ambiguity must appear in the four corners of the document before extrinsic evidence can be considered." *Am. Family Mut. Ins. v. Hansen*, 375 P.3d 115, 117 (Colo. 2016) (emphasis in original). As set forth above, the Binding Term Sheet is not ambiguous; it clearly identifies the terms and makes clear that the failure to draft definitive settlement documents will not render the Binding Term Sheet unenforceable and nonbinding. *See* Ex. 1, ¶ 17.

Nevertheless, if the Court believes extrinsic evidence is necessary to show the parties' intent, Ralls' conduct and statements made in these bankruptcy cases evidence a valid contract and security agreement. First, Ralls performed under the very paragraph of the Binding Term Sheet he now seeks to invalidate: Ralls made two payments to PlantSnap under paragraph 3 of the Binding Term Sheet. *See* Docket No. 101, ¶ 30; Ex. 1, ¶ 3(F)(1).

Second, Ralls has repeatedly acknowledged PlantSnap's security interest. *See* Docket No. 103, Ex. 8 at 9:23–10:2 (December 19, 2024 hearing; "Q: If this case is dismissed or converted, EarthSnap will lose the revenue source of a contributing affiliate EarthCom [sic], because that will be foreclosed upon by PlantSnap, yes or no? A: Yes. If my stock is taken away form me, then I'll no longer be involved with either company."); Docket No. 103, Ex. 14, ¶ 28 (first proposed plan (former counsel); recognizing PlantSnap's "security in the form of pledges of stock on related affiliates named therein"); Docket No. 103, Ex. 15 at 15 (second proposed plan (current counsel); "In a forced liquidation under Chapter 7, the Debtors believe that PlantSnap and DEJ Partners would foreclose on their interest in the stock of Digital Earth Media, which in turn owns the stock of the Debtor Earthsnap and Earth.com, the source of funding of this Plan. As a result, no funds would therefore be available to pay any creditors other than PlantSnap and DEJ Partners.").

13

## VII. Conclusion.

For the foregoing reasons, the Court should overrule the Objection.

Respectfully submitted,

Dated: October 28, 2025

*/s/ Patrick R. Akers*
Patrick R. Akers (CO 54803)
MARKUS WILLIAMS YOUNG & HUNSICKER LLC
1775 Sherman Street, Suite 1950
Denver, Colorado 80203
(303) 830-0800
(303) 830-0809 (facsimile)
pakers@markuswilliams.com

Dean E. Richardson (CO 35349)
GOULD & RATNER LLP
1801 Wewatta Street, 11th Floor
Denver, Colorado 80202
(303) 284-1062
(312) 236-3241 (facsimile)
drichardson@gouldratner.com

*Counsel for PlantSnap*

## **CERTIFICATE OF SERVICE**

I certify that on October 28, 2025, a copy of the foregoing *PlantSnap Inc.'s Response in Opposition to Debtor's Objection to Proof of Claim No. 6 Filed by PlantSnap Inc.* was electronically filed using the Court's electronic filing system. Notice of this filing will be sent by all parties by operation of the Court's system. Parties may access this filing through the Court's system.

*/s/ Patrick R. Akers*
Patrick R. Akers (CO 54803)

*Counsel for PlantSnap*